UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IN RE:                                              :

                                           :         15-MD-2645 (WHP)
                                           :         15-MC-2645 (WHP)

KIND LLC "HEALTHY AND ALL
NATURAL" LITIGATION                                 :

                                         :        OPINION & ORDER

                                         :

*This Document Relates to All Actions*     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs bring this putative class action alleging that KIND LLC and KIND

Management, Inc. (together, "KIND") deceptively marketed certain products as "healthy," "all

natural," and/or "non GMO."   The Consolidated Class Action Complaint (ECF No. 52) asserts

claims for breach of express warranty, unjust enrichment, and negligent misrepresentation, as

well as violations of New York General Business Law §§ 349, 350 ("GBL"); California's

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"); the California False

Advertising Law, Cal. Bus & Prof. Code § 17500 ("FAL"); the California Unfair Competition

Act, Cal. Bus & Prof. Code § 17200 ("UCA"); the Illinois Consumer Fraud and Deceptive

Business Practices Act, 815 Ill. Cop. Stat. 505/1 ("ICFDBPA"); and the Florida Deceptive and

Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq ("FDUTPA").  Plaintiffs seek to

represent a national class of all individuals who purchased certain KIND products since April 17,

2011, as well as subclasses of purchasers from New York, California, Illinois and Florida.

        KIND moves to dismiss Plaintiffs' claims or, in the alternative, to stay the action

pending the Food and Drug Administration's ("FDA's") promulgation of rules addressing use of

the word "natural" on food labels.  Plaintiffs' "healthy" claims are dismissed, and the "all

natural" claims are stayed pending the FDA's rulemaking process. To the extent Plaintiffs assert

a separate claim concerning representations that products were "non GMO," that claim is

dismissed without prejudice.

BACKGROUND

I.    Plaintiffs' Allegations

KIND markets, advertises, and distributes popular snack foods with labels that

include the words "Healthy," "All Natural" and "Non GMO." (Compl. ¶ 1.) Plaintiffs allege

that KIND uses these descriptors to capitalize on the highly profitable and fast-growing health

food market. (Compl. ¶¶ 19–22.)

In March 2015, the Food and Drug Administration ("FDA") issued a "warning

letter" challenging, among other things, the following "about KIND" statement that appeared on

some labels:

> At KIND we do things differently and try to avoid false
> compromises. Instead of "or" we say "and." Healthy and tasty,
> convenient and wholesome, economically sustainable and socially
> impactful.

Specifically, the FDA asserted that KIND's "healthy and tasty" language was an "implied

nutrient content claim" subject to regulations set forth in 21 C.F.R. § 101.65, and that certain

KIND products did not meet the FDA's saturated fat content requirements necessary to describe

food as "healthy." (ECF 52-1, Ex. A at 1–2.)

That warning letter spawned numerous copycat private actions—eventually

consolidated in this MDL—alleging that consumers were somehow deceived by the "about

KIND" statement. In response, KIND protested that many universally recognized healthy foods

such as almonds, avocados, or salmon contain saturated-fat levels exceeding the limits prescribed

by 21 C.F.R. § 101.65. Eventually, in April 2016—after the briefing of KIND's motion to

2

dismiss in this action but prior to oral argument—the FDA withdrew its objections and conceded

that its "regulations concerning nutrient content claims are due for a reevaluation in light of

evolving nutrition research." (ECF No. 73-5.)  One month later, Plaintiffs voluntarily dismissed

their "healthy" claims.  (ECF No. 74.)

Plaintiffs also allege that rather than being "all natural," KIND products contain

synthetic, chemically synthesized, and highly processed ingredients such as soy lecithin, soy

protein isolate, citrus pectin, glucose syrup, vegetable glycerine, palm kernel oil, canola oil,

ascorbic acid, vitamin A acetate, D-Alpha tocopheryl acetate, and annatto.  According to

Plaintiffs, these ingredients render KIND's labeling false and misleading based on the New

Oxford American Dictionary's definition of "natural" as "existing in or caused by nature; not

made or caused by humankind." (Compl. ¶ 40.)[1]  Additionally, Plaintiffs allege that "[t]esting

has detected the presence of GMOs in at least some of the products" (Compl. ¶ 38), and that

"approximately 90% of canola, 89% of corn, and 94% of soybeans grown in the United States

are genetically modified, as are a majority of U.S. sugar beet crops." (Compl. ¶ 48.)  "The

World Health Organization defines [GMOs] as 'organisms in which the genetic material (DNA)

has been altered in a way that does not occur naturally.'" (Compl. ¶ 2.)

