# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | 15-MD-2645 (WHP) |
| KIND LLC "HEALTHY AND ALL NATURAL" | 15-MC-2645 (WHP) |
| LITIGATION | |

| | |
|---|---|
| This Document Relates to: | Hon. William H. Pauley III, presiding |
| | |
| ALL ACTIONS | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ...................................................................................................................1

I.     COMMON FACTS TO THE PROPOSED CLASS.................................................4

II.    STANDARDS FOR DETERMINING WHETHER TO CERTIFY A CLASS PURSUANT TO RULE 23 ..............................................................................7

III.   THE PROPOSED CLASS SATISFIES THE RULE 23(**A**) FACTORS...........................9

      A.    Rule 23(a)(1): The Proposed Class Is Sufficiently Numerous.................................9

      B.    Rule 23(a)(2): The Commonality Requirement Is Met........................................9

      C.    Rule 23(a)(3): Plaintiffs' Claims Are Typical Of Those Of The Class. ...............11

      D.    Rule 23(a)(4): Plaintiffs Will Adequately Represent The Class...........................12

IV.   THE PROPOSED CLASSES SATISFY THE RULE 23(b)(2) REQUIREMENTS. ...........................................................................................14

V.    THE PROPOSED CLASS MEETS THE RULE 23(b)(3) FACTORS. ...........................15

      A.    Common Questions Of Law Or Fact Predominate Over Any Individual Issues.......................................................................................................16

           1.    Common Issues Predominate Regarding Liability On Plaintiffs' GBL § 349 Claim.............................................................................18

           2.    Common Issues Predominate With Regard to Plaintiffs' California Claims. ....................................................................................19

           3.    Common Issues Predominate With Regard To Plaintiffs' FDUTPA Claim...........................................................................................21

           4.    Damages For All Claims Can Be Determined On A Classwide Basis.................................................................................................21

           5.    A Class Action Is The Superior Method Of Adjudicating The Controversy..................................................................................23

VI.   THE PROPOSED CLASS IS EASILY ASCERTAINABLE. .........................................24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013)......................................................14

*All Star Carts & Vehicles, Inc. v. BFI Income Fund*,
  280 F.R.D. 78 (E.D.N.Y. 2012)................................................................................................14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................................12, 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)....................................................................................................9, 16, 18

*In re Amla Litig.*,
  282 F. Supp. 3d 751 (S.D.N.Y. 2017)......................................................................................14

*Balderramo v. Go N.Y. Tours Inc.*,
  No. 15-2326, 2017 WL 2819863 (S.D.N.Y. June 28, 2017) ...................................................11

*Beck-Ellman v. Kaz USA, Inc.*,
  283 F.R.D. 558 (S.D. Cal. 2012) ..............................................................................................3

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015)..........................................................................................14, 15

*Berni v. Barilla G. e R. Fratelli, S.p.A.*,
  332 F.R.D. 14, 25-26 (E.D.N.Y. 2019).....................................................................................14

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) .................................................................................................8

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ..........................................................................22

*Broder v. MBNA Corp.*,
  281 A.D.2d 369 (N.Y. App. Div. 2001) ...................................................................................19

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012) .....................................................................................12

*Brown v. Hain Celestial Grp., Inc.*,
  No. 11-03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ..................................................3

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ...........................................................................18

*Carpenters Pension Trust Fund v. Barclays PLC*,
  No. 12-5329, 2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015)....................................23

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013)............................................................................13

*Chavez v. Blue Sky Natural Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010).......................................................................3

*Civic Ass'n of the Deaf v. Giuliani*,
  915 F. Supp. 622 (S.D.N.Y. 1996)....................................................................10

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)..............................................................20, 21, 22, 23

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ...............................................................3, 7

*Consolidated Rail Corp. v. Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..............................................................................9

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ....................................................16, 21

*Dei Rossi v. Whirlpool Corp.*,
  No. 12-00125, 2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ..................................3

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
  693 So. 2d 602 (Fla. Dist. Ct. App. 1997) ........................................................21

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)......................................................................................8

*Diaz v. Residential Credit Solutions, Inc.*,
  299 F.R.D. 16 (E.D.N.Y. 2014).......................................................................13

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) .............................................................. *passim*

*Elkind v. Revlon Consumer Prod. Corp.*,
  No. 14-2484, 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017).....................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011)...................................................................................8

924769.1

iii

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ........................................................................3

*Fitzpatrick v. General Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011) ......................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)..............................................................................11

*Fogarazzao v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ....................................................................11

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................ *passim*

*Gortat v. Capala Bros., Inc.*,
    257 F.R.D. 353 ..................................................................................................8

*Gortat v. Capala Bros., Inc.*,
    568 F. App'x 78 (2d Cir. 2014) ........................................................................7

*Gortat v. Capala Bros.*,
    No. 07-3629, 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) ..............................7

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)............................................................................12

*Gucciardo v. Titanium Constr. Servs., Inc.*,
    No. 16-1113, 2017 WL 3738777 (S.D.N.Y Aug. 30, 2017)........................9, 24

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (2012) ....................................................................................19

*Guido v. L'Oreal, USA, Inc.*,
    No. 11-01067, 2013 WL 3353857 (C.D. Cal. July 1, 2013)................3, 4, 10, 22

*Guido v. L'Oreal, USA, Inc.*,
    No. 11-01067, 2014 WL 6603730 (C.D. Cal. July 24, 2014)...............3, 10, 22

*Gulf Oil Co. v. Barnard*,
    452 U.S. 89 (1981)............................................................................................7

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) .................................................................7, 12

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ..............................................................2

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418 (S.D.N.Y. 2009) ...................................................................15, 19

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) ...............................................................3, 12, 20

*Johnson v. General Mills, Inc.*,
  276 F.R.D. 519 (C.D. Cal. 2011) ..........................................................................3

*Keegan v. American Honda Motor Corp.*,
  284 F.R.D. 504 (C.D. Cal. 2012) .................................................................11, 19

*Keilholtz v. Lennox Hearth Prods. Inc.*,
  268 F.R.D. 330 (N.D. Cal. Feb. 16, 2010)...........................................................20

