**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ················································· X | |
| IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION | : |
| | : |
| | : Case No. 1:15-md-02645-WHP |
| | : Case No. 1:15-mc-02645-WHP |
| | : |
| _____ | : **REDACTED DEFENDANT** |
| | : **KIND LLC'S MEMORANDUM** |
| | : **IN OPPOSITION TO** |
| THIS DOCUMENT RELATES TO: | : **PLAINTIFFS' MOTION FOR** |
| | : **CLASS CERTIFICATION** |
| ALL ACTIONS | : |
| | : |
| ················································· X | |

**TABLE OF CONTENTS**

TABLE OF REFERENCES ........................................................................................v

I.    INTRODUCTION ..........................................................................................1

II.   FACTUAL BACKGROUND.........................................................................4

    A.    There Is No Uniform Label Statement Challenged By Plaintiffs........................5

    B.    The Products Are Not Similar As To Challenged Ingredients ............................5

    C.    Plaintiffs' Natural Claim Is Not Supported, Let Alone By Classwide Facts ........................................................................................6

        1.    Plaintiffs' Do Not Define "Natural" .......................................................6

        2.    Vitamins A and C..................................................................................7

        3.    Ion-Exchanged Syrup (Glucose Syrup) .................................................8

        4.    Soy Ingredients Where Hexane Is Used As A Processing Aid................9

    D.    Plaintiffs' Non GMO Claim Is Not Supported, Let Alone By Classwide Facts ........................................................................................9

III.  LEGAL ARGUMENT SUPPORTING DENIAL OF CLASS CERTIFICATION .......10

    A.    Common Factual And Legal Issues Do Not Predominate ..................................11

        1.    There Is No Uniform Deceptive Labeling Statement ............................11

        2.    Plaintiffs Have No Common Evidence Of Deception ...........................14

            a.    "All Natural" ...........................................................................14

            b.    "Non GMO" .............................................................................15

        3.    Plaintiffs Have No Common Evidence Of Materiality...........................16

        4.    Plaintiffs Have No Classwide Evidence of Causation And Injury .........19

        5.    Plaintiffs Cannot Establish Damages On A Classwide Basis................20

            a.    The Damage Model Is Not Reliable................................................20

            b.    The Damage Model Is Not Tied To The Theory Of Liability ........21

    B.    Plaintiffs' Are Not Typical Of The Class .........................................................22

    C.    The Proposed Classes Are Not Ascertainable ...................................................24

    D.    Plaintiffs Cannot Certify An Injunctive Relief Class Under Rule 23(b)(2)........24

IV.  CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. and Sales Practices Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017) .................................................. 17, 19

*Ackerman v. Coca-Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................ 19, 20, 25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................ 11

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ........................................................... 16

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ........................................................... 15, 17, 18

*Ault v. J.M. Smucker Co.*,
  310 F.R.D. 59 (S.D.N.Y. 2015) .................................................................*passim*

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015).................................................................................. 24

*Bruton v. Gerber Prods. Co.*,
  2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) .................................................... 21

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................................... 10, 20, 21

*In re ConAgra Foods*,
  302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................... 22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y 2016) ........................................................................ 12

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008)........................................................................ 21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)............................................................................................ 10

*in Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014)............................................................................... 23

*Johnson v. Nextel Commc'ns, Inc.*,
  780 F.3d 128 (2d Cir. 2015)............................................................................... 11

*Jones v. ConAgra Foods, Inc.*,
 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................................................ 14, 15, 24

*Lee-Bolton v. Koppers Inc.*,
 319 F.R.D. 346 (N.D. Fla. 2017) ........................................................................... 21

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
 211 F.R.D. 228 (S.D.N.Y. 2002) ........................................................................... 24

*Marotto v. Kellogg Co.*,
 415 F. Supp. 3d. 476 (S.D.N.Y 2019) .................................................................. 12

*McLaughlin v. Am. Tobacco Co.*,
 522 F.3d 215 (2d Cir. 2008) .................................................................................. 21

*In re NJOY, Inc. Consumer Class Action Litig.*,
 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................................... 18

*Orlander v. Staples, Inc.*,
 802 F.3d 289 (2d Cir. 2015) .................................................................................. 17

*Pagan v. Abbott Lab, Inc.*,
 287 F.R.D. 139 (E.D.N.Y. 2012) ........................................................................... 23

*Parks v. Ainsworth Pet Nutrition, LLC*,
 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ...................................................... 15, 18

*Pelayo v. Nestle USA, Inc.*,
 989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................. 15

*Randolph v. J.M. Smucker Co.*,
 303 F.R.D. 679 (S.D. Fla. 2014) ...................................................................*passim*

*Ries v. Arizona Beverages USA LLC*,
 287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................... 25

*Robinson v. Metro-North Commuter R.R. Co.*,
 267 F.3d 147 (2d Cir. 2001) .................................................................................. 22

*Ruffo v. Adidas Am. Inc.*,
 2016 WL 4581344 (Sept. 2, 2016 S.D.N.Y) ........................................................ 11

*Sarr v. BEF Foods, Inc.*,
 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .......................................................... 7

*Shanks v. Jarrow Formulas, Inc.*,
2019 WL 4398506 (C.D. Cal. Aug. 27, 2019) ...................................................... 17

*Singleton v. Fifth Generation, Inc*,
2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ....................................... 14, 17, 21

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ......................................................... 16, 17

*In Re Tropicana Orange Juice Mktg. and Sales Practices Litig.*,
2019 WL 2521958 (D.N.J. June 18, 2019) .................................................... 12, 17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .............................................................................. 10, 11, 25

*Ward v. Apple Inc.*,
784 F. App'x 539 (9th Cir. 2019) ......................................................................... 21

*Weiner v. Snapple Beverage Corp.*,
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ........................................... 19, 20, 21

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................... 23

**Statutes**

N.Y. Gen. Bus. Law § 349 ..................................................................................... 19

N.Y. Gen. Bus. Law § 350 ....................................................................................... 2

**Other Authorities**

7 C.F.R. § 205.105 ................................................................................................. 10

7 C.F.R. § 205.605 ................................................................................................... 8

7 C.F.R. § 205.606 ................................................................................................... 9

Fed. R. Civ. P. 23 ...........................................................................................*passim*

# TABLE OF REFERENCES

| Abbreviation | Document | Role in Case |
|---|---|---|
| DG Decl. | Declaration of Dale J. Giali | Counsel for Defendant |
| RK Rep. | Expert Report of Dr. Ran Kivetz | Defendant's Consumer Survey, Marketing, and Consumer Purchasing Behavior Expert |
| CB Tr. | Deposition Transcript of Charity Bustamante; Ex. D to the DG Decl. | Plaintiff Charity Bustamante |
| AS Tr. | Deposition Transcript of Amanda Short, Ex. C to the DG Decl. | Plaintiff Amanda Short |
| EL Tr. | Deposition Transcript of Elizabeth Livingston, Ex. A to the DG Decl. | Plaintiff Elizabeth Livingston |
| ST Tr. | Deposition Transcript of Sarah Thomas, Ex. B to the DG Decl. | Plaintiff Sarah Thomas |
| BL Decl. | Declaration of Brian Lutter | Defendant's Director of New Ventures and Innovation |
| BL Tr. | Deposition Transcript of Brian Lutter, Ex. M to the DG Decl. | Defendant's Director of New Ventures and Innovation |
| LAN Decl. | Declaration of Elle Lanning | Defendant's Chief of Staff and Executive Vice President Corporate Development |
| LAN Tr. | Deposition Transcript of Elle Lanning, Ex. O to the DG Decl. | Defendant's Chief of Staff and Executive Vice President Corporate Development |
| SH Rpt. | Expert Report of Dr. Stephen Hamilton | Plaintiffs' Damages Expert |
| SH Tr. | Deposition Transcript of Dr. Stephen Hamilton, Ex. P to the DG Decl. | Plaintiffs' Damages Expert |

## I. INTRODUCTION

KIND LLC ("KIND") created the iconic KIND snack bar and disrupted an industry. Finding a snack bar market long dominated by extruded bars loaded up with sugar, KIND introduced a proprietary recipe featuring premium whole nuts as the primary ingredient and see-through packaging that allowed consumers to view the product they were buying.

On April 14, 2015, in the midst of KIND's growing popularity, FDA publicly posted a Warning Letter it had previously sent to KIND that challenged its use of the word "healthy" on its labels. FDA claimed that federal food label regulations prohibited KIND from using the word "healthy" on four of its bar flavors because of the amount of fat per serving.

Within hours of FDA posting—and the popular press reporting on—the Warning Letter, consumer class actions were in development: putative plaintiffs were identified and purchases of the four challenged KIND bar flavors in reliance on the word "healthy" were made. The next day, class action lawyers began sending demand letters to KIND and within a few days they began filing lawsuits (so many, that a multi-district litigation order followed). Significantly, once the lawsuits were filed, each plaintiff stopped purchasing KIND products. The plaintiffs all asserted they felt betrayed by the representation and would no longer buy KIND products (even though Livingston never even saw the "healthy" statement). For good measure, some plaintiffs (though not all) also challenged KIND's "All Natural" statement (*e.g.*, Short and Thomas challenged 1 ingredient in 24 products as not natural) and some (though not all) also challenged the "Non GMO" statement though not "All Natural" (*e.g.*, Bustamante).

A year later, FDA withdrew its challenge to KIND's use of the term "healthy." FDA agreed with KIND that the word "healthy" on KIND's products did not violate the regulation and, separately, that the focus on all fat (without accounting for how much was "good" unsaturated fat) was no longer good science. Remarkably, once FDA withdrew its challenge, the consumer deception flowing from the word "healthy" also vanished, and plaintiffs voluntarily dismissed their "healthy" claims. Undaunted, Class Counsel filed an Amended Consolidated Complaint ("ACC") down-playing "healthy" and pivoting to "All Natural/Non GMO,"

1

expanding the number of alleged non-natural ingredients to 11, and increasing the number of challenged products to 39.

But, this is a false advertising case and the underlying basis for the false advertising allegation (allegedly false "healthy" representation) cannot so easily be changed (to allegedly false "All Natural/Non GMO" representation) when external circumstances change. The record that's important in false advertising is what allegedly deceived plaintiffs *when they were purchasing the products*, not what now fits after the initial theory of false advertising collapses. *See generally* attached Appendix C for a graphical illustration of the record detailed above.

