# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) | 15-MD-2645 (WHP) 15-MC-2645 (WHP)   Hon. William H. Pauley, III, presiding |

## PLAINTIFFS' OPPOSITION TO DEFENDANT KIND LLC'S MOTION TO STRIKE DECLARATION OF STEPHEN F. HAMILTON, PH.D

932321 1

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................2

    A.    Plaintiffs' Claims in This Case ..................................................................2

    B.    Summary of Dr. Hamilton's Opinions .......................................................2

III.   LEGAL STANDARD .............................................................................................3

IV.    ARGUMENT ..........................................................................................................5

    A.    Dr. Hamilton's Testimony is Reliable .......................................................5

        (1)    Plaintiffs Satisfy Their Burden At The Class Certification Stage. ..............5

        (2)    Dr. Hamilton's Opinions Should Not Be Stricken Because They Meet The Requirements of Federal Rule of Evidence 702, Are Based on Scientific Foundation and Are Based on Sufficient Facts and Data ..........................................................................................................7

        (3)    Dr. Hamilton's Testimony and Report are Reliable Because He Has Reviewed the Current Record and Has Relied on Adequate Scientific Sources ...................................................................................11

        (4)    Dr. Hamilton's Proposed Methodology Isolates The "All Natural" and "Non-GMO" Claims In Pricing And Purchasing Decisions ..............14

    B.    Dr. Hamilton's Declaration and Testimony Assist the Trier of Fact ....................15

    C.    Dr. Hamilton is Qualified to Opine on Conjoint Surveys......................................18

V.     CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)....................................................................................3, 13, 14

*Arista Records LLC v. Usenet.com, Inc.*,
  608 F. Supp. 2d 409 (S.D.N.Y. 2009).................................................................................7

*Bic Corp. v. Far E. Source Corp.*,
  23 F. App'x 36 (2d Cir. 2001) ............................................................................................6

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996)....................................................................................................5

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)........................................................................................................9, 10

*Brown v. Hain Celestial Group, Inc.*,
  No. 11-03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ......................................2, 5, 14

*Celebrity Cruises Inc. v. Essef Corp.*,
  434 F. Supp. 2d 169 (S.D.N.Y. 2006)...............................................................................19

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10-6950, 2015 WL 1035350 (S.D.N.Y. Mar. 10, 2015)..........................................3

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)...........................................................................................4, 6, 14

*Dandong v. Pinnacle Performance Ltd.*,
  No. 10 CIV. 8086, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ..............................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)............................................................................................... *passim*

*Guido v. L'Oreal, USA, Inc.*,
  No. 11-01067, 2014 WL 6603730 (C.D. Cal. July 24, 2014)................................6

*Hughes v. Ester C. Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) ....................................................................................3

*Karavitis v. Makita U.S.A., Inc.*,
  722 F. App'x 53 (2d Cir. 2018) ..................................................................................18, 19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)................................................................................7, 18

*Leider v. Ralfe*,
    No. 01-3137, 2004 WL 1773330 (S.D.N.Y. July 30, 2004)........................................6

*Makinen v. City of New York*,
    53 F. Supp. 3d 676 (S.D.N.Y. 2014)..................................................................3

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)............................................................................5

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) ....................................................................3, 5

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
    No. 2:10-ml-2199-DDP, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)................................4

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
    769 F. Supp. 2d 188 (S.D.N.Y. 2011)..................................................................6

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*,
    988 F. Supp. 2d 395 (S.D.N.Y. 2013)..............................................................4, 15

*In re Rezulin Prod. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................10

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999)............................................................................7

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ...............................................................4, 6, 14

*Singleton v. Fifth Generation, Inc.*,
    2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) .......................................................15

*United States v. Mack*,
    No. 13-00054, 2014 WL 7404763 (D. Conn. Nov. 7, 2014)..........................................3

*In re Visa Check/Mastermoney Antitrust Litig.*,
    192 F.R.D. 68 (S.D.N.Y. 2000) ........................................................................4

*Weiner v. Snapple Beverage Corp.*,
    No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...................................11

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2d Cir. 2009)............................................................................5

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................ *passim*

Federal Rule of Evidence 401 ................................................................................4, 16

Federal Rule of Evidence 702 ...................................................................... *passim*

Federal Rule of Evidence 703 ..................................................................................7

Individual Practices of Judge William H. Pauley III, Rule III.D .....................................1

## I.    <u>INTRODUCTION</u>

KIND, LLC's ("KIND") Motion to Strike Declaration of Stephen F. Hamilton Ph.D (ECF 191, "Motion to Strike") mischaracterizes the law and fails to contend the substance of Dr. Hamilton's opinions.[1]    The crux of KIND's argument is that Dr. Hamilton's declaration and testimony are unreliable because he did not build and run either of his proposed models to calculate a price premium for KIND Products.[2]    However, KIND ignores critical facts and analysis that make Dr. Hamilton's opinions reliable and relevant at class certification.