II.    The FDA's "Natural" Guidance

The Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA"), Pub. L. No. 75–

717, 52 Stat. 1040 (1938), established the FDA within the Department of Health and Human

Services.  See 21 U.S.C. § 393.  "The FDCA grants the FDA authority to regulate the field of

food safety."  Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 251 (3d Cir. 2008) (citing 21

---

[1] The Complaint also notes that the United States Department of Agriculture only permits use of the word "natural" for meat and poultry products if "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservatives . . . or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed." (Compl. ¶ 44.)

U.S.C. § 371).  The Nutrition Labeling and Education Act of 1990 ("NLEA"), Pub. L. No. 101–

535, 104 Stat. 2353 (1990) (codified at 21 U.S.C. § 343), further reformed and standardized the

requirements for nutrition labeling and health claims on nearly all food products.  See Holk v.

Snapple Beverage Corp., 575 F.3d 329, 332 (3d Cir. 2009).

      In November 2015, the FDA "announc[ed] the establishment of a docket to

receive information and comments on the use of the term 'natural' in the labeling of human food

products, including foods that are genetically engineered or contain ingredients produced through

the use of genetic engineering."  Use of the Term "Natural" in the Labeling of Human Food

Products; Request for Information and Comments, 80 FR 69905-01, 2015 WL 6958210.  At that

time, the FDA noted that citizen petitions and courts "requested administrative determinations

from FDA regarding whether food products containing ingredients produced using genetic

engineering or foods containing high fructose corn syrup may be labeled as 'natural.'"  Use of

the Term "Natural", 2015 WL 6958210.  Among other things, the FDA solicited comments and

proposals addressing: (1) the "type(s) of ingredients [that] would disqualify the food from

bearing the term [natural]"; (2) whether "the manner in which an ingredient is produced or

sourced [should] affect whether a food containing that ingredient may be labeled as 'natural'";

(3) whether "certain production practices used in agriculture, for example, genetic engineering

… be a factor in defining 'natural'"; and (4) whether "the term 'natural' [should] only apply to

'unprocessed' foods [and i]f so, how should 'unprocessed' and 'processed' be defined[?]"  Use

of the Term "Natural", 2015 WL 6958210.  The notice and comment period ended in May 2016.

## LEGAL STANDARD

      On a motion to dismiss, the factual allegations in a complaint are accepted as true

and all reasonable inferences are drawn in the plaintiff's favor.  Rescuecom Corp. v. Google Inc.,

4

562 F.3d 123, 127 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  Iqbal, 556 U.S. at 678 (citation omitted).

DISCUSSION

After briefing on the motion to dismiss was complete but prior to oral argument, Plaintiffs voluntarily dismissed their "healthy" claims.  (ECF 74.)  Defendants move to stay Plaintiffs' "all natural" claims under the primary jurisdiction doctrine, and further argue that Plaintiffs fail to plead a "non GMO" claim separate from the "all natural" claims.

I.   Plaintiffs' "Healthy" Claims

Because plaintiffs Kaufer, Karnezis and Livingston are only alleged to have purchased KIND products "in reliance on the representations on the product labels that the products were 'healthy'" (Compl. ¶¶ 11, 13, 14)—and not in reliance on any "all natural" representations—their claims are dismissed.  And because Karnezis and Livingston are the only plaintiffs from Illinois and Florida, respectively, Plaintiffs' ICFDBPA and FDUTPA claims and the Illinois and Florida subclasses are likewise dismissed.

II.   Plaintiffs' "All Natural" Claims

"The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.  Thus, the doctrine's central aim is to allocate initial decision-making responsibility between courts and agencies and to ensure that they do not work at cross-purposes." All Am.