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017).................................................................7, 9, 14

*Kurtz v. Kimberly-Clark Corp.*,
  Nos. 14-1142, 14-4090, 2019 WL 5483510 (E.D.N.Y. Oct. 25, 2019)..................23

*Kwikset Corp. v. Sup. Ct.*,
  51 Cal. 4th 310 (2011) ........................................................................................18

*Latman v. Costa Cruise Lines, N.V.*,
  758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ...........................................................21

*Makaeff v. Trump Univ., LLC*,
  No. 10-09402014, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).......................16, 20

*Marcus v. AT&T*,
  138 F.3d 46 (2d Cir. 1998)...................................................................................16

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)...............................................................................8, 9

*Mass. Mut. Life Ins. Co. v. Superior Ct.*,
  97 Cal. App. 4th 1282 (2002) ..............................................................................20

*Moore v. Margiotta*,
  581 F. Supp. 649 (E.D.N.Y. 1984) .......................................................................13

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)...............................................................................16

*Moreira v. Sherwood Landscaping Inc.*,
  No. 13-2640, 2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015)...................................9

*Morrissey v. Nextel Partners, Inc.*,
  72 A.D.3d 209 (N.Y. App. Div. 2010) ................................................................19

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010) ........................................................................21

*Ortega v. Natural Balance, Inc.*,
  300 F.R.D. 422 (C.D. Cal. 2014) ..........................................................................3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d, 623 N.Y.S.2d 529, 647 N.E.2d 741 .............................................16, 18

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017)................................................................................24

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ..........................................................................11

*Rikos v. Procter & Gamble Co.*,
  No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) .........................3, 21, 25

*Samuels v. King Motor Co.*,
  782 So. 2d 489 (Fla. Dist. Ct. App. 2001) ..........................................................21

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................ *passim*

*Seekamp v. It's Huge, Inc.*,
  No. 09-00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) .................................18

*Spann v. J.C. Penney Corp.*,
  307 F.R.D. 508 (C.D. Cal. 2015)...........................................................................3

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ............................................................................20

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) .............................................................................20

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (N.Y. 2000) ..................................................................................18

*Super Glue Corp. v. Avis Rent A Car Sys.*,
  132 A.D.2d 604 (N.Y. App. Div. 1987) ...............................................................19

*Sykes v. Mel Harris & Assocs., LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012) ........................................................................17

*Sykes v. Mel S. Harris & Assocs. LLC,*
  780 F.3d 70 (2d Cir. 2015) .................................................................... *passim*

*Tait v. BSH Home Appliances Corp.,*
  289 F.R.D. 466 (C.D. Cal. 2012) ....................................................... 11, 19

*Taylor v. American Bankers Ins. Gp.,*
  267 A.D.2d 178 (N.Y. App. Div. 1999) ................................................. 19

*In Re: TFT-LCD (Flat Panel) Antitrust Litig.,*
  267 F.R.D. 291 (N.D. Cal. 2010) ........................................................... 23

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ........................................................................... 20

*Tuckish v. Pompano Motor Co.,*
  337 F. Supp. 2d 1313 (S.D. Fla. 2004) .................................................. 21

*In re U.S. Foodservice Inc. Pricing Litig.,*
  729 F.3d 108 (2d Cir. 2013) ............................................................ 10, 23

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ................................................................... 4, 9, 10

*In re Whirlpool Corp. Front-Loading Washer Prodt.s Liab. Litig.,*
  722 F.3d 838 (6th Cir. 2013) ........................................................... 10, 18

*Wiener v. Dannon Co., Inc.,*
  255 F.R.D. 658 (C.D. Cal. 2009) .......................................................... 20

*Zeisel v. Diamond Foods, Inc.,*
  No. 10-01192, 2011 WL 2221113 (N.D. Cal. Jun. 7, 2011) .................. 3, 20

**Statutes**

California Civil Code § 1780 ...................................................................... 14

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ........................................ *passim*

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...................................... 4, 16, 19

Florida Deceptive and Unfair Trade Practices Act §§ 501.201, *et seq.* ............................... 4, 14, 21

Florida Statue Annotated § 501.211(1) ...................................................... 14

Florida Statute Annotated § 501.202 ........................................................ 21

New York General Busines Law § 349 ................................................... *passim*

Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ......... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 23 .................................................................8, 9, 12, 25

Federal Rule of Civil Procedure 23(a) ...............................................................9, 11

Federal Rule of Civil Procedure 23(a)(1) ...............................................................9

Federal Rule of Civil Procedure 23(a)(3) .............................................................11

Federal Rule of Civil Procedure 23(a)(4) .............................................................12

Federal Rule of Civil Procedure 23(b)(2) .............................................................14

Federal Rule of Civil Procedure 23(b)(3) .......................................................... *passim*

## **INTRODUCTION**

Few actions are as appropriate for class treatment as the one at bar.  Plaintiffs Amanda Short, Sarah Thomas, Charity Bustamante, and Elizabeth Livingston ("Plaintiffs") assert claims on behalf of millions of consumers in New York, California, and Florida based on uniformly deceptive labels from Defendant KIND LLC ("Defendant" or "KIND") for the snack products at issue (the "Products"),[1] stating the Products are "All Natural" and "Non-GMO."[2]  Unfortunately for consumers, the Products are neither.

Rather than being "All Natural," the Products contain ingredients that are synthetic and artificial.   Indeed, ███████████████████████████████████████ ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████  The Products also contain genetically-modified ("GMO") ingredients or are sourced from GMO ingredients.  *See* Biogen Laboratory Developments, L.L.C. Certificate of Analysis of KIND Plus Bar - Peanut Butter Dark Chocolate + Protein, SHORT_0001, Exhibit D to Garber Decl. (showing GMO "Detected"); ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[1] "Products" refers to those listed in Paragraph 1 of the Amended Consolidated Class Action Complaint ("CAC," ECF No. 84) and are listed for the Court's convenience in the Declaration of Todd S. Garber ("Garber Decl."), ¶ 3.