All of this goes a long way toward explaining why, after 5 years, plaintiffs have no cohesive classwide theory of liability or damages (let alone evidence) as to "All Natural/Non GMO" and why plaintiffs' motion to certify single-state classes for California, New York, and Florida under both Rule 23(b)(2) and 23(b)(3) is inadequate.[1] Plaintiffs rely almost exclusively on the assertion that this case involves "a uniform labeling statement," which, according to plaintiffs, makes class certification essentially automatic. But plaintiffs' wave-of-the-hand motion is not only inconsistent with the "rigorous analysis" required by Fed. R. Civ. P. 23, but is entirely disconnected from the uncontroverted record in this case, including that:

► ***Plaintiffs provide no evidence that class members were exposed to uniformly deceptive advertising***. During the class period, the "All Natural/Non GMO" label statement did not appear uniformly on the challenged products. Significantly, beginning in 2014 KIND began removing the "All Natural" statement and by 2017 it was completely removed and *no* challenged product contained any "natural" labeling after that time. Similarly, KIND began the process of replacing the "Non GMO" label statement with "No Genetically Engineered Ingredients" in 2015, which was complete with a few minor exceptions by 2017. *See* Appendix B (graphical illustration of the various labels during the class period). Not only are plaintiffs

---

[1] The motion is inconsistent with the ACC in that it does not seek to certify (i) a nationwide class under any theory; or (ii) any class based on many of the causes of action alleged in the ACC, including breach of express warranty, unjust enrichment/restitution, negligent misrepresentation, and violation of N.Y. Gen. Bus. Law § 350.

seeking to certify classes for time periods in which *no* consumer was exposed to the challenged label statement, but at least some products never had the challenged statement or were discontinued during the class period. Further complicating matters, the motion challenges 5 different ingredients as being not natural, but each product contains different ingredients and combinations of one or more of the challenged ingredients. Moreover, 9 products do not contain *any* ingredient challenged in the motion as being not natural. Accordingly, there is *no common theory* why any product was deceptively labeled as "All Natural/Non GMO."

► ***Plaintiffs provide no classwide evidence of deception***. Although plaintiffs contend that the "All Natural/Non GMO" statement was deceptive, they do not provide any consistent definition of what "all natural" or "Non GMO" means to consumers or how the challenged label statement is misleading in light of that (non-existent) definition. Nor could they because plaintiffs have no idea what "natural" means or why the "All Natural/Non GMO" statement is false. They are relying on their lawyers for that, but the attorneys haven't provided a sufficient classwide definition either. None of this is surprising, but it is precisely because of this inability to define "natural" that courts repeatedly find natural claims inappropriate for class treatment.

► ***Plaintiffs provide no classwide evidence of materiality***. Plaintiffs have no evidence—no survey, no expert testimony—that the "All Natural/Non GMO" label statement was material to a reasonable consumer's purchasing decision. In contrast, a considerable record, including a robust materiality survey conducted by KIND, which shows that the "All Natural/Non GMO" label statement was *not* material to consumers. This is in addition to the fact that there is no common definition of natural and the challenged label statements were not uniform during the class period, all of which further undermines the possibility of classwide materiality. Moreover, plaintiffs fail to grapple with the fact that they simultaneously challenge *two* separate labeling statements ("All Natural" *and* "Non GMO"), with no explanation as to how they will show both are material.

► ***Plaintiffs provide no reliable methodology for calculating damages on a classwide basis***. After 5 years, all plaintiffs offer on damages is 2 possible theoretical approaches (hedonic

regression and conjoint analysis); no damages calculation or even a proven damages model. Indeed, plaintiffs' expert has not yet gathered any data and does not know if his proposed model can reliably calculate damages. In other words, he does not know if there is a price premium attributable to the "All Natural/Non GMO" label statement, whether treated as one statement or separated out. And, even assuming a price premium, plaintiffs cannot show that it is attributable to their "natural" or "GMO" theory of liability, since they failed to disclose what consumers expect or how those expectations have been frustrated.

► ***Plaintiffs are not entitled to certification of a Fed. R. Civ. P. 23(b)(2) injunctive relief class***. First, plaintiffs fail to make the required showing that monetary damages are incidental to the sought after injunctive relief. Second, there is no basis for the Court to issue an injunction where, as here, the challenged label statement was removed years ago and there is no evidence of any intention by KIND to put "All Natural/Non GMO" back on its labels.

If these fatal defects were not enough, plaintiffs' motion also fails because their claims are not typical of other class members or consistent amongst themselves. Moreover, plaintiffs' overbroad class definitions illustrate that the proposed class is not ascertainable. Individual class members will not be able to recall which product, and what variation of the label, he or she purchased. That is fatal to class certification given that the class definitions include 39 products, each with label variations, differing attribute variations and differing ingredients, and each intersecting with the five challenged ingredients in differing ways. For these and other reasons, as further detailed below, plaintiffs' motion for class certification should be denied.

## II.  FACTUAL BACKGROUND

The motion seeks certification of three classes of consumers (California, Florida, and New York) who purchased 1 of 39 different KIND products, including KIND Core bars, KIND Healthy Grains bars, and KIND Healthy Grains clusters (the "Products"), during the period April 2009 (New York) or April 2011 (California/Florida) to the present. Mot. at 2-3. Plaintiffs challenge multiple and varied combinations of (i) label statements, (ii) ingredients, (iii) product types, and (iv) product attributes, including Products that do not say "All Natural/Non GMO."

### A. There Is No Uniform Label Statement Challenged By Plaintiffs

Plaintiffs' motion rests on the proposition that this case relates to a "uniform labeling statement" of "All Natural/Non GMO," but that's simply not true. During the class period, the majority of the 39 different Products contained up to 3 different label versions: (i) "All Natural/Non GMO," (ii) "Non GMO," and (iii) "No Genetically Engineered Ingredients." LAN Decl. at ¶¶ 9-15. Some were either never labeled "All Natural/Non GMO" or were discontinued at some point during the class period. *Id*. at ¶¶ 13-14. And, because KIND removed the "All Natural" label statement on a product-by-product rolling basis beginning in 2014, different Products had different versions of the label at the same time. *Id*. at ¶¶ 9-15. In many instances, the *same* Product had two different versions of the label in-market at the *same* time. *Id*. at ¶¶ 8-9. For all products, the "All Natural/Non GMO" statement was removed at the latest in 2017, making plaintiffs' class definition necessarily overbroad and inappropriate. *Id*. Appendix B illustrates the wide variations in the challenged label statements during the class period.

### B. The Products Are Not Similar As To Challenged Ingredients

In addition to the significant variations in the product labels, there are pervasive differences between the individual Products that preclude determination of the alleged falsity of the "All Natural/Non GMO" label statement through common evidence. First, and notably, the product types are distinctly different (nut bars, grain bars, and bags of granola). That fact is significant because none of the plaintiffs purchased Healthy Grains clusters (granola), three (Livingston, Thomas, Short) never purchased Healthy Grains bars, and the other (Bustamante) says she only *might* have purchased a Healthy Grains bar. *See* EL Tr. at 141:9-142:16; ST Tr. at 140:13-142:13; AS Tr. at 110:7-113:17; CB Tr. at 227:12-228:15.

Second, the motion alleges that the "All Natural" labeling for *all* 39 Products is deceptive because they contain five different ingredients: (i) soy lecithin, (ii) soy protein isolate,

(iii) vitamin C, (iv) vitamin A, and (v) glucose syrup.[2] Mot. at 6. But *no* Product contains all 5 ingredients and *9 Products* do not contain *any* of these ingredients. BL Decl. at ¶¶ 22, 28. The remaining 30 Products contain different combinations of the challenged ingredients: 26 Products contain soy lecithin, 5 Products contain two variations of soy protein isolate, 26 Products contain glucose syrup, and 3 Products contain vitamins A and C. *Id.* at ¶¶ 22, 24-27. Appendix A illustrates the lack of commonality of the "All Natural" claim across the Products.

Similarly, the motion alleges that the "Non GMO" labeling for *all* 39 Products is deceptive, but does not identify a single ingredient in any of the Products that is "GMO-derived," much less that the alleged "GMO-derived" ingredient is common to all of the Products. *See* Mot. at 1, 4. The ACC alleges that the inclusion of any soy-based or corn-based ingredient could potentially preclude the Products from being "Non GMO," but in the 5 years this case has been pending, plaintiffs have not developed this allegation. *See* ACC at ¶¶ 34-35.

## C. Plaintiffs' Natural Claim Is Not Supported, Let Alone By Classwide Facts

The motion offers no factual basis for the Court to conclude that any of the challenged ingredients in the Products are inconsistent with the "All Natural" label statement. Plaintiffs conclusory statement to that effect is insufficient to meet their burden on this motion.

### 1. Plaintiffs' Do Not Define "Natural"

As a dispositive matter, the motion does not define natural. Plaintiffs themselves did not offer a cohesive or consistent definition of natural either, for themselves or reasonable consumers.[3] Instead, plaintiffs testified that they are relying on their attorneys to say why the

---

[2] The ACC alleges that there are 11 different ingredients that preclude the Products from being "natural," but plaintiffs do not assert in the motion that the other six ingredients challenged in the ACC are not natural. *See* ACC at ¶¶ 35, 49.

[3] *See* ST Tr. at 177:2-18 (other consumers may define it differently than her), 203:19-206:7 (can differ with different products; not sure if there is a one-size-fits-all definition of "natural"); EL Tr. at 47:2-20 (doesn't know how other consumers define natural and it's likely different than her), 63:12-22 (same), 68:15-18 ("something you'd pull out of the Earth, it would just be natural, untouched"), 214:6-7 ("you can pull it out of the dirt"), 206:21-208:15 (natural means *healthy* and that it's *good for you*), 210:8-211:1 (doesn't know any requirements for labeling food as natural); AS Tr. at 53:2-54:7 (made from whole nuts, fruits and whole grains), 303:15-

Products or challenged ingredients are not natural. EL Tr. at 217:2-221:19, 229:15-230:1; ST Tr. at 35:20-37:3, 89:11-94:3; AS Tr. at 120:11-136:2; CB Tr. at 225:10-22, 272:22-284:11.

None of this is surprising; the academic research shows that consumers have differing understandings of natural, if they have an understanding at all, and many consumers are skeptical of "natural" and "non-GMO" claims. RK Rpt. at ¶¶ 51-66.