This class action lawsuit concerns KIND's false advertising of the "All Natural" and Non-GMO" attributes on its Products.    In Dr. Hamilton's declaration, he assesses the "All Natural" and "non-GMO" attributes of KIND Products and explains that he is capable of measuring the price premium attributable to each of those labeling claims.    Declaration of Stephen F. Hamilton, Ph.D. in Support of Plaintiffs' Motion for Class Certification, ECF 170 ("Hamilton Decl."), ¶¶ 22-23. Further, Dr. Hamilton sets forth two methodologies to determine damages on a class-wide basis in this matter; hedonic regression analysis and conjoint analysis.    *Id*., ¶¶ 43-62.    Dr. Hamilton is a qualified expert, and his testimony and declaration are relevant and reliable.

While not necessary at the class certification stage, Plaintiffs have satisfied the standards under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

---

[1] KIND's Motion to Strike is without merit.    As the Motion was filed concurrently with KIND's Opposition to Plaintiffs' Motion for Class Certification, it is clear that KIND sought to include an additional 11 pages of argument opposing Plaintiffs' Motion for Class Certification (ECF 139-1). This is in clear violation of this Court's Individual Practices, Rule III.D, which limits the number of pages of an opposition to 25 absent leave of the Court.    KIND neither sought leave of the Court to file additional pages, nor did KIND meet and confer with Plaintiffs about submitting its Motion to Strike.

[2] "Products" refers to those listed in Paragraph 1 of the Amended Consolidated Class Action Complaint ("CAC," ECF 84) and in the Declaration of Todd S. Garber in Support of Class Certification, ECF 169, ¶ 3.

579 (1993) ("*Daubert*"). In addition, and regardless of ultimate admissibility at the merits stage, Dr. Hamilton's testimony is sufficient to meet the requirements of Rule 23. Accordingly, the Court should deny KIND's Motion to Strike.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Claims in This Case

Plaintiffs allege that KIND mislabeled its snack bar Products by including "All Natural" and "Non-GMO" attributes on the labels of its Products. CAC ¶¶ 2-3. KIND prominently labeled its Products as "All Natural" and "Non GMO" knowing that consumers perceive all natural and non-GMO foods as better, healthier, and more wholesome. *Id.*, ¶¶ 4, 17. Additionally, as a result of KIND falsely marketing its Products as "All Natural" and "Non-GMO," Plaintiffs and class members paid a price premium. *Id.*, ¶ 95.

### B.    Summary of Dr. Hamilton's Opinions

In Dr. Hamilton's Declaration in Support of Plaintiffs' Motion for Class Certification, he sets forth two *proven* methodologies that can be used to determine the price premium consumers paid for KIND's Snack Bars. Hamilton Decl., ¶¶ 43-62. These two methodologies—hedonic regression analysis and conjoint analysis—are both feasible, reliable and can calculate the price premium consumers paid for KIND's Products based on its false labels. Dr. Hamilton's opinion is based on his experience using retail scanner data in the past from third parties such as Nielsen, IRI, and Mintel Group Ltd. ("Mintel"). *Id.*, ¶ 55. Further, Dr. Hamilton has used third party retail scanner data to run a hedonic regression to determine a price premium for litigation.[3] *Id.* It is Dr. Hamilton's well-formed and supported opinion that a price premium in this case can be determined

---

[3] In *Brown v. Hain Celestial Group, Inc.*, Dr. Hamilton built and calculated a price premium using hedonic regression analysis. No. 11-03082, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); Hamilton Decl. at 18, n.40.

using these two methodologies and that damages can be calculated on a class-wide basis. *Id.*, ¶ 62. Dr. Hamilton has analyzed data Plaintiffs obtained from IRI and Mintel and has concluded that such data is suitable for a hedonic regression analysis. Reply Declaration of Stephen F. Hamilton Ph.D ("Hamilton Reply Decl.").

## III.    <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Daubert* imposes a "gatekeeping" responsibility on federal courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Neither the Supreme Court nor the Second Circuit has definitively concluded whether *Daubert* governs the admissibility of expert evidence at the class certification stage, but several courts have concluded that it does apply in this context. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10-6950, 2015 WL 1035350, at *1 (S.D.N.Y. Mar. 10, 2015); *Hughes v. Ester C. Co.*, 317 F.R.D. 333, 340 (E.D.N.Y. 2016). This inquiry is "limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086, 2013 WL 5658790, at *13 (S.D.N.Y. Oct. 17, 2013) (quoting *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009)). *Daubert* "does not change the 'liberal admissibility standards of the federal rules,' and […] the proper tool for challenging 'reliable, albeit debatable, expert testimony' is still the adversary system." *United States v. Mack*, No. 13-00054, 2014 WL 7404763, at *2 (D. Conn. Nov. 7, 2014) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). The Federal Rules "favor admissibility" of expert testimony. *Makinen v. City of New York*, 53 F. Supp. 3d 676, 697 (S.D.N.Y. 2014).