5

Tel. Co. v. AT & T, Inc., No. 07-cv-861 (WHP), 2010 WL 7526933, at *1 (S.D.N.Y. Jan. 19,

2010) (internal citations and quotation marks omitted).   "Recourse to the doctrine of primary

jurisdiction is . . . appropriate whenever enforcement of the claim requires the resolution of

issues which, under a regulatory scheme, have been placed within the special competence of an

administrative body." Ellis v. Tribune Television Co., 443 F.3d 71, 81 (2d Cir. 2006) (quotation

marks omitted).   "The . . . doctrine is rooted in part in judicial efficiency." United States v.

Philip Morris USA Inc., 686 F.3d 832, 838 (D.C. Cir. 2012).

 Recent Ninth Circuit precedent strongly supports KIND's argument that

Plaintiffs' "all natural" claims should be stayed pending the FDA's rulemaking process.   In

Astiana v. Hain Celestial Grp., Inc., the Ninth Circuit held that "[d]etermining what chemical

compounds may be advertised as natural on cosmetic product labels is a particularly complicated

issue that Congress has committed to the FDA," and thus "[o]btaining expert advice from that

agency would help ensure uniformity in administration of the comprehensive regulatory regime

established by the FDCA." Astiana, 783 F.3d at 761.   The Ninth Circuit approvingly cited

district courts invoking the FDA's primary jurisdiction in food labeling[2] and remanded the case,

strongly implying that a stay would be appropriate. Astiana, 783 F.3d at 761–62.   More recently,

in Kane v. Chobani, LLC, the Ninth Circuit invoked the primary jurisdiction doctrine to stay a

consumer food labeling action analogous to this one. Kane, No. 14-15670, --- Fed. App'x. ----,

2016 WL 1161782 (9th Cir. Mar. 24, 2016).   Specifically, the court found that in view of the

FDA's November 2015 "request for comments regarding the use of the term 'natural' in

---

[2] See In re Gen. Mills, Inc. Kix Cereal Litig., No. CIV–A–12–249 (KM), 2013 WL 5943972 (D.N.J. Nov. 1, 2013) ("[U]nder the primary jurisdiction doctrine a stay is appropriate to allow the FDA an opportunity to provide guidance [concerning] the issue of whether products may be labeled 'Natural' when they are made with bioengineered forms of corn."); Barnes v. Campbell Soup Co., No. C12–05185 (JSW), 2013 WL 5530017 (N.D. Cal. July 25, 2013) (staying allegations concerning "100% natural" labeling on soup); Cox v. Gruma Corp., No. 12–CV–6502 (YGR), 2013 WL 3828800 (N.D. Cal. July 11, 2013) (staying allegations that the presence of GMOs rendered "all natural" labeling false and misleading).

connection with food product labeling, . . . resolution of this action will not be needlessly delayed and that judicial resources will be conserved by staying these proceedings." Kane, 2016 WL 1161782, at *1; see also Viggiano v. Johnson & Johnson, 14cv7250 (N.D. Cal. June 21, 2016), Slip Op., ECF No. 55 (citing Kane in support of its decision to stay an action "pending resolution of the FDA's 'natural' proceedings").[3]

While the Ninth Circuit's decisions are instructive, they are not controlling.  The Second Circuit has enumerated four factors to consider when determining whether to stay an action under the primary jurisdiction doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

Ellis, 443 F.3d at 82–83. The Second Circuit has also held that courts should "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." Ellis, 443 F.3d at 83 (quotation marks omitted).  The parties dispute the application of those factors here.

A.  Conventional Experience of Judges or FDA's Field of Expertise

Courts are split as to whether the issues presented by Plaintiffs' "all natural" claims are more within the conventional experience of judges or whether they involve technical

---

[3] Plaintiffs attempt to distinguish Kane because that case, unlike this one, involved additional claims regarding the term "evaporated cane juice," which the FDA planned to define by the end of 2016. This distinction is immaterial because Kane was also stayed pending the FDA's promulgation of regulations concerning the word "natural."

or policy considerations within the FDA's particular field of expertise.  In addition to the Ninth Circuit cases discussed above, numerous other courts have found that such questions are within the FDA's field of expertise.  See, e.g., Coyle v. Hornell Brewing Co., No. 08-cv-02797 (JBS), 2010 WL 2539386, at *4 (D.N.J. June 15, 2010) (holding that issue of whether high fructose corn syrup is "natural or artificial for the purpose of food and beverage labeling does not fall within the conventional experiences of judges" but "lies within the FDA's particular field of expertise regarding food chemistry and the labeling of food and beverage products"); George v. Blue Diamond Growers, No. 4:15-cv-962 (CEJ), 2016 WL 1464644, at *3 (E.D. Mo. Apr. 14, 2016) ("In light of the FDA's ongoing examination of the appropriate regulation of the terms ['all natural' and 'evaporated cane juice'] it is appropriate to defer to the agency's expert and specialized knowledge.").