[2] More specifically, all Products originally were labeled (1) "Non-GMO" and "All Natural"; then, after this action was filed, (2) "Non-GMO"; and, subsequently, that was changed to (3) "No Genetically Engineered Ingredients" following the Food and Drug Administration's ("FDA") publication of *Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants: Guidance for Industry* (Nov. 2015). █████████████████ ███████████; Exhibit 15 to Lanning Depo., attached as Exhibit F to Garber Decl. (FDA publication); ████████████████████████████████████.  For ease of reference, these labeling representations will be referred to as KIND's "All Natural" and "Non-GMO" labels. ███████ ████████████████████████████████

███████████████████████████████

KIND prominently applied its "All Natural" and "Non-GMO" labels to every Product because it knows that labels matter to consumers and drive sales. "'The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source.'" *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013) (quoting *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 328 (2011)). ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ Plaintiffs' expert has likewise concluded from an analysis of the market for such products that "all natural" and "non-GMO" labeling increases consumer demand and market prices for products with such labeling. *See* Expert Declaration of Stephen F. Hamilton ("Hamilton Decl.") at ¶ 15.

Plaintiffs are typical of members of the proposed classes: they bought Products at a premium price because they were labeled "All Natural" and "Non-GMO," precisely as KIND intended. Unfortunately for Plaintiffs, they were misled because the Products contain synthetic and GMO ingredients.

Plaintiffs move to certify the following classes:

> All persons who purchased KIND's Products in New York for their personal use and not for resale at any time since April 17, 2009. (The "New York Class.")

> All persons who purchased KIND's Products in California for their personal use and not for resale at any time since April 17, 2011. (The "California Class.")

> All persons who purchased KIND's Products in Florida for their personal use and not for resale at any time since April 17, 2011.[3] (The "Florida

---

[3] Excluded from every proposed class definition are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest and the judicial officer to whom this lawsuit is assigned.

Class.")

Claims for consumer deception based on uniform labels are well-suited for class certification, and courts within this Circuit and across the country routinely certify classes based on similar deceptive advertising claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (labels on grass seed); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 564 (S.D.N.Y. 2014) (labels on olive oil); *Rikos v. Procter & Gamble Co.*, No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) (affirming certification relating to labels on probiotic nutritional supplement); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) (labels on cooking oil); *Brown v. Hain Celestial Grp., Inc.*, No. 11-03082, 2014 WL 6483216, at *2 (N.D. Cal. Nov. 18, 2014) (organic labeling for products that "contain insufficient organic content to lawfully make such claims"); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2014 WL 6603730, at *19 (C.D. Cal. July 24, 2014) (certifying a class of California consumers when L'Oreal failed to label its serum with a flammability warning); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2013 WL 3353857, at *19 (C.D. Cal. July 1, 2013) (same for New York consumers); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) (falsely advertised original and sale prices); *Dei Rossi v. Whirlpool Corp.*, No. 12-00125, 2015 WL 1932484, at *12 (E.D. Cal. Apr. 28, 2015) (mislabeled appliances as Energy Star qualified).[4]

While fact discovery is ongoing, the evidence uncovered to date shows that Plaintiffs' and Class members' claims all arise from Defendant's uniform course of conduct, and that all factual

---

[4] *See also Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014) (label dietary supplement); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012) (labels on heating pads); *Zeisel v. Diamond Foods, Inc.*, No. 10-01192, 2011 WL 2221113, *1 (N.D. Cal. Jun. 7, 2011) (food labels); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 369 (N.D. Cal. 2010) (beverage labels); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011) (denying motion to de-certify class based on allegedly false claims that yogurt products promoted digestive health); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 554 (S.D. Cal. 2012) (certifying class of California consumers who purchased multivitamins misleadingly advertised to provide prostate health benefits); *In re Ferrero Litig.*, 278 F.R.D. 552, 556 (S.D. Cal. 2011) (certifying class where plaintiffs alleged that Ferrero misleadingly promoted its Nutella spread as healthy and beneficial to children).

issues necessary to resolve Plaintiffs' and Class members' claims against KIND are common and can be proven on a class-wide basis. Specifically: 1) the Products have uniform labels containing the "All Natural" and "Non-GMO" misrepresentations; 2) the Products all contain synthetic ingredients and/or GMO-based ingredients; and 3) the "All Natural" and "Non-GMO" claims directly result in common injury because consumers pay a price premium for the Products and thus no individualized damages inquiries are necessary. These facts are "apt to drive the resolution of the litigation." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).

The relief requested also supports certification. Damages under N.Y. Gen. Bus. Law ("GBL") § 349 are statutory and thus "no individualized damages inquiries are necessary for the New York class." *Guido*, 2013 WL 3353857, at *16. Alternatively, damages under GBL § 349, California's consumer protection statutes (California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and Florida's consumer protection statute (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Sta. §§ 501.201, *et seq.*), may be measured by the amount class members overpaid as a result of Defendant's deceptive conduct. Plaintiffs can and will prove that all consumers pay a price premium as a direct result of Defendant's misrepresentation, which causes consumers to pay more for the Products than they otherwise would. *See* Hamilton Decl. ¶¶ 43-65.

As further detailed below, this predominantly common evidence shows that Plaintiffs meet all the requirements of Rule 23(a) and 23(b)(3), as well as 23(b)(2). Therefore, Plaintiffs respectfully request that this Court certify the proposed Classes, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel pursuant to Fed. R. Civ. P. 23(g)(1).

## I.    COMMON FACTS TO THE PROPOSED CLASS

Defendant admits that all of the Products originally were labeled "All Natural" and "Non-GMO." KIND removed the "All Natural" phrase from its Products' labels after this action was filed, █████████████████████████████████████████████████████████████████



KIND sold the Products throughout the United States, including in New York, California, and Florida, with the "All Natural" and "Non-GMO" labels prominently displayed on the front of all of the Product packaging.