## 2. Vitamins A and C

KIND uses vitamin A and vitamin C in three of the Products: "KIND Bar + Antioxidants." All are conspicuously labeled (in much larger font than the "All Natural/Non GMO" statement) to inform consumers of the presence of added vitamins A and C. LAN Decl. at Exs. C, D; BL Decl. at ¶¶ 12-13; AS Tr. 258:21-259:8. Plaintiffs present no theory as to how or why they or consumers are deceived by the enrichment of these Products with vitamins A and C, a fact clearly communicated to consumers. It is not plausible that plaintiffs (or reasonable consumers) could not have realized that these products contained added vitamins, much less that they were deceived by their inclusion in the products. *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (court must consider entire context of the package in determining whether a reasonable consumer would be misled.)

Regardless, plaintiffs offer no evidence that consumers do not expect products labeled natural to contain added vitamins. EL Tr. at 159:4-160:3, 220:19-221:6 (does not know why vitamins A and C are inconsistent with natural); ST Tr. at 93:1-7, 92:15-22, 167:3-7 (same); AS Tr. at 130:19-131:19, 132:7-133:11 (same); CB Tr. at 280:16-282:7 (same). Nor could they as

---

304:12 (consumers may define it differently), 310:3-311:14 (natural is difficult to define; doesn't know any requirements for labeling food as natural), 323:11-22 (does not know how other consumers define it), 324:1-16 (does not know if processing or the fact that an ingredient is synthetic or artificial impacts natural); CB Tr. at 208:6-209:13, 265:1-9 (same), 224:1-18 (doesn't know how another consumer might define it), 130:5-131:15 (it means non-GMO and good for me), *but see id.* at 129:16-130:4 (non-GMO means *healthy*).

vitamins are sold in natural food stores and are permitted in foods certified organic by the USDA. *See* 7 C.F.R. § 205.605; Whole Foods Market Standards; BL Tr. at 154:17-25; 159:4-7.[4]

### 3. Ion-Exchanged Syrup (Glucose Syrup)

Despite no mention of it in the ACC, the motion contends that 26 of the 39 Products are not "natural" because they contain "ion-exchanged syrups." Mot. at 6. Plaintiffs, however, do not: (i) identify which ingredient they contend is the alleged "ion-exchanged" syrup (for the purposes of this opposition, KIND assumes plaintiffs are referring to glucose syrup); (ii) identify what products contain the alleged "ion-exchanged" syrup; (iii) provide any evidence that any syrup used by KIND is "ion-exchanged;" or (iv) explain why an "ion-exchanged" syrup is inconsistent with an "All Natural" label statement. Plaintiffs notably offer no decisions or standards to support their claim that an "ion-exchanged syrup" cannot be "natural." EL Tr. at 218:8-219:2 (she does not know why glucose syrup is not natural); ST Tr. at 91:3-9 (same); AS Tr. at 124:11-125:22 (same); CB Tr. at 276:18-277:20 (possible that glucose syrup is inconsistent with natural but she does not know).

The motion relies on the misleading citation to deposition testimony as the sole basis for this allegation. Mot. at 6. Notably, plaintiffs don't provide the court with the actual document referenced in that testimony—for reasons that become obvious once the document is reviewed. In the email, ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ *See* DG Decl. at Ex. N (emphasis added). That is the sum total of plaintiffs' evidence. It does not come close to establishing that KIND ended up using this ingredient or supplier or that any KIND product actually contains an "ion-exchanged syrup," much less that its presence would be inconsistent with a consumer's expectation of a "natural" product.

---

[4] *Available at* https://assets.wholefoodsmarket.com/www/products/quality-standards/Unacceptable_Ingredients_for_Food_031519.pdf.

#### 4. Soy Ingredients Where Hexane Is Used As A Processing Aid

Finally, plaintiffs argue that because a processing aid (hexane) is used in connection with two of KIND's soy ingredients—soy lecithin (contained in 26 Products) and soy protein isolate (contained in 5 products)—those ingredients are not "natural." Notably, KIND's soy lecithin and soy protein isolate ingredients are non-GMO. BL Decl. at ¶¶ 8-9. Plaintiffs offer no definition or standard for natural—commonly understood by reasonable consumers—that would exclude the use of non-GMO soy lecithin and soy protein isolate in a natural product simply because the ingredient was subjected to processing. Plaintiffs, themselves, have no understanding of why soy lecithin is not natural. ST. Tr. at 76:9-15; AS Tr. at 49:20-50:6; EL Tr. at 217:2-221:19; CB Tr. at 273:9-274:11. And KIND sources its soy protein isolate from different suppliers, at least one of which does not use hexane as a processing aid. BL Tr. at 125:13-25; BL Decl. at ¶¶ 19, 21. That means that not all of the soy protein isolate used by KIND would be impacted under plaintiffs' hexane-processed theory of "natural," and it would be difficult, if not impossible, to determine which KIND product contained soy protein isolate from which supplier during the class period. BL Decl. at ¶ 21. All of which goes to show that plaintiffs will not be able to support their theory of deception.

#### D. Plaintiffs' Non GMO Claim Is Not Supported, Let Alone By Classwide Facts

Plaintiffs also argue that the "All Natural/Non GMO" label statement is deceptive because the Products "contain GMO or GMO-sourced ingredients." Mot. at 5. Plaintiffs don't explain what they mean by that, don't identify the ingredient (or ingredients) allegedly genetically modified, and don't identify which Products contain the (unidentified) ingredient. Plaintiffs' failure to develop their non GMO theory is no accident. As established by the undisputed evidentiary record (*e.g.*, witness testimony, ingredient specifications, ingredient supplier verifications) *all* of KIND's ingredients are non-GMO. BL Tr. at 44:21-24; 45:3-6; 45:23-24; 47:75-9; BL Decl. at ¶¶ 9-10; LAN Tr. at 107:9-13; 108:3-5.

Plaintiffs, on the other hand, point to two things, neither of which comes close to demonstrating that consumers were deceived by the "Non GMO" label statement. *First*, they

reference a document entitled " 

—an ingredient *not* challenged in

the ACC or used in any of the Products— . *See* BL Tr. at 102:14-22. The

certification also includes a required boiler-plate disclosure that "

. Garber Decl. at Ex. C.

BL Tr. at 103:18-19; BL Decl. at ¶¶ 8-9. *Second*,

plaintiffs cite to an unverified 2015 result of a *single* test of a *single* KIND product that

purportedly detected a trace amount of GMO DNA (0.01% GMO). Garber Decl. Ex. D. At best

for plaintiffs, the test result supports the possibility that "unintended or technically unavoidable"

traces of GMO DNA was present in that one product. The single test is insufficient to establish

classwide that consumers purchased a Product that contained a GMO-derived ingredient. The

single test does not support the allegation that the Products contain GMO-derived ingredient(s).[5]

## III.   LEGAL ARGUMENT SUPPORTING DENIAL OF CLASS CERTIFICATION

"The class action is an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

(citation omitted). Rule 23 requires that a plaintiff seeking class certification "affirmatively

demonstrate" with "evidence" that he has satisfied all of its prerequisites, and a class can only

be certified if the Court, after a "rigorous analysis," determines that plaintiffs have "in fact"

proven each of the Rule 23 requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346,

350-51 (2011); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)

(plaintiffs "must actually *prove*—not simply plead—that their proposed class" satisfies Fed. R.

Civ. P. 23); *Ruffo v. Adidas Am. Inc.*, 2016 WL 4581344, at *2 (Sept. 2, 2016 S.D.N.Y) (a court

---

[5] It is for that reason that USDA's Organic Program uses ingredient *sourcing* and *tracing* to confirm the "non GMO" status of a certified organic product, and not product testing to detect GMO DNA. 7 C.F.R. § 205.105; USDA Policy Memorandum 11-13, *Genetically modified organisms* (Apr. 15, 2011), https://www.ams.usda.gov/sites/default/files/media/OrganicGMOPolicy.pdf.

must look behind the pleadings even if such an inquiry overlaps with the merits of plaintiffs claim). This analysis "will entail some overlap with the merits of the [] underlying claim," because class certification "generally involves considerations that are enmeshed in the factual and legal issues" of the case. *Wal-Mart*, 564 U.S. at 351.

Here, plaintiffs' motion fails by a wide margin because they have come forward with absolutely no evidence to meet their substantial burden under Fed. R. Civ. P. 23.

### A.     Common Factual And Legal Issues Do Not Predominate

Because plaintiffs seek to certify a class under Rule 23(b)(3), they must not only satisfy Rule 23(a)'s requirements, but also establish that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (the predominance test asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). In other words, plaintiffs must establish not only that "resolution of some of the legal or factual questions . . . can be achieved through generalized proof," but also that "these particular issues are more substantial than the issues subject only to individualized proof." *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 139 (2d Cir. 2015) (citation and internal quotation marks omitted). Plaintiffs cannot meet this standard, making class certification inappropriate.

### 1.     There Is No Uniform Deceptive Labeling Statement

The motion repeatedly asserts that certification is appropriate because plaintiffs' claims involve a "uniform labeling statement." But this characterization is not accurate. The uncontroverted evidence shows that class members were *not*—and could *not* have been— exposed to a uniform marketing statement because (i) "All Natural" was removed from the Products on a rolling basis beginning in 2014; (ii) "Non GMO" was removed from the Products on a rolling basis beginning in 2015; (iii) even under plaintiffs' view of the world, the basis for the falsity of the "All Natural" label statement varies from product to product due to differing ingredient combinations and some products containing *no* challenged ingredients; and (iv) the types of Products challenged are dissimilar, and that includes the attributes and flavors featured

on the label. *See* Appendices A & B. Moreover, because of the different contexts in which consumers were exposed to the challenged label statements, they are unlikely to have common exposure to and perception of the challenged label claims. RK Rep. at ¶ 67-83.