Federal Rule of Evidence 702 provides that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." This requirement is "akin to the

relevance requirement of Rule 401, which is applicable to all proffered evidence, but goes beyond mere relevance because it also requires expert testimony to have a valid connection to the pertinent inquiry." *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 401 (S.D.N.Y. 2013) (internal quotation omitted). Expert testimony must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Daubert*, 509 U.S. at 587. At the class certification stage, "[t]he question is not . . . whether a jury at trial should be permitted to rely on [the expert's] report to find facts as to liability, but rather whether [the Court] may utilize it in deciding whether the requisites of Rule 23 have been met." *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 77 (S.D.N.Y. 2000).

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), requires that a plaintiff "must propose a damages model consistent with their theory (or theories) of liability." *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015). Further, a plaintiff's damages model must measure only damages attributable to the plaintiff's theory of liability; "[i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of 23(b)(3)." *Id.* at 412 (citing *Comcast*, 133 S. Ct. at 1433). Damages are measured by the difference "between what the plaintiff paid and the value of what the plaintiff received." *Id.* (quoting *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. 2:10-ml-2199-DDP, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014)). Plaintiffs "must therefore propose damages models that take into account the value of the product plaintiffs received," and the amount they paid for the product in question. *Id.*

/ / /

/ / /

IV.    **ARGUMENT**

A.    **Dr. Hamilton's Testimony is Reliable**

KIND argues that Dr. Hamilton's testimony is unreliable to show the existence of class-wide damages.  The question of whether expert testimony is reliable "is a flexible one."  *Daubert*, 509 U.S. at 594.  Federal Rule of Evidence 702 permits expert testimony where "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.

(1)    Plaintiffs Satisfy Their Burden At The Class Certification Stage.

As the Second Circuit stated; "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ."  *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  In this case, the "Daubert inquiry at the class certification stage remains limited by Rule 23 . . ." because KIND's Motion to Strike comes at the class certification stage. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009).  Therefore, "[a]t this stage, 'the Court may only examine the expert reports as far as they bear on the Rule 23  . . . .'"  *Id.*  "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith . . . .'"  *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (citing *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Id.* at 214 (citing *Boucher*, 73 F.3d at 21).

At class certification, Plaintiffs must "present a likely method for determining class damages, though it is not necessary to show that [the] method will work with certainty at this time."  *Brown v. Hain Celestial Grp., Inc.*, No. 11-03082, 2014 WL 6483216, at *19 (N.D. Cal.

Nov. 18, 2014). Plaintiffs are simply required to show that a viable method exists for determining damages on a class-wide basis—*not* necessarily to undertake that analysis. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414 (stating that "nothing in *Comcast* requires an expert to *perform* his analyses at the class certification stage"); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2014 WL 6603730, at *8 (C.D. Cal. July 24, 2014) (holding that expert must provide only a *method* for calculating that premium on a class-wide basis).

For example, in *Leider v. Ralfe*, when deciding a motion for class certification, the court considered an expert's *two* proposed methodologies to calculate damages in a class action alleging that consumers were overcharged for diamond jewelry. *See* No. 01-3137, 2004 WL 1773330 (S.D.N.Y. July 30, 2004), *report and recommendation adopted in part*, 387 F. Supp. 2d 283 (S.D.N.Y. 2005), at *13. Recommending certification of the class under N.Y. G.B.L. § 349, the court stated:

> While both branches of his proposed methodology may ultimately prove inadequate for the task of determining each class member's damages, at this preliminary stage the Plaintiffs are not required to set forth their final suggested protocol for how damages should be calculated.

*Id.* Instead, they need only show that the methodologies that they propose are not "so insubstantial as to amount to no method at all." *Id.*

Thus, in order to meet the standard of admissibility at the class certification stage, an expert must propose a method that is substantial and tied to the theory of damages. Criticisms of the method's precise application, or the data that are analyzed, go not to admissibility but to the weight of the evidence. *See POM Wonderful LLC v. Organic Juice USA, Inc.*, 769 F. Supp. 188, 200 (S.D.N.Y. 2011); *see also*, *Bic Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 38 (2d Cir. 2001) ("[E]rrors in methodology . . . properly go only to the weight of the evidence—subject, of course, to Rule 403's more general prohibition against evidence that is less probative than prejudicial than

confusing.") (citing *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 228 (2d Cir. 1999)).  As set forth below, KIND's arguments that Dr. Hamilton is unqualified and that his opinions should be stricken because they are inadmissible, fail to apply the standard at class certification.