Other courts have found that cases such as these are "far less about science than [they are] about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims . . . depend[] is one to which courts are eminently well suited, even well versed." In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (internal quotation marks omitted); see also Ault v. J.M. Smucker Co., No. 13-cv-3409 (PAC), 2014 WL 1998235, at *5 (S.D.N.Y. May 15, 2014) ("The issue is whether the use of the phrase 'All Natural' was likely to mislead a reasonable consumer acting reasonably under the circumstances.  A trier of fact can make that determination.") (quotation marks and citation omitted).

This Court is reluctant to declare that issues of alleged consumer deception are necessarily outside the conventional wisdom of judges (or even juries).  Moreover, although food labeling issues involving scientific determinations arguably fall within the FDA's field of

expertise, judges and triers of fact regularly address complex scientific issues absent regulatory guidance. Thus, in view of the split among courts and well-reasoned arguments on both sides, this factor does not weigh in favor of the FDA's primary jurisdiction.

B.  The FDA's Discretion

As discussed above, the FDA seems to be prepared to address core issues in this case, including what types of processed foods may be labeled "natural" and whether genetically engineered foods may be labeled "natural."   Even before the FDA announced its intent to delve into these issues, courts had found that "the use of the term 'natural' as it pertains to food and beverage labeling falls within the FDA's discretion." Coyle, 2010 WL 2539386, at *4 ("The FDA employs food technicians, chemists, nutritionists, and numerous other specialists in order to address public health and safety issues relating to foods and medicines.  Given both the FDA's purpose and resources, the question of qualifying [high fructose corn syrup] as 'natural' is appropriately left to the discretion of the FDA, not the Court, in the first instance.") (citation omitted).  Indeed, the FDCA empowers the FDA to prohibit labels that are "false or misleading in any particular." 21 U.S.C. § 343.  In that sense, the issue of whether the particular ingredients referenced in the Complaint rendered the "all natural" label misleading seems to be particularly within the FDA's discretion.  See Elkind v. Revlon Consumer Prods Corp., No. 14-CV-2484 (JS), 2015 WL 2344134, at *10 (E.D.N.Y. May 14, 2015) ("[T]he decision whether to regulate the use of the term 'DNA Advantage' falls within the discretion of the FDA, because the FDA may prohibit any labels that are 'misleading in any particular.' See 21 U.S.C. § 362.").  This factor therefore weighs in favor of staying this case under the primary jurisdiction doctrine.

C.  Substantial Danger of Inconsistent Rulings

KIND argues that declining to stay the claims could spawn a patchwork of judicial determinations regarding the appropriate definition for "natural" on food labels that would make uniform food labeling impossible.  Plaintiffs respond that because any forthcoming guidance from the FDA would not conclusively resolve this issue, staying this action would not decrease any danger of inconsistent rulings.

Both arguments have some merit.  As the Frito-Lay MDL court held, "[t]here is no telling . . . how the FDA would define the term, and whether its definition would shed any further light on whether a reasonable consumer is deceived by the "All Natural" food label when it contains bioengineered ingredients."  In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *8.  Indeed, with respect to the FDA's "healthy" definition, KIND itself compellingly argued in this case that not every violation of arcane (and potentially outdated) labeling regulations amounts to an act of consumer fraud.

Nevertheless, FDA guidance could explain whether ingredients such as soy protein isolate and citrus pectin should be considered "natural."  More importantly, staying this action until the FDA offers guidance at the federal level would almost certainly help harmonize court rulings—an important consideration in view of the fact that "Congress [did] not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide" in order to avoid the need for "[m]anufacturers . . . to print 50 different labels."  Turek v. Gen. Mills, Inc., 662 F.3d 423, 426 (7th Cir. 2011).  In other words,

> Should this Court independently decide whether [the challenged
> ingredients] are natural ingredient[s], it is possible that other federal
> courts or the FDA will come to a different conclusion, resulting in
> inconsistent outcomes for essentially identical claims and affecting
> food and beverage purveyors with nationwide businesses. The
> prospect that different labels would be permissible in different

10

jurisdictions would impose a burden on this industry that may be
alleviated if the FDA chooses to speak directly to the question.