Unsurprisingly, Plaintiffs all relied upon and understood these representations to mean that the Products were, in fact,  all natural and GMO-free. *See* Declaration of Amanda Short ("Short Decl.") at ¶¶ 4-5; Declaration of Sarah Thomas ("Thomas Decl.") at ¶¶ 4-5; Declaration of Charity Bustamante ("Bustamante Decl.") at ¶ 4-5; Declaration of Elizabeth Livingston ("Livingston Decl.") at ¶¶ 4-5.  Plaintiffs were willing to, and did, purchase the Products at a higher price based on the belief that they were "All Natural" and "Non-GMO."  *See* Short Decl. at ¶¶ 6-7; Thomas Decl. at ¶¶ 6-7; Bustamante Decl. at ¶¶ 6-7; Livingston Decl. at ¶¶ 6-7.  Consumers, such as Plaintiffs, must rely on companies to make accurate representations of natural and non-GMO attributes of products on their labels, in part because such advertised attributes do not substantially affect the appearance of the products. Hamilton Decl. at ¶¶ 30-31.

Contrary to KIND's labels, Plaintiffs contend that the Products are not all natural and that they contain GMO or GMO-sourced ingredients.  These allegations can be established with a

common set of proof, as discovery already shows. █████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████

The available data is more than sufficient to establish whether Plaintiffs and Class members paid more for the Products than they would have but for the deceptive labels and the amount of damages as a result.  Plaintiffs have retained Dr. Stephen F. Hamilton, Ph.D., Professor and Director of Graduate Studies in the Department of Economics at California Polytechnic State University, San Luis Obispo, as an expert to conduct this analysis using widely accepted models and practices.  *See* Hamilton Decl. at ¶¶ 1-7.

Plaintiffs' expert will utilize KIND's data and accepted analytical models to establish -- on a class-wide basis -- that KIND's "All Natural" and "non-GMO" labeling resulted in a price premium paid by consumers who purchased the Products. *See* Hamilton Decl. at ¶¶ 12, 19-22. Through application of hedonic regression models, Plaintiffs' expert will prove the existence of a price premium associated with the "All Natural" and "non-GMO" attributes on the Product labels. *Id.* at ¶¶ 19-20, 48-55. This method is accepted in the Second Circuit for calculating class-wide damages in consumer protection class actions such as this matter. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017) ("Mr. Weir's report -- which proposes using 'hedonic regression' to calculate how much, if any, of the price of the wipes products are attributable to the 'flushable' representation -- is adequate for class certification."); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D.N.Y. 2015) (approving price premium damages models including hedonic regression analysis); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 277-78 (E.D.N.Y. 2019) (same). Alternatively, Plaintiffs' expert can apply a conjoint analysis to establish this price premium. Hamilton Decl. at ¶¶ 21, 56-61. This method is likewise regularly accepted in this Circuit for damage calculations in similar class actions. *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413 (approving price premium damages models including conjoint analysis); *Hasemann*, 331 F.R.D. at 277-78 (E.D.N.Y. 2019) (same); *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1025-27 (certifying class in false advertising case concerning "100% Natural" and "GMO-free" representations and citing cases where conjoint analysis was used to calculate price premium).

## II.   STANDARDS FOR DETERMINING WHETHER TO CERTIFY A CLASS PURSUANT TO RULE 23

The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981). "Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Gortat v. Capala Bros.*, No. 07-3629, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012), *aff'd sub nom. Gortat v.*

*Capala Bros., Inc*., 568 F. App'x 78 (2d Cir. 2014); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

Any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the class members. *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[W]hen a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward."). Indeed, "'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361-62 (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

It is well-established in this Circuit that while "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013); citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). In determining whether a class should be certified, the question is not whether plaintiff will prevail on the merits, but whether, based on the Court's factual and legal determinations, the requirements of Rule 23 have been established by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). Thus, "a court 'should not assess any aspect of the merits unrelated to a Rule 23 requirement.'" *Goldemberg*, 317 F.R.D. at 385 (quoting *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). "Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied." *Amgen*, 568 U.S. at 466.  "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."  *Id.* (internal citations omitted). Although the Court must conduct a rigorous analysis in assessing the propriety of class certification, "[t]he Second Circuit gives Rule 23 a 'liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'"  *Gucciardo v. Titanium Constr. Servs., Inc.*, No. 16-1113, 2017 WL 3738777, at *3 (S.D.N.Y Aug. 30, 2017) (quoting *Marisol A.*, 126 F.3d at 377); *see also Moreira v. Sherwood Landscaping Inc.*, No. 13-2640, 2015 WL 1527731, at *5 (E.D.N.Y. Mar. 31, 2015) (quoting *Spread Enters., Inc. v. First Data Merchant Services Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014)).  Plaintiffs satisfy each of the prerequisites of Rule 23(a) and 23(b)(2) and (3).

## III.   THE PROPOSED CLASS SATISFIES THE RULE 23(A) FACTORS.

### A.   Rule 23(a)(1): The Proposed Class Is Sufficiently Numerous.

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable."  Numerosity is satisfied if the proposed class consists of forty or more members. *See Consolidated Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class is "obviously numerous."  *Marisol A.*, 126 F.3d at 376.  The Products are purchased by consumers each year in hundreds of supermarkets, convenience stores, coffee shops, and other outlets across the country.  ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████  Accordingly, the proposed Class clearly satisfies the numerosity prerequisite of Rule 23(a).  *See, e.g.*, *Kurtz*, 321 F.R.D. at 529 (numerosity requirement met where "tens of thousands of units" sold in New York based on defendant's records).

### B.   Rule 23(a)(2): The Commonality Requirement Is Met.

As the Supreme Court held in *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution -- which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  Thus, commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'  Consideration of this requirement obligates a district court to determine whether plaintiffs have 'suffered the same injury.'"  *Sykes*, 780 F.3d at 84 (affirming order granting motion for class certification and quoting *Dukes*, 131 S. Ct. at 2551).  "Commonality does not mandate that all class members make identical claims and arguments."  *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class).  Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Dukes*, 131 S. Ct. at 2562; *see also In re Whirlpool Corp. Front-Loading Washer Prodt.s Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("We start from the premise that there need be only one common question to certify a class.").