Class certification is inappropriate, where, as here, not all class members "saw the same advertisements . . . and not all the advertisements contained the alleged misrepresentations." *Goldemberg v. Johnson & Johnson Consumer Cos.,* 317 F.R.D. 374, 389 (S.D.N.Y 2016) (excluding from the class definition all products for which there were label changes during the class period); *In Re Tropicana Orange Juice Mktg. and Sales Practices Litig.*, 2019 WL 2521958, at *10 (D.N.J. June 18, 2019) (variations in product labels defeats predominance because an individualized inquiry is required to determine what combinations of the labels were visible to consumers); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 65 (S.D.N.Y. 2015) (predominance lacking where "only certain products on the market during the class period contain the allegedly misleading labels"); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014) (no predominance where the "class includes products which did not contain the alleged misrepresentation during the entire class period."); *Marotto v. Kellogg Co.*, 415 F. Supp. 3d. 476, 481 (S.D.N.Y 2019) (no predominance where multitude of labels during the class period and only a portion of them contained the challenged language).

*First*, not all class members were exposed to the "All Natural/Non GMO" label statement during the class period. As illustrated in Appendix B, the product labeling varied significantly during the class period. *Id*.; LAN Decl. at ¶¶ 9-15. In fact, at the time the ACC was filed in 2016, the "All Natural" label statement had been removed from all but six of the Products. *Id*. And shortly thereafter it was removed from all Products, such that during the last several years of the class period, no class members were exposed to the "All Natural" label statement. *Id*. During 2014-2016, not only did different flavors of the Products have different labels, many of the *same* Products would have had different versions of the label in-market at the same time. *See* App'x B. For example, during the class period, the KIND Caramel Almond & Sea Salt bar (shown below and at LAN Decl. at Ex. C) had three different versions:

  

Because of the variations in the product labels—and the fact that there were different variations of the labels for the same product in-market at the same time—there is no way to determine which label a consumer viewed at the time of his or her purchase even if the Product at some point said it was "All Natural" (and a consumer certainly would not remember). App'x B; RK Rpt. at ¶¶ 70-75. In addition, the context of those claims, including the position of the claim on the label and what other label claims it appeared with, also varied significantly, which impacts whether a consumer would notice or pay attention to that attribute or ascribe importance to it. *Id.* at ¶ 74. Further complicating matters, certain Products *never* contained the "All Natural/Non GMO" label statement. LAN Decl. at ¶¶ 9-15; App'x B.

*Second,* because the Products contain different combinations of challenged ingredients (some have none, some have one, while others have multiple), there is no common basis for determining whether the "All Natural" labeling is deceptive. For example, amongst the 39 Products, only 3 contain vitamins A & C and 9 of the Products do not contain any ingredient challenged as being inconsistent with natural. BL Decl. at. ¶¶ 24, 28. Accordingly, the falsity and materiality of the "All Natural" labeling statement will be different for each Product. *See* App'x A. The same is true for "Non GMO." If plaintiffs' theory is potential accidental cross-contamination, this would not be uniform across Products throughout the class period.

There are also three dissimilar *types* of products being challenged, *e.g.*, two different types of snack bars and one granola clusters product. *See* § II.B, *supra*. All of this illustrates that the foundation of plaintiffs' argument—the existence of a uniform labeling statement across identical products—does not exist. Individualized issues between and amongst the Products

would predominate, making class treatment inappropriate. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at * 14 (N.D. Cal. June 13, 2014) (no predominance "because consumers were exposed to label statements that varied . . . and the challenged ingredients also differed").

### 2. Plaintiffs Have No Common Evidence Of Deception

Plaintiffs also have not met their burden of demonstrating that they can prove on a classwide basis that the "All Natural/Non-GMO" label statement was deceptive to consumers. Plaintiffs present zero evidence that the "All Natural/Non GMO" representation is deceptive, either when the statement is considered altogether or when split up.

### a. "All Natural"

Plaintiffs have no evidence that the "All Natural" labeling statement is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Singleton v. Fifth Generation, Inc*, 2017 WL 5001444, at *17 (N.D.N.Y. Sept. 27, 2017). To meet this standard, plaintiffs must show "a probability, not simply a mere possibility, of deception." *Randolph*, 303 F.R.D. at 695. Plaintiffs cannot do so here for the simple reasons that they offer *no* explanation of (i) reasonable consumers' expectation of "natural" as applied to a KIND Product, or (ii) how their expectations about "natural" were frustrated by what they received.

The motion does not contain a definition of what "all natural" means to consumers.[6] Plaintiffs likewise could not articulate a consistent or understandable definition of what "all natural" means. *See* fn. 3, *supra.* Plaintiffs failure to define natural is understandable; there is no commonly understood definition of "natural." *See Randolph*, 303 F.R.D. at 694-96 ("The definition of 'natural' remains a fiercely disputed term in today's marketplace" and there is "no fixed meaning for the word."). That is why courts routinely find that that false advertising claims involving natural labeling are unsuitable for class certification. *Jones*, 2014 WL 2702726, at *14 ("[E]ven if the challenged statements were *facially* uniform, consumers'

---

[6] The ACC contains *five* different potential definitions of natural, each of which is inconsistent with each other. ACC at ¶¶ 39, 41, 43-47. None of those definitions is referred to in the motion, nor do plaintiffs explain how any of the challenged ingredients fails to meet any of them.

*understanding* of those representations would not be" because "there is no fixed meaning for the word 'natural.'"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) ("Plaintiffs fail to sufficiently show that 'All Natural' has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members").[7]

The motion identifies five ingredients that *could potentially* be inconsistent with natural, but provides no evidence that either plaintiffs or consumers believe them to be inconsistent with natural. *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863, *1 (S.D.N.Y. Feb. 20, 2020) (claims of deception regarding "natural" labeling implausible where plaintiffs failed to allege how or why a reasonable consumer would understand "natural" in the manner alleged in the complaint); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (without "an objective or plausible definition of the phrase 'All Natural,' [it's] . . . not deceptive"). Indeed, plaintiffs have no idea what the challenged ingredients are, much less why the challenged ingredients, or the Products that contain them, are inconsistent with natural. *See* fn. 3, *supra.* Instead, plaintiffs are relying on their attorneys to tell them why the Products are not natural. But, without a definition for what natural means to consumers, plaintiffs theory of deception is merely hypothetical and insufficient to establish predominance. *Jones*, 2014 WL 2702726, at *15 (finding no predominance because "it is not clear that the challenged ingredients here are 'not natural'"); *Astiana*, 291 F.R.D. at 508 (rejecting argument that ingredients that are permitted in foods certified as organic are inconsistent with natural labeling).

### b.    "Non GMO"

Likewise, plaintiffs present no facts to support their argument that the "Non GMO" statement is deceptive. Significantly, the motion fails to identify a single ingredient in any Product that is "GMO or GMO-derived." That's no surprise given that KIND strictly adheres to

---

[7] To be sure, the *Astiana* court certified a limited class as to an ingredient that was incompatible with *defendant*'s own published standard for natural. There is no record like that present here.

a policy of not using any genetically engineered ingredients, evidence of which KIND produced in this litigation. BL Decl. at ¶¶ 9-10. To the extent plaintiffs contend that the Products do not contain GMO ingredients, but instead may possibly contain trace amounts of GMO because of "unintended or technically unavoidable" cross-contamination, that theory is inconsistent with the ACC and plaintiffs' deposition testimony.[8] Regardless, that theory is incapable of showing deception on a classwide basis. Plaintiffs not only cannot establish that consumers interpret "Non GMO" to exclude "unintended or technically unavoidable" GMO, but individualized inquiries and testing of every Product purchased by a consumer would be required to determine if GMO were present. *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (denying class certification because plaintiff did not show a means existed for identifying challenged ingredient in class member's purchase).

### 3. Plaintiffs Have No Common Evidence Of Materiality

Plaintiffs also cannot establish predominance because they failed to present any classwide evidence that the "All Natural/Non GMO" label statement is material to consumers' purchasing decisions. Materiality must be shown in order to obtain class certification under California (materiality required to obtain a presumption of reliance) and New York and Florida consumer protection law (to be actionable, a misrepresentation must be material). *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) (denying class certification for failure to establish predominance because plaintiff failed to present evidence of materiality of challenged label statement, a requirement to establish reliance); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (Under the GBL and FDUTPA, plaintiffs must show that the challenged statements are "materially misleading"); *see also In Re Tropicana*, 2019 WL 2521958, at *11; *Astiana*, 291 F.R.D. at 508-509.

---

[8] *See* ACC ¶¶ 34-35; EL Tr. at 203:14-204:10 (does not know why the product is not non-GMO); ST Tr. at 87:19-88:16 (non-GMO theory relates to ingredients coming from non-GMO crops); AS Tr. at 118:14-119:9, 295:5-14 (non-GMO means made with genetically modified crops), 295:15-22 (possible that other consumers would have a different meaning of "non-GMO"); CB Tr. at 123:20-124:18 (ingredients come from non-GMO crops), 61:8-12 (defines healthy as non-GMO), 130:5-131:8 (non-GMO means natural).

The record of materiality here is non-existent. Plaintiffs admittedly conducted no consumer surveys and present no evidence at all as to whether the "All Natural/Non GMO" label statement was material to consumers' purchasing decisions. Instead, plaintiffs rely solely on the fact that the statement *is on the label*. Mot. at 18. That's it. But, courts routinely reject the argument that plaintiffs may dispense with showing materiality. *See Shanks v. Jarrow Formulas, Inc.*, 2019 WL 4398506, at *5-7 (C.D. Cal. Aug. 27, 2019) (denying class certification because plaintiff failed to meet the burden of putting forward evidence that the challenged statements were material).[9]

Plaintiffs' reliance on the mere fact that the statement appears on the label is also misplaced because the "All Natural/Non GMO" statement is both a dual statement and is also accompanied by at least 7 additional statements: Gluten Free; Low Glycemic; Good Source of Fiber; Very Low Sodium; Dairy Free; No Trans Fats; No Sulphur Dioxide, not to mention the other significant product attributes like premium ingredients and transparent packaging. *See* LAN Decl. at ¶ 16; RT Rpt. at ¶¶ 70-74. Plaintiffs offer no explanation, nor could they, as to why "All Natural/Non GMO" would be considered material in context, but the other label statements would not, or how eight different label statements are all material to consumers. RK Rpt. at ¶¶ 67-83. To the contrary, the factual record and the weight of legal authority all show that materiality cannot be established.