> (2)    Dr. Hamilton's Opinions Should Not Be Stricken Because They Meet The Requirements of Federal Rule of Evidence 702, Are Based on Scientific Foundation and Are Based on Sufficient Facts and Data

KIND argues that Dr. Hamilton's opinions are unreliable because "Hamilton provides none of the basic information required for the Court to determine whether his proposed methodology is appropriate for the task at hand."  Motion to Strike at 3.  To be admissible, expert testimony is required by Rule 702 to be "grounded on sufficient facts or data that 'is the product of reliable principles and methods.'"  *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (quoting Fed. R. Evid. 702(2)).  The court's gatekeeping inquiry is "a flexible one."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (noting flexible *Daubert* analysis "may focus upon personal knowledge or experience").  Experts need not have actually collected the data on which they base their conclusions in order to be credible.  *See* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.").

In this case, Dr. Hamilton's proposed methodologies are based on qualified economic principles, which show that it is possible to determine a price premium using hedonic regression analysis or a conjoint analysis.  Hamilton Decl., ¶¶ 43-62; Hamilton Reply Decl., ¶¶ 27-29.  In his initial declaration, Dr. Hamilton identified several scientific sources where other academics and professionals have calculated price premiums for products with "All Natural" and "non-GMO" attributes.  Hamilton Decl., ¶¶ 34-42.  Dr. Hamilton explained that hedonic regression analysis works to identify a price premium, stating "[r]egression analysis identifies and quantifies the relationship between two or more variables, seeking to identify the variation in a so-called

"dependent" variable (such as the price of a snack bar) due to that variable's relationship with one or more "independent" or "explanatory" variables (such as whether or not a snack bar is labeled "All Natural" or "non-GMO"). *Id.*, ¶ 20. Dr. Hamilton further explained that the "price premium Regression analysis can confirm that use of the 'All Natural' or 'non-GMO' representation on the product label increases the market price of a snack bar, and if so, the magnitude of the price premium." *Id.* Additionally, Dr. Hamilton explains that he would use retail price data to complete his proposed regression analysis. *Id.*, ¶ 4, 19-20.

To complete a hedonic regression analysis, Dr. Hamilton will use "reported data from KIND or from third parties such as Nielsen and IRI, which collect point-of-sale data from retail outlets." *Id.*, ¶ 44. Dr. Hamilton is familiar with data from Nielsen and IRI because he has used data from both sources in prior assignments. *Id.*, ¶ 55; Declaration of Todd S. Garber in Support of Plaintiffs' Reply to Class Certification, Ex. B (January 31, 2020 Deposition of Dr. Stephen F. Hamilton ("Hamilton Depo") at 36:10-37:13). Dr. Hamilton notes that such data is "sufficiently rich to allow the hedonic regression model to include interaction terms that capture the value of products jointly labeled as 'All Natural' and 'non-GMO' as opposed to products making only one of these representations on the label." Hamilton Decl., ¶ 54. Dr. Hamilton has recently acquired the retail scanner data from IRI and has confirmed that it contains data on sales in the snack bar category for California, Florida, New York and the entire US market for the period December 28, 2014 through January 26, 2020. Hamilton Reply Decl., ¶ 23, 37. Additionally, the IRI data separately identifies weekly sales for 6,878 distinct products sold in the snack bars category, as identified by Universal Product Code (UPC), and provide information on brand, product size (ounces), package size, sales volume, sales price, and price per unit ($/oz), by week and by UPC. *Id.* Furthermore, the IRI data encompass the period in which the Products jointly contained the

"all natural" and "non-GMO" claims, which occurred prior to KIND removing the "all natural" claim from its product labels over the period August 26, 2014 through March 28, 2017. *Id.*, ¶ 38. To adjust for label changes, Dr. Hamilton will adjust the IRI data to identify the week in which each product changed its label from making the joint claim of "all natural" and "non-GMO" to making just the "non-GMO" claim. Hamilton Reply Decl., ¶ 48.

Additionally, Dr. Hamilton will use data from Mintel, which includes specific data on products labeled as "All Natural" and "non-GMO" including 83 distinct positional claims made by products in the snack bars category. Hamilton Decl., ¶ 51; Hamilton Reply Decl., ¶ 23. The Mintel data distinguishes products making various forms of the "all natural" claim (e.g., "all natural," "100% natural," "100% all natural," and "all natural product") and various forms of the "GMO-free" claim (e.g., "non-GMO," "GMO-free," "free from GMOs," "free of GMOs," "contains no GMOs," "does not contain genetically modified ingredients," and "free from genetically modified ingredients") from those products sold in the snack bars category making no such claims. Hamilton Reply Decl., ¶ 41. Dr. Hamilton plans to use the "all natural" and "non GMO" attributes in his proposed hedonic regression analysis to determine the price premium for the Products. *Id.*, ¶ 41-45. Dr. Hamilton has reviewed the third party data from IRI and Mintel and believes that it contains "all the needed ingredients for a successful hedonic regression analysis." *Id.*, ¶ 23, 36. Dr. Hamilton will use a combination of the IRI and Mintel data to construct a panel dataset that matches point of sale data on weekly market prices over time by geographic region with a detailed list of attribute claims that appear on each product. *Id.*, ¶ 40.