Coyle, 2010 WL 2539386, at *4; see also Taradejna v. Gen. Mills, Inc., 909 F. Supp. 2d

1128, 1135 (D. Minn. 2012) ("The [FDA]'s unique role in ensuring . . . consistency and

uniformity is particularly significant here, as several recently filed . . . lawsuits throughout

the country involve the same or similar issues as found in the instant suit.  The increasing

volume of this litigation creates the potential for inconsistent judicial rulings." (addressing

the definition of "Greek Yogurt")).  Thus, this factor weighs in favor of a stay.

   D.  Prior Application to the FDA

        "[T]his inquiry . . . requires [courts] to consider whether prior application to the

agency has been made.  If prior application to the agency is present, this factor provides support

for the conclusion that the doctrine of primary jurisdiction is appropriate."  Ellis v. Tribune

Television Co., 443 F.3d 71, 89 (2d Cir. 2006) (citation omitted).  Here, the FDA has initiated

proceedings based on applications from citizen petitions and "three Federal district courts"

seeking guidance on whether certain products "may be labeled as 'Natural,' 'All Natural,' and/or

'100% Natural.'"  80 FR 69905-01, 2015 WL 6958210.  Accordingly, this factor weighs in favor

of a stay.

   E.  Potential Delay

        This Court acknowledges that staying the case under the primary jurisdiction

doctrine would necessarily delay Plaintiffs' case.  However, the Second Circuit has cautioned

against weighing such considerations too heavily in view of the fact that "the Supreme Court has

consistently held that there are only two purposes to consider in determining whether to apply

the primary jurisdiction doctrine—uniformity and expertise," and "the Supreme Court has never

identified judicial economy as a relevant factor."  Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d

65, 68 n.2 (2d Cir. 2002).  Regardless, to the extent some courts have declined to refer similar

matters to the FDA in part for this reason (see, e.g., In re Frito-Lay, 2013 WL 4647512, at *9)

KIND's argument for a stay is much stronger here because the FDA has already completed its

notice and comment period and seems determined to address the "all natural" labeling issue.  See

Viggiano, Slip Op. at 4 & n.1 ("Since the FDA commenced regulatory proceedings, district

courts have followed the Ninth Circuit's lead in applying the primary jurisdiction doctrine in

these types of actions where the term 'natural' is at issue.  In contrast, before the FDA's recent

announcement on the matter, a number of district courts declined to invoke primary jurisdiction

in cases concerning the term 'natural' in food labeling.") (citations omitted).

* * *

In sum, the Second Circuit's primary jurisdiction test weighs in favor of staying

the action.  Accordingly, Plaintiffs' "all natural" claims are stayed pending the FDA's

rulemaking process.  This Court may reconsider the appropriateness of continuing the stay as the

FDA's process unfolds.

III.   Plaintiffs' "Non GMO" Claims

The parties dispute whether Plaintiffs' "non GMO" claims are pled as a separate

count of the Complaint or merely as a subset of the "all natural" claims, which are now stayed.

Under the consumer protection laws invoked in the Complaint, Plaintiffs must plausibly allege

that they were deceived by KIND's labeling, that an objective, reasonable consumer also would

12

have been deceived, and that such deception injured them.[4]   Moreover, at least some of the

causes of action alleged by Plaintiffs are governed by Federal Rule of Civil Procedure 9(b)'s

particularity requirements. See Gallagher v. Chipotle Mexican Grill, Inc., No. 15-cv-03952

(HSG), 2016 WL 454083, at *2 (N.D. Cal. Feb. 5, 2016) ("Because Plaintiff's [FAL, CLRA and

UCL] claims are premised on allegedly fraudulent conduct, Rule 9(b) also applies."); accord

Hart v. BHH, LLC, No. 15-cv-4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016).