Courts routinely find commonality when claims arise from uniform misrepresentations. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials."  (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading.  The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *Guido v. L'Oreal*, USA, Inc., No. 11-1067, 2013 WL 3353857, at *4 (C.D. Cal. July 1, 2013) (certifying a class under New York's GBL and finding that commonality is met when the "gravamen of plaintiffs' claims . . . is that Serum should have, but did not, contain

flammability warning" and "[b]ecause Serum was packaged and sold uniformly across the nation").[5]

Although Defendant's challenged labels have changed since Plaintiffs filed this lawsuit, those changes have been consistent across all Products at issue, and liability on each of Defendant's iterations of the challenged labels will turn on common proof. ████████████ █████ Class Members' claims depend on the resolution of a common, central contention -- whether the Products' labels would mislead a reasonable consumer.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409-410; *Ebin*, 297 F.R.D. at 568.   The commonality prerequisite of Rule 23(a) is satisfied.

### C.  Rule 23(a)(3): Plaintiffs' Claims Are Typical Of Those Of The Class.

Rule 23(a)(3) requires that the named plaintiffs' claims be "typical" of the class.  Fed. R. Civ. P. 23(a)(3).  "[T]he typicality requirement is not demanding." *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 107 (S.D.N.Y. 2011); *see also, e.g.*, *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (same).  The requirement is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Balderramo v. Go N.Y. Tours Inc.*, No. 15-2326, 2017 WL 2819863, at *3 (S.D.N.Y. June 28, 2017) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)); *see*

---

[5] *See, e.g., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (certifying class under California, Maryland, Illinois and New York consumer protection laws and holding that commonality is met when the claims of prospective class members involved the same alleged defect in washers sold by defendants containing the same key components); *Keegan v. American Honda Motor Corp.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (certifying class under California's UCL and CLRA, as well as New York's GBL § 349, and holding that commonality requirement was met in products liability action against automobile manufacturer because the claims of all prospective class members involved same alleged defect in vehicles of same make and model).

*also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("If we were to deny a class action simply because all of the allegations of the class to not fit together like pieces in a jigsaw puzzle, we would destroy much of the utility of Rule 23.").  Consumers of the same product, exposed to the same labels and packaging, will have almost entirely the same claims with, at most, minor variations in the facts surrounding their individual purchases.  *See Ebin*, 297 F.R.D. at 566-67 (plaintiff purchasers of mislabeled olive oil products were typical of other potential class members despite any differences relating to their individual purchasing decisions); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (typicality met where plaintiffs and proposed class had the same claims arising out of defendant's marketing campaign for men's vitamins).

Typicality is met here as Plaintiffs and the proposed Class assert the same claims, which arise from the same course of conduct -- the same promises KIND made on the label of every Product it sold to the Class Members.

Further, Plaintiffs' claims are typical of all other Class Members' claims regardless of which varieties of Products they purchased, because all varieties were labeled "All Natural" and "Non-GMO" (or, later, "No Genetically Engineered Ingredients").  Where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant."  *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 269 (E.D.N.Y. 2019) ("Plaintiffs are arguing that the same course of events -- the unlawful conduct of false labeling and marketing -- resulted in price premiums for an entire product line.  These arguments will be typical for the entire class of consumers that purchased anything from that product line.").

### D.   Rule 23(a)(4): Plaintiffs Will Adequately Represent The Class.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class."  *Sykes*, 780 F.3d at 90 (citation omitted); *see also Amchem*, 521 U.S. at 625-26 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between

named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (citations omitted)).  "Class representatives must have a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 (citation omitted).  "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'"  *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Courts in the Second Circuit have consistently applied a lenient standard for meeting both of the adequate representation prerequisites.  *Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16, 20-21 (E.D.N.Y. 2014).  For the first requirement (adequacy of class representatives), Second Circuit courts have required that plaintiffs merely show that "no fundamental conflicts exist" between a class' representative(s) and its members.  *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).  For the second requirement (adequacy of class counsel), courts in the Second Circuit generally presume it met, only finding it not met in instances where class counsel represents other clients whose interests are inherently at odds with the class' interests or also acts as a class representative.  *Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984).

Here, the adequate representation prerequisite is satisfied.  Plaintiffs have no fundamental conflicts with other class members' interests, as they seek the same type of relief (injunctive relief and damages) and assert the same legal claims, as other Class Members.  *See* Short Decl. at ¶¶ 3, 9; Thomas Decl. at ¶¶ 3, 9; Bustamante Decl. at ¶¶ 3, 9; Livingston Decl. at ¶¶ 3, 9.  They have diligently served as class representatives throughout this litigation, providing discovery responses, and are scheduled to sit for their respective depositions.  *See* Short Decl. at ¶¶ 10-12; Thomas Decl. at ¶¶ 10-12; Bustamante Decl. at ¶¶ 10-12; Livingston Decl. at ¶¶ 10-12.  Similarly, Class Counsel are qualified, experienced and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy.  *See* Garber Decl., ¶¶ 4-6; Declaration of Tina Wolfson, ¶¶ 3-5; Declaration of Daniel L. Warshaw, ¶¶ 4-10.  The adequacy prerequisite is met.

IV.     **THE PROPOSED CLASSES SATISFY THE RULE 23(b)(2) REQUIREMENTS.**

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief." Fed. R. Civ. P. 23(b)(2).  Injunctive relief is expressly authorized for Plaintiffs' statutory claims under New York's GBL § 349, California's UCL and CLRA, and Florida's FDUTPA.  *See* N.Y. GBL § 349(h); Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780; Fla. Sta. Ann. § 501.211(1).  Certification under Fed. R. Civ. P. 23(b)(2) is appropriate where the defendant "has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief."  Fed. R. Civ. P. 23(b)(2).  "That plaintiffs are seeking substantial monetary damages is of no concern given [that Plaintiffs seek] certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively." *Sykes*, 780 F.3d at 293 (S.D.N.Y. 2012); *All Star Carts & Vehicles, Inc. v. BFI Income Fund*, 280 F.R.D. 78, 86 (E.D.N.Y. 2012) (same).