KIND's survey shows that the "All Natural" label statement is not material. Dr. Ran Kivetz, an expert in consumer purchasing behavior, conducted a materiality survey to test whether the "All Natural" label statement is material to consumers considering purchasing

---

[9] *See also In re 5-Hour Energy Mktg. and Sales Practices Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) ("Absent a consumer survey or other market research to indicate how consumers reacted to the [challenged] statements, and how they valued those statements . . . [p]laintiffs have not offered sufficient evidence of materiality across the class."); *Townsend*, 303 F. Supp. 3d at 1045 (plaintiff must present evidence "to assess whether the challenged statements were in fact material to [consumer's] purchases, as opposed to, or in addition to, prices, promotions, retail positioning, taste, []brand recognition" or any other factors that influence consumer purchasing decisions.); *Singleton*, 2017 WL 5001444, at *18 (at the class certification stage, plaintiffs must show that materiality "*can be* proven.").

KIND bars. RK Rpt. at ¶¶ 25-33; Ex. C. The survey demonstrated no statistical difference in consumers' likelihood of purchasing KIND bars between test and control group participants, meaning that removal of the "All Natural" statement had *no* material effect on consumers' purchasing decisions. *Id*. at ¶¶ 27-32. Further, participants' explanations as to why they would purchase KIND bars demonstrated that "All Natural" is not a common material factor in purchasing decisions. Rather, participants identified many differing reasons for purchase, including chocolate, protein, taste/flavor, nuts, general liking of the product, peanut butter, health, package appearance, brand, prior experience. *Id*. at ¶¶ 30. Overall, Dr. Kivetz concluded that "All Natural" is *not* an important or common causal factor that drives consumers' decisions to purchase the Products. *Id*. at ¶ 33. That opinion is bolstered by academic and market research that shows that "All Natural" is not a material purchase driver for consumers. *Id*. at ¶¶ 34-50.

Moreover, as a matter of law, the "All Natural/Non GMO" label statement is not material. *First*, an "All Natural" label statement cannot be material to consumers because there is no common definition or understanding of what "natural" means. *See Randolph*, 303 F.R.D. at 695-96; *Astiana*, 291 F.R.D. at 508-509; *see also* RK Rpt. at ¶¶ 17, 55-56 (academic research shows that consumers have varied understandings of natural). The same is true for "Non GMO," especially if plaintiffs are relying on alleged trace amounts of GMO (which they cannot prove) as their theory of deception because courts have found that "trace amounts" are not material to consumers. *See Parks*, 2020 WL 832863, at *1 (trace amounts of glyphosate are not material to consumers); RK Rpt. at ¶¶ 60. Finally, the lack of uniformity and failure to show common exposure to the "All Natural/Non GMO" label statement also precludes a showing of common materiality. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1111 (C.D. Cal. 2015) (failure to show that "advertising was sufficiently pervasive to warrant a presumption that all members of the class saw [the allegedly misleading] advertisements," means that plaintiffs "have not shown that materiality can be prove[n] on a classwide basis.").

In the face of this evidence, certification of all three classes (California, New York, and Florida) should be denied based on plaintiffs' failure to show materiality.

### 4. Plaintiffs Have No Classwide Evidence of Causation And Injury

Causation and injury are essential elements under both N.Y. Gen. Bus. Law § 349 and FDUTPA. *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *19 (E.D.N.Y. July 18, 2013); *In re 5-Hour Energy*, 2017 WL 2559615, at *6. To show causation and injury, plaintiffs must demonstrate that they *actually paid* a price premium based on the challenged label statement. *Ault*, 310 F.R.D. at 67 (class certification denied because plaintiffs failed to show that a price premium actually existed for cooking oils labeled "All Natural"); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010); *Randolph*, 303 F.R.D. at 697.

Here, plaintiffs admittedly have *no* evidence that consumers paid a price premium for the Products as a result of the "All Natural/Non-GMO" label statement. Plaintiffs' expert, Dr. Hamilton, admits that he has not yet determined whether a price premium even exists, or if it does, whether it will be statistically significant. Ham. Tr. at 48:16-49:1, 49:2-6, 94:5-7; SH Rpt. at ¶¶ 16, 42 ("To the extent that such a Price Premium exists, it absolutely can be quantified . . ."). To the contrary, Dr. Kivetz's research shows that it is unlikely that such a premium exists. *See* RK Rpt. at ¶¶ 95-103. Without having even bothered to do the work to determine if there really is a price premium for the challenged labeling, plaintiffs have no classwide evidence of causation or injury. Moreover, Livingston admits that that she would have purchased and would have been willing to pay the same price for the product regardless of the "All Natural/Non GMO" labeling, therefore, she did not suffer any economic harm. EL Tr. at 228:9-19, 233:5-21.

Plaintiffs don't get to skip causation by asserting that they seek statutory damages. *See* Mtn. at 21-22. "In order to receive the statutory amount, each class member would still have to prove causation, i.e., that he or she paid a premium." *Ackerman*, 2013 WL 7044866, at *20 n.32. Statutory damages come into play only *after p*laintiffs have shown the required element of causation, *i.e.* that a price premium exists, then the amount of damages can be fixed using statutory damages instead of the amount of any price premium. *Id.* The failure to show causation is an independent basis to deny certification of the New York and Florida classes.

### 5. Plaintiffs Cannot Establish Damages On A Classwide Basis

Plaintiffs are not entitled to class certification for the additional reason that they cannot "establish[] that damages are capable of measurement on a classwide basis." *Comcast*, 133 S. Ct. at 1433. To meet this requirement, plaintiffs must show that their damage model is reliable and that it will "measure only those damages attributable" to their theory of liability. *Id.*

### a. The Damage Model Is Not Reliable

Plaintiffs contend they have a reliable damage model because they have identified an economist, Dr. Stephen Hamilton, who proposes to design (at some point in the future) a hedonic regression methodology that *may* be able to calculate a price premium associated with the challenged labeling.[10] But, hedonic regression, in particular using the methodology proposed by Dr. Hamilton, is not a reliable method of calculating a price premium for a food product like the Products. *See* RK Rpt. at ¶¶ 94, 104-127; Motion to Exclude Hamilton at pp. 3-7.

Even if hedonic regression were a suitable methodology for measuring damages in this case, all plaintiffs have done is propose that it would be theoretically possible to do so. There is no showing that it will actually work. As in *Weiner*, plaintiffs assert they have a "suitable methodology," but "in reality, [Dr. Hamilton] has done nothing more than identify two possible approaches [hedonic regression and conjoint analysis] and assert that they will work in this case." 2010 WL 3119452, at *9. "Plaintiffs essentially ask that [Dr. Hamilton] be taken at his word" even though Dr. Hamilton "does not yet know whether his methodology will, in fact, be workable in this case." *Id.* Plaintiffs have "failed to demonstrate that the Court would not 'have to engage in a series of speculative calculations to ascertain whether . . . plaintiffs suffered a loss." *Id.* (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 230 (2d Cir. 2008)).

---

[10] As a back-up, Dr. Hamilton says that it may be possible to determine a price premium using conjoint survey analysis. Dr. Hamilton, however, is not qualified to design such a survey and plaintiffs have not identified an expert to do so. *See* Motion to Exclude Hamilton at p. 10; SH Tr. at 61:16-62:5, 11:16-12:18, 35:21-36:2, 62:6-9. Because plaintiffs have no expert, much less provided any details regarding the proposed conjoint survey, the court should not consider this "alternate" method of calculating damages.

Courts in the Second, Ninth, and Eleventh Circuits have consistently held that "only a promise of a model to come" is not a "workable method."[11] *Ward v. Apple Inc.*, 784 F. App'x 539, 540-41 (9th Cir. 2019); *Singleton*, 2017 WL 5001444, at *22 ("Although hedonic regression analysis has been proposed and approved in some product labeling class actions, [plaintiff's expert's] proposed model again lacks sufficient detail to permit the Court to determine whether it satisfies *Comcast* and is suitable to the task at hand."); *Ault*, 310 F.R.D. at 67 (denying class certification because plaintiff failed to offer evidence that a price premium "actually existed," did not propose a "reliable method for determining the existence or amount of any such price premium," and "as-yet unconducted consumer survey" was "not 'consistent with plaintiff's liability case.'") (internal citation omitted).

> **b.      The Damage Model Is Not Tied To The Theory Of Liability**

Plaintiffs offer no evidence to demonstrate how their damage model will measure a price premium attributable only to their theory of liability as required by *Comcast*. In fact, Dr. Hamilton admitted that his regression model will be unable to do so. SH Tr. at 34:20-35:7, 109:16-110:5; RK Rpt. at ¶¶125-127. Dr. Hamilton's regression model will calculate a price premium (if one exists) attributable to the "All Natural/Non GMO" label statement irrespective of what meaning consumers ascribe to it and whether it is deceptive in the manner plaintiffs allege. He has no method of calculating a price premium that is attributable to any particular theory of deception, *i.e.*, "All Natural" meaning must be "plucked from the earth" or meaning must not have "added vitamins." So, Dr. Hamilton's regression model is incapable of isolating

---

[11] *See also Randolph*, 303 F.R.D. at 697 (rejecting damages model where plaintiff "simply stated, in a conclusory fashion, that hedonic regression will be able to calculate the premium [and] . . . made no attempt to present the Court with an example or summary of the model to be applied."); *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 386 (N.D. Fla. 2017) (excluding expert opinion in part because the expert had not yet run his hedonic regression model and thus there was no evidence of a classwide diminution in value); *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *12 (N.D. Cal. Feb. 13, 2018) ("absolute precision is not required [of a damages model] at the class certification stage . . . [but a] real explanation is necessary" and "vague and abstract" proposals do not suffice); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 505 (N.D. Cal. 2008) (denying certification where experts "promise[d]" to "formulate the appropriate analysis and prove . . . damages once they obtain the necessary data").

the price premium associated with the alleged deceptive attributes of the Products. *See In re ConAgra Foods*, 302 F.R.D. 537, 578-79 (C.D. Cal. 2014) (denying class certification because damage model purported to measure the price premium associated with "100% Natural," but did not, consistent with plaintiffs theory of deception, isolate the price premium attributed to a consumer's belief that "100% Natural" meant the product was non-GMO).

Dr. Hamilton's damage model is also incapable of isolating a price premium associated with just the "All Natural" label statement. That is because "All Natural" only appeared on the Products as part of the joint "All Natural/Non GMO" label statement (perfect collinearity). SH Tr. at 80:22-81:10, 82:4-83:17; RK Rpt. at ¶¶108-110, 124. Dr. Hamilton's damage model will only assess the price premium associated with *both* of those statements appearing together.[12] SH Tr. at 70:17-71:14, 82:4-13; RK Rpt. at ¶ 110. So, that means plaintiffs cannot certify a class for only the "All Natural" label statement because they do not have method for calculating damages on a classwide basis for just that claim. Relatedly, Dr. Hamilton also does not have a reliable methodology for calculating damages on a classwide basis attributable solely to the "Non GMO" statement. SH Tr. at 43:2-44:8.