KIND cites to several cases in support of its arguments, each of which are distinguishable. First, KIND cites *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.* for the proposition that "opinions should be excluded that lack a reliable factual foundation." 509 U.S. 209, 242

(1993).  This antitrust case is unpersuasive because it is not a class action, and does not involve identifying a price premium for a consumer product.  *Brooke Group Ltd.* is a predatory pricing case brought under the Robinson–Patman Act and is not relevant because it does not encompass the standard for admissibility of expert testimony at class certification.  Rather, the Court in *Brooke Group Ltd.* assessed the admissibility of expert opinions at the *merits* stage.  Here, even at the class certification stage, the foundation of the proposed methodologies is sound.  Dr. Hamilton is qualified to render his opinions because he has an extensive academic background, and has previously conducted a hedonic regression analysis to isolate a price premium for a consumer product.  Hamilton Depo. at 20:12-21:7.  Furthermore, Dr. Hamilton supports his opinions with several scientific sources, regarding valuing price premiums using hedonic regression analysis, including "A New Approach to Consumer Theory" by Kelvin J. Lancaster (1966), which has been cited over *13,000 times*.  Hamilton Decl., ¶¶ 34-42; Hamilton Reply Decl., ¶¶ 24-29.

Second, KIND cites *In re Rezulin Products Liability Litigation* for the proposition that expert testimony is unreliable if it is based on "subjective belief or unsupported speculation." Motion to Strike at 3 (citing *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004)).  In *Rezulin*, the issue was whether the defendants breached their legal duties to plaintiffs in the manufacturing, labeling and marketing of a particular product.  *Rezulin*, 309 F. Supp. 2d at 544.  The expert proffered was an ethics expert.  *Id*.  The *Rezulin* court held that the proposed experts' opinions were inadmissible because they were not based on knowledge; but, rather, were based on the personal and subjective views of the experts.  *See id*. at 542-45.  Additionally, the experts' opinions proffered in *Rezulin* did not relate to the legal claims and defenses at issue in that case.  *Id*. at 544.  The *Rezulin* holding has no bearing on whether or not Dr. Hamilton's testimony or declaration are unreliable.  Here, Dr. Hamilton's report concerning the available

models to calculate a price premium are not based on speculation or conjecture. Rather, Dr. Hamilton's opinions are based on his qualifications, including his professional experience and the work of other in the scientific and academic community. Hamilton Decl., ¶¶ 43-62. As such, Dr. Hamilton's opinions are relevant and admissible for Plaintiffs' proposition that this matter should be certified under Rule 23.

Third, KIND cites to *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452, at \*7 (S.D.N.Y. Aug. 5, 2010), to argue that Dr. Hamilton's testimony and declaration are unreliable because Dr. Hamilton has only a "conclusory belief that he will obtain the data he needs and that his hedonic regression will work." Motion to Strike at 7. In *Weiner*, the plaintiffs' expert had not confirmed the existence of "class-wide economic data" and failed to specify the "standard economic methodologies" he planned to use to analyze such data. 2010 WL 3119452, at \*7. In *Weiner*, the expert stated that he would use "standard economic methodologies" to identify a price premium, did not explain what data he would use, the existence of such data, and had not performed a review of scientific literature. *Id*. Unlike *Weiner*, Dr. Hamilton has specified two methodologies to calculate the price premium, hedonic regression and conjoint analyses. Hamilton Decl., ¶¶ 43-62. Additionally, Dr. Hamilton has familiarity with IRI data from his work experience in prior litigation. Hamilton Decl., ¶ 55. Further, Dr. Hamilton has obtained the data from IRI and Mintel since his initial declaration and has confirmed that the data contains the information necessary to run a hedonic regression analysis. Hamilton Reply Decl., ¶ 23.

(3)    <u>Dr. Hamilton's Testimony and Report are Reliable Because He Has Reviewed the Current Record and Has Relied on Adequate Scientific Sources</u>

Dr. Hamilton's testimony and declaration are reliable because he conducted a proper analysis of the documents and pleadings in this case in forming his opinions that a price premium can be calculated using common evidence. Motion to Strike at 8.

Here, Dr. Hamilton's declaration and testimony are reliable because they are based on the current record and on his experience. Dr. Hamilton reviewed Plaintiffs' allegations in the CAC, pertinent documents in KIND's production, his own independent research on KIND, and several relevant scientific sources.[4] *See* Hamilton Decl., ¶¶ 8, 26, 29; Hamilton Reply Decl., ¶¶ 27-29. KIND does not cite to a single authority to support its argument that Dr. Hamilton selectively relied on academic literature, because it is completely without merit. KIND argues that Dr. Hamilton spent "three hours reviewing the complaint," "approximately thirteen hours reviewing literature," and "twenty-one hours drafting his report." Motion to Strike at 8. However, each of these allegations are misleading because Dr. Hamilton spent an amount of time he believed was appropriate for each of these tasks. Dr. Hamilton's significant experience and expertise enabled him to work efficiently; this is distinguishable from a lack of qualification to render an opinion in this matter.