> Plaintiffs allege that some KIND products tested positive for GMOs, and that the
presence of certain ingredients, such as corn, further indicates the presence of GMOs because
89% of corn in the United States is derived from genetically-modified ingredients.  In its motion,
KIND does not directly dispute Plaintiffs' GMO allegations.  Instead, it cites an FDA "Letter
Decision" stating that "foods derived from [GMO] sources . . . do not present any different or
greater safety risks or otherwise differ from other foods in any meaningful or uniform way."
Letter Decision, FDA Docket No. 2011-P-0723 (Nov. 19, 2015.)  That may be true, but it is also
true that some consumers may seek to avoid GMO-derived food, regardless of what the FDA
says about their safety.  Accordingly, allegations that consumers were deceived by misleading
"non GMO" labels are potentially cognizable.

> Nevertheless, to the extent Plaintiffs assert a stand-alone "non GMO" claim (and
it is not entirely clear from the Complaint that this was their original intent) such claims are
insufficiently pled.  Critically, it is unclear whether Plaintiffs have standing because no plaintiff

---

[4] See, e.g., McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 226–27 (2d Cir. 2008) (GBL § 349); Avola v. Lousiana-Pacific Corp., 991 F. Supp. 2d 381, 396–97 (E.D.N.Y. 2013) (GBL § 350); Williamson v. Reinalt-Thomas Corp., No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012) (UCL, FAL, and CLRA); Kais v. Mansiana Ocean Residences, LLC, No. 08-21492-CIV, 2009 WL 825763, at *2 (S.D. Fla. Mar. 26, 2009) (FDUTPA); Oshana v. Coca-Cola Co., 472 F.3d 506, 513–14 (7th Cir. 2006)  (ICFA).  Failure to plausibly plead deception would require dismissal of plaintiffs' common-law claims as well. See, e.g., DiMuro v.Clinique Labs., LLC, 572 F. App'x 27, 32 (2d Cir. 2014); Derbaremdiker v. Applebee's Int'l, Inc., 2012 WL 4482057, at *8 (E.D.N.Y. Sept. 26, 2012).

alleges that they read and relied on the "non-GMO" labeling statement prior to purchasing the products. To the contrary, the remaining Plaintiffs allege that they purchased certain KIND products based on representations that they were "all natural." (Compl. ¶¶ 9, 10, 12). Additionally, while Plaintiffs allege that "testing has detected the presence of GMOs in at least some [KIND] products," their failure to specify which products included GMOs and whether they actually purchased those products renders their allegations insufficient. See Gallagher v. Chipotle, 2016 WL 454083, at *2 ("Plaintiff has not adequately alleged any resulting economic injury [because] it is not clear that Plaintiff purchased any products that, by her definition, are made with ingredients containing GMOs.") Likewise, Plaintiffs' allegations that "approximately 90% of the canola, 89% of corn, and 94% of soybeans grown in the United States are genetically modified" are insufficient without being tied to the KIND products purchased by Plaintiffs. See In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.., No. 15 CIV. 5838 (PAE), 2016 WL 852796, at *9 (S.D.N.Y. Mar. 1, 2016) ("[A] claim based only on probabilistic evidence of injury, devoid of any factual allegations particular to the plaintiff and without a basis to plausibly infer that all covered products were implicated, does not adequately plead injury-in-fact."). Thus, Plaintiffs' "non GMO" claims are dismissed without prejudice.

## CONCLUSION

In view of Plaintiffs' voluntary dismissal of their "healthy" claims, the claims brought by Kaufer, Karnezis and Livingston are dismissed. In addition, the ICFDBPA and FDUTPA claims of the Illinois and Florida subclasses are dismissed.

Plaintiffs Short, Thomas and Bustamonte's "all-natural" claims are stayed pending the FDA's rulemaking regarding the use of the term "natural" on food labels. The parties should timely apprise this Court of any material developments with respect to the FDA's rulemaking. In any event, they should file a joint status report by December 15, 2016.

To the extent Plaintiffs wish to assert an independent claim based on representations that KIND's products were "non GMO," they may file an Amended Complaint no later than October 31, 2016.

Dated: September 15, 2016
      New York, New York

                                       SO ORDERED:

                                       WILLIAM H. PAULEY III
                                           U.S.D.J.