This action qualifies for certification under Rule 23(b)(2) because Defendant's uniform, deceptive labeling practices are generally applicable to all Class members, the requested injunctive relief will be reasonably necessary and appropriate after Plaintiffs succeed on the merits, and the restitution sought is incidental to the requested injunctive relief.  *See Sykes*, 780 F.3d at 97 (affirming (b)(2) certification based on the "defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against putative class members").  Numerous courts in this Circuit have found that past purchasers of products, deceived by misleading labels, may obtain injunctive relief under Rule 23(b)(2) requiring the labels be changed – even where there is not clear evidence that the plaintiffs will purchase the same product again.  *See In re Amla Litig.*, 282 F. Supp. 3d 751, 769 (S.D.N.Y. 2017); *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 25-26 (E.D.N.Y. 2019); *Kurtz*, 321 F.R.D. at 543; *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 2015); *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-2484, 2017 WL 9480894, at *12-13 (E.D.N.Y. Mar. 9, 2017), *adopted by* 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017); *Ackerman v. Coca-Cola Co.*, No. 09-395, 2013 WL 7044866, *17 (E.D.N.Y. July 18,

2013).  It is appropriate to find that such purchasers have Article III standing because holding otherwise "would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated.  The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury.  But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction." *Belfiore*, 311 F.R.D. at 67.

In *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009), the court certified a similar class seeking injunctive relief under New York GBL § 349, relating to Best Buy's deceptive disclosures relating to its price-match guarantee, reasoning:

> If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks. Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice* . . . ." N.Y. Gen. Bus. Law § 349(b) (emphasis added). . . . Accordingly, the class meets the requirements of Rule 23(b)(2).

256 F.R.D. at 433-34.  The court's reasoning in *Jermyn* is equally applicable here.  An injunction preventing Defendant from continuing to label its Products "All Natural" and "Non-GMO" in the future has a high value to consumers who otherwise would purchase the Products in the future, beyond any damages Class members may be awarded for past deception suffered in connection with past purchases.  Absent such relief, KIND admits it is fully capable of using these misleading labels in the future. ███████████████

## V.    THE PROPOSED CLASS MEETS THE RULE 23(b)(3) FACTORS.

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.

### A.    <u>Common Questions Of Law Or Fact Predominate Over Any Individual Issues.</u>

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original).  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  "[T]he Supreme Court has also instructed that Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof . . . individual questions need not be absent.  The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.  The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81 (citations and internal alterations omitted).  The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24.  Predominance is also "readily met in certain cases alleging consumer . . . fraud." *Id*. at 625.  Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them.

Common issues unquestionably predominate in this litigation.  Indeed, the overriding common question is whether labeling the Products "All Natural" and "Non-GMO" is deceptive. This is a binary issue, resolution of which will be outcome determinative for the entire class because deceptiveness is evaluated under the objective reasonable consumer standard.  *See Marcus v. AT&T*, 138 F.3d 46, 64 (2d Cir. 1998); (N.Y. GBL § 349); *Goldemberg*, 317 F.R.D. at 389; *Oswego Laborers'*, 85 N.Y.2d at 26 (same); *see also Makaeff v. Trump Univ., LLC*, No. 10-09402014, 2014 WL 688164, at *11, 13 (S.D. Cal. Feb. 21, 2014) (UCL, FAL, CLRA); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (FDUTPA).

Moreover, materiality is determined by an objective "reasonable consumer" standard, so this issue also is common to the class.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he

Supreme Court has held materiality 'is a question common to all members of the class' when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard." (citing *Amgen*, 568 U.S. at 459)).

In *Goldemberg*, the court certified a class action involving "natural" products where the plaintiffs asserted that all class members were subjected to the same deceptive representation, including "the labeling of Aveeno products with the Active Naturals trademark," which led consumers to believe that the products were, in fact, natural when the majority of the ingredients were synthetic and artificial. *Goldemberg*, 317 F.R.D. at 387. The court held "[a]ssuming the product and its labeling and packaging remains constant and is uniform between consumers, then the only question is how such packaging would have influenced a consumer under the objective test." *Id*. at 389. The court defined the objective test as "whether it was 'likely to have misle[d] a reasonable consumer acting reasonably under the circumstances" *Id*. (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741). Factual distinctions between individual class members did not defeat a finding of commonality, including, for example, whether "some consumers . . . purchased the product because they liked the color of the bottle, without regard to the Active Naturals labeling, and will continue purchasing the product for that reason." *Id*. at 399.

"[P]roduct specific labeling and packaging claims . . . do not require proof as to individual understandings and can be judged based on the objective standard . . . . The materiality of potentially deceptive representations is similarly subject to objective proof." *Goldemberg*, 317 F.R.D. at 389. "Therefore, common questions predominate over individual issues" and the requirements of Rule 23(b)(3) are met. *Id*. A jury will decide whether each of the challenged labeling claims is deceptive or not, for all the Products, with respect to all Class members. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and therefore whether this practice violates GBL § 349 "does not depend on individualized

considerations"); *Seekamp v. It's Huge, Inc.*, No. 09-00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying GBL § 349 claim where the alleged legality of the representation was the "'gravamen of every class member's claim, and so may be proven on a class-wide level'" (quoting *Jermyn*, 256 F.R.D. at 435)). Indeed, label representations are presumed to be material. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th at 327. Thus, as in *Amgen*, the Class here is "entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen*, 568 U.S. at 460; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("There is a single, central, common issue of liability: whether the Sears washing machine was defective."); *In re Whirlpool Corp.*, 722 F.3d at 859 ("Following *Amgen's* lead, we uphold the district court's determination that common questions predominate as evidence will either prove or disprove liability as to all class members").

KIND's use of "All Natural" and "non-GMO" claims on its product labels was consistent and "can be judged based on the objective standard," and "[t]he materiality of potentially deceptive representations is . . . subject to objective proof." *Goldemberg*, 317 F.R.D. at 389. Thus, Rule 23's predominance requirement is met.