### B.  Plaintiffs' Are Not Typical Of The Class

Plaintiffs must also establish that their claims are typical of the putative class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart,* 564 U.S. at 349-50, *as recognized in Amara v. CIGNA Corp.,* 775 F.3d 510, 520 (2d Cir. 2014). Typicality is not met where the "evidence needed to prove the named plaintiff's claims is not probative of other class members' claims." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009).

---

[12] Dr. Hamilton suggested—but, without any data, could not confirm—that he will be performing only one regression, and will not be performing different regressions to account for the label changes that occurred throughout the proposed class periods. Hamilton Tr. at 42:20-44:14, 55:9-14, 71:2-5, 72:8-15, 83:13-17, 110:15-113:22.

Plaintiffs testified that they have not purchased a KIND product since April 2015. Accordingly, none purchased a Product with the "No Genetically Engineered Ingredients" or "Non GMO" label statement standing alone. Because of the significant label changes occurring after April 2015, plaintiffs were exposed to entirely different labeling claims than class members who purchased the Products after that time. LAN Decl. at ¶ 9; App'x B.

Plaintiffs initially sued KIND based on the assertion that the "healthy" label statement was deceptive and material to their purchasing decision. It was not until FDA's withdrawal of its challenged to KIND's use of the word "healthy" that plaintiffs focused on the "All Natural/Non GMO" label claim. *See* App'x C. Plaintiffs will have the substantial (and unique) burden of convincing the trier of fact that "All Natural/Non GMO" was really the label statement that was material to them, not "healthy." As graphically illustrated at Appendix C, that burden will be complicated by the fact that Livingston (Florida) did not challenge "All Natural/Non GMO," and Short and Thomas challenged "All Natural" only as to the ingredient soy lecithin, but not "Non GMO." Bustamante is the only plaintiff that challenged both "All Natural" and "Non GMO," but she believes "All Natural" means "Non GMO." CB Tr. at 130:5-131:8. And, amongst each other they have inconsistent theories of "natural" and "Non GMO." *See* § C.2, *supra*. Those are not merely "minor variations in the fact patterns underlying individual claims" that courts generally permit in conducting a typicality analysis. *Pagan v. Abbott Lab, Inc.,*, 287 F.R.D. 139, 146 (E.D.N.Y. 2012). Rather, the material differences in their allegations make each one of the plaintiffs atypical of the class.

Only one plaintiff possibly purchased a Healthy Grains bar and none of the plaintiffs purchased Healthy Grains clusters. *See* § II.B, *supra*. That difference is substantial because Healthy Grains products are a different type of product, with different labeling, many of which do not contain any ingredient challenged as "natural." BL Decl. at ¶¶ 23, 28. Finally, plaintiffs purchased 6 of the 28 different types of KIND bars. App'x C. Because each bar is different in the way it is allegedly not "natural," plaintiffs experience is not similar to other class members. *See Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 234 (S.D.N.Y. 2002)

(typicality requirement not satisfied where plaintiff "only purchased two of the over sixty products" listed in the complaint).

### C. The Proposed Classes Are Not Ascertainable

None of the proposed classes are ascertainable. Fed. R. Civ. P. 23(a) contains an implicit requirement that the proposed class is "adequately defined and clearly ascertainable." *Randolph*, 303 F.R.D. at 684. That requirement ensures that "the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

Here, because of the number of variations in the label and varying products and ingredients, a consumer would need to recall which specific flavor of KIND bar they purchased, and on what date, and with what label statements, to determine if they were appropriately in the class. Based on similar facts, the court in *Randolph* found the ascertainability requirement had not been met because "the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product, is slim. Not only would the individual need to recall purchasing Crisco oil, but also the specific variety purchased, and the specific date on which it was purchased beyond simply within the period 'May 2009 to the present.'" *Randolph*, 303 F.R.D. at 687; *see also Jones*, 2014 WL 2702726, at *10 (declining to certify a class on ascertainability grounds because there were "literally dozens of varieties with different can sizes, ingredients, and labeling over time and some Hunt's cans included the challenged language, while others included no such language at all," making self-identification unfeasible); *Ault*, 310 F.R.D. at 66 (declining to certify a New York class on similar grounds); RK Rpt. at ¶¶ 84-92 (academic research, confirmed by plaintiffs' testimony, show that consumer memory limitations render it impossible to identify class members).

### D. Plaintiffs Cannot Certify An Injunctive Relief Class Under Rule 23(b)(2)

A Rule 23(b)(2) class is only appropriate where monetary relief is incidental to the injunctive relief sought. *Wal-Mart*, 564 U.S. at 360. If the predominant relief requested is monetary, than the court should not certify the class under Rule 23(b)(2). *See Randolph*, 303

F.R.D. at 699-700 (denying certification of an injunctive class because plaintiff "made no effort to demonstrate that the money damages, which appear to be the primary remedy sought, are merely incidental to the injunctive relief."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541-42 (N.D. Cal. 2012) (denying certification of injunctive class where record was clear that monetary relief predominated because plaintiffs sought monetary damages, including restitution, refund, reimbursement, and disgorgement); *Ackerman*, 2013 WL 7044866, at *17. Here, as in *Randolph*, plaintiffs make no showing that the monetary relief they seek—the price premium allegedly paid by consumers—is incidental. Nor could they because the ACC and the motion make clear that the primary relief sought is monetary.

Additionally, plaintiffs have not demonstrated that injunctive relief is necessary because KIND ceased using the "All Natural/Non GMO" label statement beginning in 2014 and it was completely phased out in 2017. KIND has no plans to reintroduce either label claim on the Products at any point in the future. LAN Tr. at 58:15-18; 73:3-6; LAN Decl. at ¶ 17. For that reason, a Rule 23(b)(2) class is inappropriate and unnecessary. *Ault*, 310 F.R.D. at 68 (denying certification because defendant removed challenged labeling and submitted a declaration that it had no plans to reintroduce it in the future); *Scotts EZ Seed.*, 304 F.R.D. at 408 (denying certification where label statement was removed because it "does not appear necessary").

## IV.    CONCLUSION

For the foregoing reasons, and for good causes show, KIND respectfully requests that the Court deny the motion for class certification.

DATED: March 6, 2020s

Respectfully Submitted,

By: /s/ Dale J. Giali

Dale J. Giali
Keri E. Borders
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
Email: dgiali@mayerbrown.com

Counsel for Defendants KIND LLC and
KIND Management, Inc.

# Challenged Products and Ingredients

| # | Product | Soy Lecithin** | Soy Protein Isolate | Non GMO Glucose** | Ascorbic Acid (Vitamin C)** | Vitamin A |
|---|---------|:---:|:---:|:---:|:---:|:---:|
| 1 | Fruit & Nut: Almond & Apricot** | X | | X | | |
| 2 | Fruit & Nut: Almond & Coconut** | X | | X | | |
| 3 | Fruit & Nut: Almonds and Apricots in Yogurt** | X | | X | | |
| 4 | Fruit & Nut: Apple Cinnamon Pecan** | X | | X | | |
| 5 | Fruit & Nut: Blueberry Vanilla Cashew** | X | | X | | |
| 27 | Fruit & Nut: Dark Chocolate Almond & Coconut** | X | | X | | |
| 6 | Fruit & Nut: Fruit and Nut Delight** | X | | X | | |
| 7 | Fruit & Nut: Fruit and Nuts in Yogurt** | X | | X | | |
| 8 | Fruit & Nut: Nut Delight** | X | | X | | |
| 9 | Fruit & Nut: Peanut Butter and Strawberry** | X | X | X | | |
| 12 | Nut & Spices: Caramel Almond and Sea Salt** | X | | X | | |
| 13 | Nut & Spices: Dark Chocolate Mocha Almond** | X | | X | | |
| 14 | Nut & Spices: Dark Chocolate Chili Almond** | X | | X | | |
| 15 | Nut & Spices: Dark Chocolate Cinnamon Pecan** | X | | X | | |
| 16 | Nut & Spices: Dark Chocolate Nuts and Sea Salt** | X | | X | | |
| 17 | Nut & Spices: Madagascar Vanilla Almond** | X | | X | | |
| 18 | Nuts & Spices: Cashew and Ginger Spice** | X | | X | | |
| 19 | Nuts & Spices: Maple Glazed Pecan and Sea Salt** | X | | X | | |
| 28 | Nut & Spices: Honey Roasted Nuts & Sea Salt** | X | | X | | |
| 20 | Plus: Dark Chocolate Cherry Cashew + Antioxidants** | X | | X | X | X |
| 21 | Plus: Pomegranate Blueberry Pistachio + Antioxidants** | X | | X | X | X |
| 22 | Plus: Almond Walnut Macadamia with Peanuts + Protein** | X | X | X | | |
| 23 | Plus: Peanut Butter Dark Chocolate + Protein** | X | X | X | | |
| 24 | Plus: Cranberry Almond + Antioxidants with Macadamia Nuts** | | | X | X | X |
| 25 | Plus: Blueberry Pecan + Fiber** | X | | X | | |
| 26 | Plus: Almond Cashew with Flax + Omega 3** | | | X | | |
| 10 | Healthy Grains Bar: Dark Chocolate Chunk** | X | | | | |
| 11 | Healthy Grains Bar: Peanut Butter Dark Chocolate** | X | | | | |
| 29 | Healthy Grains Clusters: Fruit & Nut Clusters | | X | | | |
| 30 | Healthy Grains Clusters: Peanut Butter Whole Grain Clusters | | X | | | |
| 31 | Healthy Grains Clusters: Banana Nut Clusters | | | | | |
| 32 | Healthy Grains Clusters: Cinnamon Oat Clusters with Flax Seeds | | | | | |
| 33 | Healthy Grains Clusters: Maple Quinoa Clusters with Chia Seeds | | | | | |
| 34 | Healthy Grains Clusters: Oats & Honey Clusters with Toasted Coconut | | | | | |
| 35 | Healthy Grains Clusters: Raspberry Clusters with Chia Seeds | | | | | |
| 36 | Healthy Grains Clusters: Vanilla Blueberry Clusters with Flax Seeds | | | | | |
| 37 | Healthy Grains Bar: Maple Pumpkin Seeds with Sea Salt | | | | | |
| 38 | Healthy Grains Bar: Oats and Honey With Toasted Coconut | | | | | |
| 39 | Healthy Grains Bar: Vanilla Blueberry | | | | | |
| | **Total Products with Challenged Ingredient** | 26 | 5 | 26 | 3 | 3 |