KIND relies on the criticisms of its marketing expert, Dr. Ran Kivetz, who conducted a consumer survey, to discredit Dr. Hamilton and his opinions. *See* Expert Declaration of Dr. Ran Kivetz, ECF 183 ("Kivetz Decl."). Dr. Kivetz, offers his *personal* view that Dr. Hamilton's review of the record was "limited" without any support or authority. Kivetz Decl., ¶ 95. Dr. Hamilton explains that "[t]he relevant issue for economic damages is not *why* a consumer purchased the Challenged Products (i.e., the causal or material factors), but *whether the consumer paid more* for the Challenged Products than they would have paid absent the misrepresentation." Hamilton Reply Decl., ¶ 8. As explained by Dr. Hamilton, "evidence from a consumer survey cannot refute the presence of a price premium paid by consumers in actual market transactions." *Id.*, ¶ 7. This

---

[4] Discovery in this case has not been bifurcated.

is because you cannot conflate economics and marketing disciplines and attack the reliability of regression analysis with a survey.  *Id*.

Furthermore, as discussed in, *supra*, Section IV.A(2), Dr. Hamilton has relied on widely accepted scientific literature and research in addition to his own professional knowledge in reaching his conclusions.  This literature focused on valuing a price premium for a variety of food products.  Hamilton Decl., ¶¶ 35-42; Hamilton Reply Decl., ¶¶ 24-25.  The literature lays the foundation for consumer purchasing behavior based on product labeling.  *See* Hamilton Reply Decl., ¶¶ 28-29.  In addition, Dr. Hamilton will use data from Mintel when running a hedonic regression, which he will overlay with the IRI sales data.  Hamilton Decl., ¶ 51.  Further, KIND and Dr. Kivetz do not cite to a single article or scientific study stating that you cannot use a hedonic regression to determine a price premiums for "All Natural" and "non-GMO" labels on a product. Thus, Dr. Hamilton's reliance on available scientific literature is appropriate.

KIND cites *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d at 267, for the proposition that the Court should "rigorously examine the data and methodology underlying proffered expert opinions.  Motion to Strike at 2.  However, The court in *Amorgianos* held that the expert's opinion should only be excluded if a purported flaw is so great that it lacks "good grounds" and that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" for defendant to challenge the expert's conclusions.  303 F.3d at 267 (quoting *Daubert*, 509 U.S. at 596).  However, KIND fails to disclose that the *Amorgianos* court also stated, "[t]his is not to suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions."  *Id*.  The court held, "[w]here an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack

of textual support may 'go to the weight, not the admissibility' of the expert's testimony." *Id*. at 267.

  (4) <u>Dr. Hamilton's Proposed Methodology Isolates The "All Natural" and "Non-GMO" Claims In Pricing And Purchasing Decisions</u>

Courts require that a proposed methodology must "attempt to isolate the premium due only to the allegedly misleading marketing statement." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413. In order for a plaintiff's price premium model to match his or her theory of liability, the expert "must control for product features" other than the claim at issue "when calculating the price premium." *Id*.; *see also Brown*, 2014 WL 6483216, at *19 (finding that proposed model satisfied *Comcast* where expert addressed the problem of controlling for product aspects other than the "organic" claim).

In *Scotts EZ Seed Litigation*, Defendant challenged plaintiffs' three damages models, arguing that they were inconsistent with plaintiffs' theory of liability. *See* 304 F.R.D. at 412. With respect to plaintiffs' price premium theory, plaintiffs' expert proposed calculating the "price premium that is attributable only to the 50% thicker with half the water representation." *Id*. The expert testified that he would isolate the premium associated with the claim using either hedonic regression, a contingent valuation study, or a conjoint analysis. *Id*. at 413. Though the expert's report did not explicitly state that he would "isolate the premium" associated with the claim at issue, "he made clear at his deposition that he intends to do so." *Id*. Specifically, he "identified statistical methodologies by which he will be able to isolate the price premium associated with the 50% thicker claim, and described each methodology in detail." *Id*. at 414. The court concluded that this satisfied *Comcast*. *Id*.

KIND argues that the Court should discredit Dr. Hamilton's proposed methodology because at the time of his deposition, Dr. Hamilton was unable to assess the issues of collinearity

and multicollinearity, as he had not received the data from Mintel. Motion to Strike at 7. However, Dr. Hamilton has now confirmed that he is able to separate the price premium of the "non-GMO" claim from the price premium for the joint "all natural" and "non-GMO" claim with the data received from Mintel. Hamilton Reply Decl., ¶ 56. Furthermore, KIND argues that Dr. Hamilton failed to address whether the data contains information of consumers' willingness to pay. Motion to Strike at 5. However, as Dr. Hamilton explained, "[t]he purchase intention of a consumer is driven by his or her willingness to pay for a product relative to its market price, which is a distinctly different question from whether the market price facing a consumer embodies a price premium for natural and non-GMO product." *Id.*, ¶ 19.