### 1.     Common Issues Predominate<br>Regarding Liability On Plaintiffs' GBL § 349 Claim.

Because common proof can be used to prove each element of Plaintiffs' and the proposed Classes' claims, common issues predominate over any individual concerns. In order to show that a plaintiff is entitled to relief for violation of GBL § 349, a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000). The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *Oswego Laborers'*, 85 N.Y.2d at 26. As Judge Briccetti held, "Plaintiffs' GBL claims thus depend on generalized evidence. Classwide evidence will be used to

establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 483 (2012) (finding common issues predominate as to injury on plaintiffs' GBL claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" the advertising was false "can be established with common proof"); *Tait*, 289 F.R.D. at 485 (certifying GBL § 349 class when manufacturer of front-loading washing machines failed to disclose washers' propensity to develop biofilm, mold, mildew and foul odors); *Keegan*, 284 F.R.D. at 552 (certifying New York GBL § 349 claims and finding predominance when defendants allegedly provided the "same information to the entire class, i.e., no information, concerning the possibility of excessive negative camber"); *Jermyn*, 256 F.R.D. at 435 (certifying GBL § 349 class and holding that "[c]ourts have repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification").[6]   As such, predominance is satisfied here.

### 2. Common Issues Predominate With Regard To Plaintiffs' California Claims.

While pled under various legal theories, Plaintiff Bustamante's claims under the UCL, FAL, and CLRA boil down to a single issue that is susceptible to common proof; whether Defendant's deceptive label is likely to mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

---

[6] See also *Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216 (N.Y. App. Div. 2010) (certifying GBL §349 claim and holding that the predominant common issue presented was whether the location and typeface of spending limit fee increase disclosure received by all class members was deceptive); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (N.Y. App. Div. 2001) (granting motion for class certification with respect to GBL § 349 claims based on identical written solicitations); *Taylor v. American Bankers Ins. Gp.*, 267 A.D.2d 178 (N.Y. App. Div. 1999) (affirming certification of claim for violation of GBL § 349 based on defendants' uniform offers of insurance coverage); *Super Glue Corp. v. Avis Rent A Car Sys.*, 132 A.D.2d 604, 607 (N.Y. App. Div. 1987) (reversing denial of class certification of unfair trade practices claim where claims were based on defendant's "standardized rental agreements").

2008)).  As with N.Y. G.B.L. § 349, this is an objective test that is subject to common proof.  *See Makaeff*, 2014 WL 688164, at *11.

Under the UCL and CLRA, only the class representative needs to have relied on the representation; no such showing is required with respect to other members of the class.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-57 (2010); *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1293 (2002).  Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Makaeff*, 2014 WL 688164, at *13 (internal quotations and citations omitted).  Relief under any of the UCL's prongs is available "without individualized proof of deception, reliance and injury."  *Stearns*, 655 F.3d at 1020.  Plaintiff Bustamante purchased the Products in reliance on the false "All Natural" and "Non GMO" labels, and would not have done so had she known the labels were false.  Bustamante Decl. ¶¶ 5-7.

Under California law, a misrepresentation is material:

> If a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable mind would have been influenced by it.

*Makaeff*, 2014 WL 688164, at *13 (citing *Stearns*, 655 F.3d at 1022 *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)).  The fact that the statement prominently appeared on every label is evidence of its materiality.  *See, e.g., Johns*, 280 F.R.D. at 558-59; *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669-70 (C.D. Cal. 2009).  Numerous courts have applied this inference of reliance to certify CLRA claims.  *See, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410; *Zeisel*, 2011 WL 2221113, at *11; *Johns*, 280 F.R.D. at 551; *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340-43 (N.D. Cal. Feb. 16, 2010).  As such, predominance is satisfied for the California claims.

### 3.      Common Issues Predominate With Regard To Plaintiffs' FDUTPA Claim.

FDUTPA is "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); *see also* Fla. Stat. Ann. § 501.202.  The "FDUTPA is to be liberally construed" to protect consumers.  *See Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. Dist. Ct. App. 1997) (same).  Similar to a claim under New York and California law, a "claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Rikos*, 2015 WL 4978712, at *13.  Causation is proven objectively and actual reliance is not required under FDUTPA.  "[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance." *Davis*, 776 So. 2d at 974; *see also Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (affirming reasoning of lower court, 263 F.R.D. 687, 695 ("[T]o satisfy FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would — in theory — deceive an objective reasonable consumer")); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (certifying FDUTPA claims for deceptive advertising of health benefits of baby formula products).

If Defendant's "All Natural" and "Non-GMO" claims are "likely to deceive" a reasonable consumer, then Defendant is liable under FDUTPA and common issues predominate.  *See Fitzpatrick*, 635 F.3d at 1282-83; *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 702 (Fla. Dist. Ct. App. 2000) (finding class in FDUTPA action should be certified).  As such, predominance is satisfied for the Florida claim.

### 4.      Damages For All Claims Can Be Determined On A Classwide Basis.

At class certification, Plaintiffs must "establish[] that damages are capable of measurement

on a classwide basis." *Comcast*, 133 S. Ct. at 1433.  Plaintiffs' method for calculating damages on a class-wide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory."  *Id*.  Plaintiffs Short, Thomas, and other New York Class members were injured due to their purchases of Defendant's mislabeled Products.  In *Guido*, the Court held that the plaintiffs sufficiently showed that common issues predominated on their GBL § 349 claim: "[B]ecause awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class.  These considerations show that the predominance requirement is satisfied for the New York class."  *Guido*, 2013 WL 3353857, at *16.  The New York class damages will simply be a matter of multiplying the number of units sold by the $50 statutory damages.