**Products include at least one of the ingredients challenged as containing GMOs: Soy Lecithin, Non-GMO Glucose, and Asorbic Acid (Vitamin C).**

## APPENDIX A

# APPENDIX B

| Name of Product | [...] | Aug-14 | Oct-14 | Dec-14 | Feb-15 | Apr-15 | Jun-15 | Aug-15 | Oct-15 | Dec-15 | Feb-16 | Apr-16 | Jun-16 | Aug-16 | Oct-16 | Dec-16 | Feb-17 | Apr-17 | Jun-17 | [...] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HGB: Dark Chocolate Chunk | "All Natural" & "Non-GMO" | "Non-GMO" (8/26/14) | | | | | | | | | | | | | | "No GE Ingredients" (11/18/16) | | | | |
| HGB: Peanut Butter Dark Chocolate | "All Natural" & "Non-GMO" | "Non-GMO" (8/26/14) | | | | | | | | | | | | | | "No GE Ingredients" (11/10/16) | | | | |
| HGB: Oats & Honey + Toasted Coconut | "All Natural" & "Non-GMO" | "Non-GMO" (8/26/14) | | | | | | | | | | | | | | "No GE Ingredients" (11/10/16) | | | | |
| HGB: Vanilla Blueberry | "All Natural" & "Non-GMO" | "Non-GMO" (8/26/14) | | | | | | | | | | | | | | | | | | |
| HGB: Maple Pumpkin Seeds + Sea Salt | "All Natural" & "Non-GMO" | "Non-GMO" (8/26/14) | | | | | | | | | | | | | "No GE Ingredients" (9/29/16) | | | | | |
| HGC: Banana Nut Clusters | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | | | Discont. (11/1/17) | | | | | |
| HGC: Cinnamon Oat Clusters + Flax Seeds | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | "No GE Ingredients" (6/20/16) | | | | | | | |
| HGC: Fruit & Nut Clusters | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14; discontinued in 2015) | | | | | | | | | | | | | | | | | |
| HGC: Maple Quinoa Clusters + Chia Seeds | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | | | | | | | | |
| HGC: Oats & Honey Clusters + Toasted Coconut | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | | | | "No GE Ingredients" (12/22/16) | | | | |
| HGC: Peanut Butter Whole Grain Clusters | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | "No GE Ingredients" (6/20/16) | | | | | | | |
| HGC: Raspberry Clusters + Chia Seeds | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | | | | | | | | |
| HGC: Vanilla Blueberry Clusters + Flax Seeds | | "All Natural" & "Non-GMO" | "Non-GMO" (11/4/14) | | | | | | | | | | "No GE Ingredients" (6/20/16) | | | | | | | |
| N&S: Dark Chocolate Chili Almond | | "All Natural" & "Non-GMO" | | "Non-GMO" (1/28/15) | | | | | | | | | | "No GE Ingredients" (7/15/16) | | | | | | |
| N&S: Dark Chocolate Cinnamon Pecan | | "All Natural" & "Non-GMO" | | | "Non-GMO" (2/3/15) | | | | | | "No GE Ingredients" (1/15/16) | | | | | | | | | |
| N&S: Dark Chocolate Nuts & Sea Salt | | "All Natural" & "Non-GMO" | | | "Non-GMO" (2/3/15) | | | | | | "No GE Ingredients" (1/14/16) | | | | | | | | | |
| N&S: Madagascar Vanilla Almond | | "All Natural" & "Non-GMO" | | | "Non-GMO" (2/9/15) | | | | | "No GE Ingredients" (11/9/15) | | | | | | | | | | |
| N&S: Caramel Almond & Sea Salt | | "All Natural" & "Non-GMO" | | | | "Non-GMO" (3/10/15) | | | | | "No GE Ingredients" (1/14/16) | | | | | | | | | |
| N&S: Maple Glazed Pecan & Sea Salt | | "All Natural" & "Non-GMO" | | | | "Non-GMO" (3/10/15) | | | | | "No GE Ingredients" (1/14/16) | | | | | | | | | |

*Dates listed indicate the date that the label was sent to the printer. The timing for the product to reach the market varied, but could take between 5-7 months.
**Products that were discontinued did not undergo a label change.

| Name of Product | [...] | Aug-14 | Oct-14 | Dec-14 | Feb-15 | Apr-15 | Jun-15 | Aug-15 | Oct-15 | Dec-15 | Feb-16 | Apr-16 | Jun-16 | Aug-16 | Oct-16 | Dec-16 | Feb-17 | Apr-17 | Jun-17 | [...] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| F&N: Almond & Coconut | | "All Natural" & "Non-GMO" | | | | | | "Non-GMO" (7/13/15) | "No GE Ingredients" (8/27/15) | | | | | | | | | | | |
| Plus: Dark Choc. Cherry Cashew + Antioxidants | | "All Natural" & "Non-GMO" | | | | | | "Non-GMO" (7/13/15) | "No GE Ingredients" (8/27/15) | | | | | | | | | | | |
| Plus: Peanut Butter Dark Choc. + Protein | | "All Natural" & "Non-GMO" | | | | | | "Non-GMO" (7/13/15) | "No GE Ingredients" (8/27/15) | | | | | | | | | | | |
| N&S: Dark Chocolate Mocha Almond | | "All Natural" & "Non-GMO" | | | | | | | "No GE Ingredients" (11/9/15) | | | | | | | | | | | |
| F&N: Almond & Apricot | | "All Natural" & "Non-GMO" | | | | | | | "No GE Ingredients" (11/18/15) | | | | | | | | | | | |
| F&N: Apple Cinnamon & Pecan | | "All Natural" & "Non-GMO" | | | | | | | | | | | | "No GE Ingredients" (8/15/16) | | | | | | |
| F&N: Blueberry Vanilla & Cashew | | "All Natural" & "Non-GMO" | | | | | | | | | | | | "No GE Ingredients" (8/25/16) | | | | | | |
| F&N: Fruit & Nut Delight | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | "No GE Ingredients" (9/12/16) | | | | | |
| F&N: Peanut Butter & Strawberry | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | "No GE Ingredients" (10/5/16) | | | | | |
| Plus: Cran. Almond + Antioxidants | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | "No GE Ingredients" (12/1/16) | | | | |
| Plus: Blueberry Pecan | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | | "No GE Ingredients" (3/1/17) | | | |
| Plus: Pomegranate Blueberry Pistachio + Antioxidants | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | | "No GE Ingredients" (3/28/17) | | | |
| F&N: Fruit & Nuts in Yogurt | | "All Natural" & "Non-GMO" | | | | | | | | | Discont. (1/14/16) | | | | | | | | | | |
| F&N: Almonds & Apricots in Yogurt | | "All Natural" & "Non-GMO" | | | | | | | | | Discont. (1/14/16) | | | | | | | | | | |
| F&N: Nut Delight | | Discont. | | | | | | | | | | | | | | | | | | | |
| Plus: Almond Cashew + Flax + Omega 3 | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | | Discont. (2/27/17) | | | |
| N&S: Cashew & Ginger Spice | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | | Discont. (2/27/17) | | | |
| Plus: Almond Walnut Macadamia + Peanuts | | "All Natural" & "Non-GMO" | | | | | | | | | | | | | | | | | | Discont. (7/25/17) | |
| F&N: Dark Chocolate Almond & Coconut | | "No GE Ingredients" | | | | | | | | | | | | | | | | | | | |
| N&S: Honey Roasted Nuts & Sea Salt | | "No GE Ingredients" | | | | | | | | | | | | | | | | | | | |

*Dates listed indicate the date that the label was sent to the printer. The timing for the product to reach the market varied, but could take between 5-7 months.
**Products that were discontinued did not undergo a label change.