In support of its argument, KIND cites to *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *22 (N.D.N.Y. Sept. 27, 2017), for the proposition that "[w]hile [the expert] need not test or implement the model at this stage, he must provide enough information to demonstrate its potential application to this case. . . ." Motion to Strike at 7. *Singleton* contradicts KIND's argument that Dr. Hamilton's declaration and testimony are unreliable because he did not build and construct either of his proposed models. *Id.* at 9. Furthermore, Dr. Hamilton now has the third party data he needs to construct and run a hedonic regression analysis at the merits stage, and has confirmed that the data contains all the necessary information. Hamilton Reply Decl., ¶ 23, 36

### B.    Dr. Hamilton's Declaration and Testimony Assist the Trier of Fact

Federal Rule of Evidence 702 provides that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." This requirement is "akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence, but goes beyond mere relevance because it also requires expert testimony to have a valid connection to the pertinent inquiry." *Reach Music*, 988 F. Supp. 2d at 401 (internal quotation omitted). Expert testimony

must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Daubert*, 509 U.S. at 587.

KIND argues that Dr. Hamilton's testimony is irrelevant and does not assist the trier of fact for several reasons. *See* Motion to Strike at 9. First, KIND argues that Dr. Hamilton fails to explain how to isolate the "All Natural" and "Non GMO" attributes on KIND's Products from one another and to account for label changes over the class period. *Id*. at 9, 10. As discussed in Section IV.A(3) above, Dr. Hamilton is able to use the Mintel data to separate the price premium of the "non-GMO" claim from the price premium for the joint "all natural" and "non-GMO" claim. Hamilton Reply Decl., ¶ 55.

Second, KIND argues Dr. Hamilton's declaration and testimony are unreliable because he did not build and run the proposed hedonic regression model. *Id*. at 9. Additionally, KIND argues that since Dr. Hamilton was not able to affirmatively determine whether a price premium exists, that class-wide damages cannot be calculated. *Id*. at 10. In his initial declaration, Dr. Hamilton specifically explained that hedonic regression analysis enables economists to calculate the relationship between a dependent variable and multiple independent variables. Hamilton Decl., ¶ 49. Further, Dr. Hamilton explained that a hedonic regression model identifies the magnitude of the effect for each independent variable, determines whether the effect is statistically significant (i.e., not due to random variation in the data), and measures how well the model predicts the outcomes. *Id*.

Moreover, Dr. Hamilton's testimony will assist the trier of fact in defining a price premium and how the existence of such effects *all* consumers. Dr. Hamilton's opinions will assist the trier of fact in understanding what a hedonic regression analysis is and how it values price premiums

for the "All Natural" and "Non GMO" attributes for the Products.  Dr. Hamilton's initial opinions show that even without designing and conducting a hedonic regression analysis, class-wide damages can be calculated using this widely utilized and accepted methodology.  Furthermore, Dr. Hamilton's opinions will assist the trier of fact in understanding the concept that a price premium is paid by all consumers, not just those who purchased KIND Products in reliance of the representations on the labels.  Without the testimony of Dr. Hamilton, the trier of fact would be left to their own devices to understand the concept of a price premium.  Additionally, Dr. Hamilton explained his familiarity with retail scanner data and how he will be able to use the data from IRI and Mintel to construct and perform a hedonic regression analysis.  Hamilton Decl., ¶ 55; Hamilton Reply Decl., ¶¶ 45, 55.

Third, KIND argues that Dr. Hamilton cannot reconcile the varied definitions of "natural." Motion to Strike at 9.  Dr. Hamilton's opinions on this issue are critical because he can provide the foundation of the retail scanner data and the definitions of the attributes for which it contains data.  As previously discussed in Section IV.A(2), the Mintel data distinguishes products making various forms of the "all natural" claim (e.g., "all natural," "100% natural," "100% all natural," and "all natural product") and various forms of the "GMO-free" claim (e.g., "non-GMO," "GMO-free," "free from GMOs," "free of GMOs," "contains no GMOs," "does not contain genetically modified ingredients," and "free from genetically modified ingredients") from those products sold in the snack bars category making no such claims. Hamilton Reply Decl., ¶ 41.

Dr. Hamilton's testimony will aid the trier of fact in weighing the conflicting evidence presented in this case by the parties by providing the context necessary to understand product attributes and consumer data.  Thus, the testimony and declaration of Dr. Hamilton should not be stricken from the record, and KIND's Motion to Strike should be denied.

### C.      Dr. Hamilton is Qualified to Opine on Conjoint Surveys

Federal Rule of Evidence 702 states "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This language makes no relevant distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147. It makes clear that any such knowledge might become the subject of expert testimony. *Id*. In *Daubert*, the Court specified that it is the Rule's word "knowledge," not the words (like "scientific") that modify that word, that "establishes a standard of evidentiary reliability." *Id*. (citing *Daubert*, 509 U.S. at 589-590).