In addition to statutory damages for the New York Class, all members of the three classes were injured because they paid a price premium caused by Defendant's deceptive "All Natural" and "Non-GMO" label, and that price premium also is subject to common proof.  Plaintiffs' expert will prove the existence of the price premium attributable to the "All Natural" and "non-GMO" labeling on the Products through application of hedonic regression analyses, as well as conjoint analysis as needed to supplement the hedonic methodologies.  *See* Hamilton Decl. at ¶¶ 45-62. "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received."  *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) (citing *Colgan*, 135 Cal. App. 4th at 700).  As Plaintiffs' expert explains:

> Regression analysis identifies and quantifies the relationship between two or more variables, seeking to identify the variation in a so-called "dependent" variable (such as the price of a snack bar) due to that variable's relationship with one or more "independent" or "explanatory" variables (such as whether or not a snack bar is labeled "All Natural" or "non-GMO"). Regression analysis can confirm that use of the "All Natural" or "non-GMO" representation on the product label increases the market price of a snack bar, and if so, the magnitude of the Price Premium. Regression analysis controls for other factors influencing prices that are measured in the data (e.g., flavor, brand, package type, retail chain, and location of purchase) and captures the effects of unmeasured variables through the residual or "disturbance" term.

Hamilton Decl. at ¶¶ 20-21.  This regression analysis approach provides a workable means of

calculating restitution in this case, and thus "[P]laintiffs have met their burden to show that damages can be established using common proof." *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 311-12, 314 (N.D. Cal. 2010) *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012); *see also Kurtz v. Kimberly-Clark Corp.*, Nos. 14-1142, 14-4090, 2019 WL 5483510, at *13 (E.D.N.Y. Oct. 25, 2019) (denying motion to exclude expert testimony and holding that, through regression analysis, "Plaintiffs have met their burden and produced common proof of causation and injury").

"Plaintiffs' model survives the minimal scrutiny required under *Comcast* and Rule 23(b)(3) -- their theory of liability matches their theory of damages and individualized damages issues will not predominate." *Carpenters Pension Trust Fund v. Barclays PLC*, No. 12-5329, 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015). Thus, the Classes are appropriate for certification.

### 5. A Class Action Is The Superior Method Of Adjudicating The Controversy.

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of certification.

Each class member's interest in bringing his or her own case is negligible, if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery. When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery.  Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'") (quoting Fed. R. Civ. P. 23 advisory committee's notes)).

Plaintiffs are unaware of any other litigation concerning class members' claims, and it is desirable to concentrate litigation of the claims in one forum.

## VI.     THE PROPOSED CLASS IS EASILY ASCERTAINABLE.

The Second Circuit requires that the class be ascertainable, but recognizes that this is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way."  *Gucciardo*, 2017 WL 3738777, at *6 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017)).  It expressly declined to adopt the theory that ascertainability also requires, at the certification stage, a showing of administrative feasibility. *In re Petrobras Sec. Litig.*, 862 F.3d at 265.  In its reasoning, the Second Circuit found that the district court had properly determined the class to be ascertainable because the requirement "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* (quoting *Ebin*, 297 F.R.D. at 567).  Indeed, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *Id.* (quoting *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)) (internal quotation marks omitted).   "However, 'freestanding administrative feasibility' is not required, only 'that a class be defined using objective criteria that establish a membership with definite boundaries.'"  *Id.* at 264.

The ascertainability requirement is met here.  The Class definitions are imminently objective as they are simply comprised of every person who purchased one of the Products in New York, in Florida, or in California during the class period.  Simply put, a person either purchased one of the Products or they did not.  Thus, the Classes are sufficiently definite.  That all Class

Members may not have receipts or other documentary proof is of no moment.  *See Goldemberg*, 317 F.R.D. at 398 (holding that "denial of class certification in consumer protection cases like these on the basis of ascertainability would severely contract the class action mechanism as a means for injured consumers to seek redress under statutes specifically designed to protect their interests") (citing *Ebin*, 297 F.R.D. at 567).  In *Ebin*, as here, an ascertainable class was defined as "persons in the United States who purchased Capatriti packed before March 1, 2013 . . . ."  297 F.R.D. at 567.  The defendant contended that lack of proof of purchase precluded ascertainability, but the *Ebin* court found that defendant's proposed definition of ascertainability "would render class actions against producers almost impossible to bring."  *Id*.; *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 ("The Court agrees with Judge Rakoff's reasoning in *Ebin*. Declining to certify classes when consumers are likely to lack proof of purchase would render class actions against producers almost impossible to bring." (internal quotations omitted)).

Here, as in *Ebin*, *Goldemberg*, and *Scotts EZ Seed*, the classes are defined by objective criteria: those who purchased one or more of the Products during the class period.  There is nothing subjective about these definitions -- individuals either purchased one of the Products, or they did not.  As such, each class is ascertainable.[7]

### <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully move this Court for an Order certifying the above-identified Classes, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel.

---

[7] Both the Sixth and Seventh Circuit have recently agreed.  *See Rikos*, 2015 WL 4978712, at *22 (citing *Mullins v. Direct Digital, LLC*, No. 15-1776, 2015 WL 4546159, at *7 (7th Cir. July 28, 2015) (declining to follow *Carrera* because "[t]he Third Circuit's approach in *Carrera*, which is at this point the high-water mark of its developing ascertainability doctrine, goes much further than the established meaning of ascertainability and in our view misreads Rule 23").

Respectfully submitted,

Dated:  January 17, 2020

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By:      /s/ *Todd Garber*
          Todd S. Garber
          *tgarber@fbfglaw.com*
          D. Greg Blankinship
          *gblankinship@fbfglaw.com*
          445 Hamilton Ave., Suite 605
          White Plains, New York 10601
          Tel: (914) 298-3283
          Fax: (914) 824-1561

          Tina Wolfson
          *twolfson@ahdootwolfson.com*
          Robert Ahdoot
          *rahdoot@ahdootwolfson.com*
          Theodore W. Maya
          *tmaya@ahdootwolfson.com*
          **AHDOOT & WOLFSON, PC**
          10728 Lindbrook Drive
          Los Angeles, California 90024-3102
          Tel: (310) 474-9111
          Fax: (310) 474-8585

          Daniel L. Warshaw
          *dwarshaw@pswlaw.com*
          Matthew A. Pearson
          *mapearson@pswlaw.com*
          **PEARSON, SIMON & WARSHAW, LLP**
          15165 Ventura Boulevard, Suite 400
          Sherman Oaks, California 91403
          Tel: (818) 788-8300
          Fax: (818) 788-8104

          *Co-Lead Counsel for Plaintiffs*
          *and the Putative Class*