# KIND LLC's Label Changes

| Name of Product | All Natural Removal Date | Non-GMO Changed to No GE Ingredients |
|---|---|---|
| KIND Healthy Grains Bar: Dark Chocolate Chunk | 8/26/2014 | 11/18/2016 |
| KIND Healthy Grains Bar: Peanut Butter Dark Chocolate | 8/26/2014 | 11/10/2016 |
| KIND Healthy Grains Bar: Oats & Honey with Toasted Coconut | 8/26/2014 | 11/10/2016 |
| KIND Healthy Grains Bar: Vanilla Blueberry | 8/26/2014 | 11/9/2016** |
| KIND Healthy Grains Bar: Maple Pumpkin Seeds with Sea Salt | 8/26/2014 | 9/29/2016 |
| KIND Healthy Grains Clusters: Banana Nut Clusters | 11/4/2014 | 11/1/2017 (discontinued) |
| KIND Healthy Grains Clusters: Cinnamon Oat Clusters with Flax Seeds | 11/4/2014 | 6/20/2016 |
| KIND Healthy Grains Clusters: Fruit & Nut Clusters | 11/4/2014 | Discontinued (2015) |
| KIND Healthy Grains Clusters: Maple Quinoa Clusters with Chia Seeds | 11/4/2014 | 6/24/2016** |
| KIND Healthy Grains Clusters: Oats & Honey Clusters with Toasted Coconut | 11/4/2014 | 12/22/2016 |
| KIND Healthy Grains Clusters: Peanut Butter Whole Grain Clusters | 11/4/2014 | 6/20/2016 |
| KIND Healthy Grains Clusters: Raspberry Clusters with Chia Seeds | 11/4/2014 | 6/24/2016** |
| KIND Healthy Grains Clusters: Vanilla Blueberry Clusters with Flax Seeds | 11/4/2014 | 6/20/2016 |
| KIND Bar Nuts & Spices: Dark Chocolate Chili Almond | 1/28/2015 | 7/15/2016 |
| KIND Bar Nuts & Spices: Dark Chocolate Cinnamon Pecan | 2/3/2015 | 1/15/2016 |
| KIND Bar Nuts & Spices: Dark Chocolate Nuts & Sea Salt | 2/3/2015 | 1/14/2016 |
| KIND Bar Nuts & Spices: Madagascar Vanilla Almond | 2/9/2015 | 11/9/2015 |
| KIND Bar Nuts & Spices: Caramel Almond & Sea Salt | 3/10/2015 | 1/14/2016 |
| KIND Bar Nuts & Spices: Maple Glazed Pecan & Sea Salt | 3/10/2015 | 1/14/2016 |
| KIND Bar Fruit & Nut: Almond & Coconut | 7/13/2015 | 8/27/2015 |
| KIND Bar Plus: Dark Chocolate Cherry Cashew + Antioxidants | 7/13/2015 | 8/27/2015 |
| KIND Bar Plus: Peanut Butter Dark Chocolate + Protein | 7/13/2015 | 8/27/2015 |
| KIND Bar Nuts & Spices: Dark Chocolate Mocha Almond | 11/9/2015 | 11/9/2015 |
| KIND Bar Fruit & Nut: Almond & Apricot | 11/18/2015 | 11/18/2015 |
| KIND Bar Fruit & Nut: Apple Cinnamon & Pecan | 8/15/2016 | 8/15/2016 |
| KIND Bar Fruit & Nut: Blueberry Vanilla & Cashew | 8/25/2016 | 8/25/2016 |
| KIND Bar Fruit & Nut: Fruit & Nut Delight | 9/12/2016 | 9/12/2016 |
| KIND Bar Fruit & Nut: Peanut Butter & Strawberry | 10/5/2016 | 10/5/2016 |
| KIND Bar Plus: Cranberry Almond + Antioxidants with Macadamia Nuts | 12/1/2016 | 12/1/2016 |
| KIND Bar Plus: Blueberry Pecan | 3/1/2017 | 3/1/2017 |
| KIND Bar Plus: Pomegranate Blueberry Pistachio + Antioxidants | 3/28/2017 | 3/28/2017 |
| KIND Bar Fruit & Nut: Fruit & Nuts in Yogurt | 1/14/16 (discontinued) | |
| KIND Bar Fruit & Nut: Almonds & Apricots in Yogurt | 1/14/2016 (discontinued) | |
| KIND Bar Fruit & Nut: Nut Delight | Discontinued | |
| KIND Bar Plus: Almond Cashew With Flax + Omega 3 | 2/27/17 (discontinued) | |
| KIND Bar Nuts & Spices: Cashew & Ginger Spice | 2/27/17 (discontinued) | |
| KIND Bar Plus: Almond Walnut Macadamia with Peanuts | 7/25/17 (discontinued) | |
| KIND Bar Fruit & Nut: Dark Chocolate Almond & Coconut | Product Label never had either claim | |
| KIND Bar Nuts & Spices: Honey Roasted Nuts & Sea Salt | Product Label never had either claim | |

*Dates reflect when proof of the packaging design was sent to KIND from the printer. Timing for the products to reach the market varied, but could take 4-6 months.*
**Due to low sales, the labels on these products were significantly delayed in reaching the marketplace. They did not reach the market until after July 2019.*

# Timeline of Commencement of Action

**April 14, 2015**
First day that FDA Warning Letter to KIND is publicly available[1]

**April 14, 2015, no later than 9:16 AM EST**
Mainstream media begins reporting on the FDA Warning Letter[2]

**April 14, 2015, at 4:34 PM PST**
Bustamante purchases two of the four KIND bars identified in the Warning Letter[3]

**April 15, 2015**
Bustamante engages Adhoot & Wolfson, which issues pre-litigation demand letter the same day (tracks FDA Warning Letter and challenges "healthy" and "non-GMO," but not "All Natural"); Bustamante stops purchasing KIND products[4][5][6]

**April 16, 2015**
After being identified by a Finkelstein Blankinship attorney, Short and Thomas engage the firm; they stop purchasing KIND products[7][8]

**April 17, 2015**
Short and Thomas file complaint against KIND; challenge "healthy" and "natural," but not "non-GMO"[9]

**April 22, 2015**
Bustamante files complaint against KIND; challenges "non-GMO," "healthy," and "natural" (even though "natural" is not mentioned in her April 15, 2015 pre-litigation demand letter)[10]

**April 22, 2015**
Livingston engages Josh Eggnatz; she has stopped purchasing KIND products[11]

**May 6, 2015**
Plaintiffs' counsel places order with Biogen Lab to test a KIND snack bar for presence of GMO[12]

**May 11, 2015**
Livingston files complaint against KIND; challenges "healthy" statement, though she never saw it; does not challenge "natural" or "non-GMO"[13]

**December 15, 2015**
Plaintiffs file consolidated class action complaint[14]

**April 22, 2016**
FDA withdraws objection to KIND's use of the word "healthy" on its products[15]

**May 17, 2016**
Plaintiffs dismiss the "healthy" claims[16]

**October 31, 2016**
Plaintiffs file amended consolidated class action complaint[17]

04/2015                        2016           2017

■ Elizabeth Livingston (FL)    ■ Amanda Short (NY) and Sarah Thomas (NY)
■ Charity Bustamante (CA)    ■ Applicable to all Plaintiffs

Appendix C

[1] *See* DG Decl., Ex. L (screenshot of the FDA website indicating the date the FDA Warning Letter to KIND was first publicly disclosed).

[2] *See* Danielle Burger & Craig Giammona, *Kind Bars Aren't Healthy Enough for 'Healthy' Tag, FDA Says,* Bloomberg (Apr. 14, 2015), https://www.bloomberg.com/news/articles/2015-04-14/kind-bars-aren-t-healthy-enough-for-healthy-label-fda-says.

[3] DG Decl., ¶ 7 Ex. F (receipt for KIND products purchased by Charity Bustamante on April 14, 2015, identified by Target product number as Fruit & Nut Almond & Coconut and Plus Dark Chocolate Cherry Cashew + Antioxidants).

[4] DG Decl., Ex. I (Pl. Charity Bustamante's Resp. to Def.'s First Set of Interrog. (Mar. 2, 2020)); DG Decl., Ex. D (CB Tr. at 96:5-99:16, 105:9-19, 108:4-109:12, 191:20-192:10).

[5] DG Decl., Ex. E (CLRA Demand Letter sent on Charity Bustamante's behalf).

[6] DG Decl., Ex. D (CB Tr. at 59:2-60:11, 66:13-67:7, 201:11-14).

[7] DG Decl., Ex. H (Pl. Amanda Short's Resp. to Def.'s First Set of Interrog. (Feb. 28, 2020)); DG Decl., C (AS Tr. at 19:4-21:10, 42:22-43:4); DG Decl., G (Pl. Sarah Thomas' Resp. to Def.'s First Set of Interrog. (Feb. 28, 2020)); DG Decl., Ex. B (ST Tr. at 20:21-31:18)

[8] DG Decl., C (AS Tr. at 10:3-11:4); DG Decl., Ex. B (ST Tr. at 13:21-15:12).

[9] Compl., *Short v. KIND LLC*, No. 1:15-cv-02214-RRM-MDG (E.D.N.Y. Apr. 17, 2015), ECF No. 1. The complaint tracked the Warning Letter—alleging reliance based on "natural" and "healthy"—but not "non-GMO."

[10] Compl., *Bustamante v. KIND LLC*, No. 3:15-cv-00891-JAH-JMA (S.D. Cal. Apr. 22, 2015), ECF No. 1.

[11] DG Decl., Ex. J (Pl. Elizabeth Livingston's Resp. to Def.'s First Set of Interrog. (Feb. 28, 2020)); DG Decl., Ex. A (EL Tr. at 8:12-15; 39:8-11). Within the prior six months, Livingston had settled a different lawsuit on a non-class, confidential basis with Fullbar snack bar company wherein she alleged false advertising based upon a "natural" label statement. *See Livingston v. Fullbar LLC*, No. 0:14-cv-62430 (S.D. Fla. Oct. 23, 2014), ECF No 1; *see also* DG Decl., Ex. K (Pl. Elizabeth Livingston's Resp. to Def.'s Second Set of Interrog. (Feb. 28, 2020)) (confirming that the settlement occurred on December 3, 2014). The *Fullbar* lawsuit was filed as a class action. The case was voluntarily dismissed on December 18, 2014 (*see Livingston v. Fullbar LLC*, No. 0:14-cv-62430 (S.D. Fla. Dec. 18, 2014), ECF No. 7)) and she filed her suit against KIND on May 11, 2015.

[12] Decl. of Todd S. Garber in Supp. of Pls.' Mot. for Class Certification, Ex. D (Biogen Laboratory Developments, L.L.C. Certificate of Analysis of KIND Plus Bar - Peanut Butter Dark Chocolate + Protein, BATES labeled SHORT_0001).

[13] Compl., *House v. KIND LLC*, No. 4:15-cv-02127-YGR (N.D. Cal. May 11, 2015), ECF No. 1. *See* DG Decl. A (EL Tr. at 51:11-53:11) (testifying that she never saw the "healthy" statement). Given Ms. Livingston's recent prior lawsuit against a snack bar company for false advertising regarding claims of "natural" (*see Livingston v. Fullbar LLC*, *supra* n.11) it is no surprise that she did not challenge KIND's "natural" claim (she already was well aware not to rely natural statements on snack bars).

[14] Consol. Compl., *In re: KIND LLC "Healthy and All Natural" Litig.*, No. 1:15-md-02645-WHP (S.D.N.Y. Dec. 15, 2015), ECF No. 52. Claims were now "All Natural," "Non GMO" and/or "Healthy." Each named plaintiff is different:  Short and Thomas relied on healthy and natural, but not GMO (¶¶ 9, 10); Bustamante relied on "all natural" and "healthy" but not GMO (¶ 12); Livingston relied only on healthy (¶ 13).

[15] *In re: KIND LLC "Healthy and All Natural" Litig.*, No. 1:15-md-02645-WHP (S.D.N.Y. May 10, 2016), ECF No. 73.

[16] No. 1:15-md-02645-WHP (S.D.N.Y. May 17, 2016), ECF No. 74; *see also id.* at ECF No. 83.

[17] Am. Consol. Compl., No. 1:15-md-02645-WHP (S.D.N.Y. Oct. 31, 2016), ECF No. 84. For the *first* time, Short, Thomas, Bustamante and Livingston allege reliance on both "natural" and "non-GMO," and Livingston also continues to rely on "healthy." *Id.* at ¶¶ 7-10.