Dr. Hamilton is qualified to opine on the use of conjoint surveys because of his academic background and professional experience. Dr. Hamilton has studied and worked in the economics field for twenty-four years. Hamilton Decl., ¶ 1. Additionally, Dr. Hamilton's testimony establishes that he is qualified to opine on the construction and application of a conjoint analysis. Hamilton Depo. at 60:11-61:7. Dr. Hamilton explains that even though he believes that calculating damages is possible with hedonic regression alone, a conjoint analysis is a fallback approach. *Id*. at 61:3-5. While Dr. Hamilton offered his opinions on a conjoint analysis, he stated that he himself would not conduct the analysis; rather, Dr. Hamilton would outsource this task and would work with a marketing team that actually specializes in conjoint survey design to conduct a conjoint analysis. *Id*. at 61:19-62:5. Lastly, Dr. Hamilton explained that if there is any problem getting the data to run a conjoint analysis, you can collect data on your own through a conjoint study. *Id*. at 61:5-7.

KIND cites *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018), for the argument that Dr. Hamilton is not qualified to opine on a conjoint analysis. Motion to Strike at 10. However, *Karavitis* is not analogous to the instant case. *Karavitis* is a case where the admissibility of the expert was being assessed at the merits stage, not class certification. 722 F.

App'x at 55.  In *Karavitis*, the Plaintiff's expert, Lewis Barbe, had a bachelor's degree in fire protection and safety engineering and rendered an opinion on the safety of defendant's circular saw.  *Id.*  The court in *Karavitis* held that Barbe lacked adequate qualifications to opine on the design of defendant's saw and their failure to warn because he "offered no explanation of how that degree qualifies him with respect to the issue in the case at hand."  *Id.*  Here, Dr. Hamilton is an economist who has worked and taught in this field for over 20 years, and has opined on the use of hedonic regression and conjoint analyses for litigation in the past.  Hamilton Decl., ¶ 1, 48 n.40. To substantiate Dr. Hamilton's opinion that it is possible to use a conjoint analysis to value a price premium in the instant case, Plaintiffs have retained Dr. J. Michael Dennis ("Dr. Dennis").  As stated in Dr. Dennis' report, conjoint analyses are "widely accepted by courts as a reliable methodology."   Report of Dr. J. Michael Dennis in Support of Plaintiffs' Reply to Class Certification, ¶ 54

KIND also cites *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 192 (S.D.N.Y. 2006), but this case has no bearing on whether or not Dr. Hamilton is qualified to render an opinion of a conjoint analysis.  Motion to Strike at 10.  In *Celebrity Cruises*, the expert was offering opinions about brand stigma when he was a *damages* expert.  434 F. Supp. 2d at 192.  Unlike *Celebrity Cruises*, Dr. Hamilton is an *economist* offering a proposed *economic* model to identify a price premium for the "all natural" and "non GMO" attributes and to calculate class-wide damages at the appropriate time.  Dr. Hamilton explains that a conjoint analysis works by measuring a consumers' willingness to pay and how that translates into a price premium.  Hamilton Depo. at 63:9-64:12.  Dr. Hamilton's opinions that a conjoint analysis can be used to determine a price premium is not outside the scope of Dr. Hamilton's expertise or qualifications.

/ / /

V.    **<u>CONCLUSION</u>**

For the foregoing reasons, KIND's Motion to Strike Dr. Hamilton's testimony and declaration should be denied.

Respectfully submitted,

Dated:  June 2, 2020                          **FINKELSTEIN, BLANKINSHIP,**
                                              **FREI-PEARSON & GARBER, LLP**

                                      By:     */s/ Todd Garber*
                                              Todd S. Garber
                                              *tgarber@fbfglaw.com*
                                              D. Greg Blankinship
                                              *gblankinship@fbfglaw.com*
                                              445 Hamilton Ave., Suite 605
                                              White Plains, New York 10601
                                              Tel: (914) 298-3283
                                              Fax: (914) 824-1561

                                              Tina Wolfson
                                              *twolfson@ahdootwolfson.com*
                                              Robert Ahdoot
                                              *rahdoot@ahdootwolfson.com*
                                              Theodore W. Maya
                                              *tmaya@ahdootwolfson.com*
                                              **AHDOOT & WOLFSON, PC**
                                              10728 Lindbrook Drive
                                              Los Angeles, California 90024-3102
                                              Tel: (310) 474-9111
                                              Fax: (310) 474-8585

                                              Daniel L. Warshaw
                                              *dwarshaw@pswlaw.com*
                                              Matthew A. Pearson
                                              *mapearson@pswlaw.com*
                                              **PEARSON, SIMON & WARSHAW, LLP**
                                              15165 Ventura Boulevard, Suite 400
                                              Sherman Oaks, California 91403
                                              Tel: (818) 788-8300
                                              Fax: (818) 788-8104

                                              *Co-Lead Counsel for Plaintiffs*
                                              *and the Putative Class*