# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION<br><br>———————————————————<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 1:15-md-02645-NRB<br>Case No. 1:15-mc-02645-NRB<br><br>Hon. Naomi Reice Buchwald, presiding<br><br>**MEMORANDUM OF LAW IN SUPPORT OF KIND LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND ...................................................................2

    A. The Challenged KIND Products .....................................................2

    B. Plaintiffs, Their Claims And Class Certification ............................2

        1. Plaintiff Short ......................................................................3

        2. Plaintiff Thomas..................................................................4

        3. Plaintiff Bustamante............................................................4

        4. Plaintiff Livingston .............................................................5

    C. The Plaintiffs' Experts ....................................................................5

        1. Hamilton's Hedonic Regression Damage Model .................5

        2. Dennis' Perception Survey ..................................................6

        3. Dennis' Materiality Survey .................................................7

        4. Toutov's "Elements Of Naturalness" Framework ...............7

III. THE COURT SHOULD GRANT SUMMARY JUDGMENT .................8

    A. Legal Standard For Summary Judgment..........................................8

    B. Plaintiffs Cannot Establish That They Suffered An Injury As A Result Of The "All Natural" Label Statement........................................................9

        1. Plaintiffs Have No Admissible Evidence Of Injury .............10

        2. Plaintiffs Cannot Demonstrate That They Were Injured By A Deceptive "All Natural" Label Statement................................................10

        3. New York Plaintiffs Are Not Entitled To Statutory Damages ...............12

    C. Plaintiffs Cannot Establish That KIND's "All Natural" Labeling Deceived Reasonable Consumers ........................................................12

        1. Plaintiffs Cannot Define What "All Natural" Means To Reasonable Consumers ...........................................................................13

        2. Plaintiffs Have No Evidence That The "All Natural" Label Statement Deceived Reasonable Consumers ....................................16

    D. Plaintiffs Cannot Demonstrate That The "All Natural" Label Statement Was Material To Consumer Purchasing Decisions .............................21

    E. The California Claims Fail Because Plaintiff Bustamante Cannot Demonstrate Reliance................................................................................23

    F. Plaintiffs' Individual State Common Law Claims Fail ......................24

IV. CONCLUSION.................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Adventures LLC v. Intercard, Inc,*
 2021 WL 1165244 (S.D. Fla. Mar. 26, 2021) ...................................................... 9, 12

*Abuelhawa v. Santa Clara Univ.,*
 529 F. Supp. 3d 1059 (N.D. Cal. 2021) .............................................................. 25

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ............................................................................................ 8, 9

*Astiana v. Kashi Co.,*
 291 F.R.D. 493 (S.D. Cal. 2013) ...................................................................... 16, 21

*Axon v. Citrus World, Inc.,*
 354 F. Supp. 3d 170 (E.D.N.Y. 2018) ................................................................ 20

*Azoulai v. BMW of N. Am. LLC,*
 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .................................................... 25

*Baghdasarian v. Amazon.com, Inc.,*
 2009 WL 4823368 (C.D. Cal. Dec. 9, 2009) ...................................................... 24

*Barreto v. Westbrae Nat., Inc.,*
 518 F. Supp. 3d 795 (S.D.N.Y. 2021) ................................................................ 25

*Brady v. Town of Colchester,*
 863 F.2d 205 (2d Cir. 1988) ............................................................................... 8

*Brazil v. Dole Packaged Foods, LLC,*
 660 F. App'x 531 (9th Cir. 2016) ....................................................................... 9

*Chuang v. Dr Pepper Snapple Grp., Inc.,*
 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) .................................................. 25

*Clemens v. DaimlerChrysler Corp.,*
 534 F.3d 1017 (9th Cir. 2008) ........................................................................... 14

*Crawford v. Franklin Credit Mgmt.,*
 758 F.3d 473 (2d Cir. 2014) ............................................................................... 9

*Davis v. New York,*
 316 F.3d 93 (2d Cir. 2002) ................................................................................. 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Devayatan, LLC v. Travelodge Hotels, Inc.*,
   2016 WL 3477205 (M.D. Fla. June 27, 2016) ...................................................................... 25

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................................... 13

*Eidelman v. Sun Prods. Corp.*,
   2021 WL 1198891 (S.D.N.Y. Mar. 30, 2021) ........................................................... 9, 12, 24

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   227 F. Supp. 3d 1192 (D. Colo. 2017) ................................................................................ 11

*In re Gen. Mills Glyphosate Litig.*,
   2017 WL 2983877 (D. Minn. July 12, 2017) ...................................................................... 20

*Hairston v. S. Beach Beverage Co., Inc.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................................................................... 20

*Himber v. Intuit, Inc.*,
   2012 WL 4442796 (E.D.N.Y. Sept. 25, 2012) .................................................................... 12

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862 (E.D.N.Y. 2018) ................................................................................. 13

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ...................................................................... 13

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ......................................................... 15, 21, 22

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .............................................................................................. 13

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ............................................................................... 10

*Major v. Ocean Spray Cranberries, Inc.*,
   2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ............................................................... 12, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McMorrow v. Mondelez Int'l, Inc.*,
   2020 WL 1157191 (S.D. Cal. March 9, 2020)......................................................... 23

*Moore v. GNC, Holdings, Inc.*,
   2014 WL 12634919 (S.D. Fla. Mar. 18, 2014)............................................... 9, 11

*Morales v. Conopco, Inc.*,
   2016 WL 6094504 (E.D. Cal. Oct. 18, 2016) ...................................................... 14

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................................ 9

*O'Bannon v. Nat. Collegiate Athletic Ass'n*,
   7 F. Supp. 3d 955 (N.D. Cal. 2014) .................................................................... 22

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015).................................................................................. 21

*Pardini v. Unilever*,
   2020 WL 6821071 (N.D. Cal. July 10, 2020)...................................................... 22

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2020).................................................................. 20

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................................ 16

*Price v. L'Oreal USA, Inc.*,
   2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018)................................................. 7, 12

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
   179 Cal. App. 4th 36 (2009) ........................................................................... 23, 24

*Randolph v. J.R. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ......................................................................... 16

*Ries v. Ariz. Beverages USA LLC*,
   2013 WL 1287416 (N.D. Cal. March 28, 2013).................................................. 13

*Segovia v. Vitamin Shoppe, Inc.*,
   2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) ..................................................... 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Singleton v. Fifth Generation, Inc.*,
    2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) .................................................................... 13

*Sperling v. Stein Mart*,
    291 F. Supp. 3d 1076 (C.D. Cal. 2018) ............................................................................. 12

*Strumlauf v. Starbucks Corp.*,
    2018 WL 306715 (N.D. Cal. 2018) ................................................................................... 21

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................................... 21, 22, 23

*Tran v. Sioux Honey Ass'n*,
    2020 WL 3989444 (C.D. Cal. July 13, 2020) .................................................................... 20

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,
    2019 WL 2521958 (D.N.J. Jun. 18, 2019) ................................................................... 21, 23

*Valador, Inc. v. HTC Corp.*,
    242 F. Supp. 3d 448 (E.D. Va. 2017) ................................................................................ 15

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..................................................................... 10

*Williams-Sonoma Song-Beverly Act Cases*,
    No. JCCP-4611 (Cal. Super. Ct. San Francisco Cty. March 16, 2018 .................................. 22

*Wilson v. Frito-Lay N. Am., Inc.*,
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) ........................................................... 9, 11, 23, 24

*Yu v. Dr Pepper Snapple Grp.*,
    2019 WL 2515919 (N.D. Cal. June 18, 2019) ................................................................... 20

*Zakaria v. Gerber Prods. Co.*,
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ..................................................................... 10

*Zeldman v. Pershing LLC*,
    2010 WL 11505834 (S.D. Fla. Aug. 20, 2010) .................................................................. 25

**Statutes**

7 C.F.R. § 205.605 ................................................................................................................ 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Bus. & Prof. Code § 17200, *et seq.* .................................................................*passim*

Cal. Bus. & Prof. Code § 17500, *et seq.* .................................................................*passim*

Cal. Civ. Code § 1750.............................................................................................*passim*

Fla. Stat. § 501.201 ......................................................................................................2

N.Y. Gen. Bus. Law § 349 .......................................................................................*passim*

N.Y. Gen. Bus. Law § 350.......................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................8

Fed. Rule of Evid. 702 ..................................................................................................5

**<u>TABLE OF REFERENCES</u>**

| Abbreviation | Document | Role in Case |
|---|---|---|
| KB Decl. | Declaration of Keri E. Borders | Counsel for Defendant |
| Kivetz Hamilton Reb. Rep. | Expert Report of Dr. Ran Kivetz in Response to Hamilton Expert Report; Ex. 12 to the KB Decl. | Defendant's Survey, Statistics, Marketing, and Consumer Purchasing Behavior Expert |
| Kivetz Dennis Reb. Rep. | Rebuttal Expert Report of Dr. Ran Kivetz in Response to Dennis Expert Report; Ex. 11 to the KB Decl. | Defendant's Survey, Statistics, Marketing, and Consumer Purchasing Behavior Expert |
| CB Tr. | Deposition Transcript of Charity Bustamante; Ex. 4 to the KB Decl. | Plaintiff Charity Bustamante |
| AS Tr. | Deposition Transcript of Amanda Short, Ex. 3 to the KB Decl. | Plaintiff Amanda Short |
| EL Tr. | Deposition Transcript of Elizabeth Livingston, Ex. 1 to the KB Decl. | Plaintiff Elizabeth Livingston |
| ST Tr. | Deposition Transcript of Sarah Thomas, Ex. 2 to the KB Decl. | Plaintiff Sarah Thomas |
| Dennis Rpt. | Expert Report of Dr. J. Michael Dennis, Ex. 5 to the KB Decl. | Plaintiffs' Survey Expert |
| Dennis Tr. | Deposition Transcript of Dr. J. Michael Dennis, Ex. 9 to the KB Decl. | Plaintiffs' Survey Expert |
| Toutov Rpt. | Expert Report of Dr. Anton Toutov, Ex. 7 to the KB Decl. | Plaintiffs' Expert on "Naturalness" |
| Toutov Tr. | Deposition Transcript of Dr. Anton Toutov, Ex. 10 to the KB Decl. | Plaintiffs' Expert on "Naturalness" |
| Hamilton Rpt. | Expert Report of Dr. Stephen Hamilton dated 9/9/21, Ex. 6 to the KB Decl. | Plaintiffs' Damages Expert |
| Hamilton Tr. | Deposition Transcript of Dr. Stephen Hamilton dated 10/15/21, Ex. 8 to the KB Decl. | Plaintiffs' Damages Expert |
| Lanning Decl. | Declaration of Elle Lanning Filed In Support of KIND LLC's | Defendant Fact Witness |

| | | |
|---|---|---|
| | Opposition to the Class Certification Motion, Ex. 15 to the KB Decl. | |
| Lutter Decl. | Declaration of Brian Lutter in Support of KIND LLC's Memorandum in Opposition to the Motion for Class Certification, Ex. 19 to the KB Decl. | Defendant Fact Witness |
| Appendix A | Appendix A to KIND LLC's Memorandum in Opposition to the Motion for Class Certification, Ex. 13 to the KB Decl. | N/A |

## I.      <u>INTRODUCTION</u>

Plaintiffs' Amended Class Action Complaint ("ACC"), filed on October 31, 2016, asserted false advertising claims against KIND LLC based on allegations that the "All Natural/Non GMO" and "Non GMO" labeling on KIND products deceived consumers. Plaintiffs have now abandoned their "GMO" labeling claims and are proceeding only under the theory that the "All Natural" label statement was deceptive. Plaintiffs have had *five* years to define what "All Natural" means to reasonable consumers and to marshal evidence to support their claims. But, as demonstrated in this motion (and in the accompanying motion to exclude plaintiffs' expert witnesses), plaintiffs have failed.

**Plaintiffs cannot establish that they were injured by the "All Natural" label statement.** Plaintiffs fail to show that they (and every consumer) paid a price premium for KIND products. Plaintiffs' proposed damage model is not just unreliable; it fails to measure a price premium for *KIND products* at all (as opposed to snack bars in general), much less a price premium that aligns with plaintiffs' liability theory.

**Plaintiffs cannot establish that the "All Natural" label statement was deceptive.** Plaintiffs have no evidence that reasonable consumers were deceived by KIND's "All Natural" label statement. Plaintiffs cannot even define what reasonable consumers understand the "All Natural" label statement to mean. Nor have they produced admissible evidence establishing that the "All Natural" label statement was false.

**Plaintiffs cannot establish that the "All Natural" label statement was material.** Similarly, plaintiffs have put forward no evidence that the "All Natural" label statement was material to the purchasing decision of consumers.

**The California claims fail for an additional reason.** Plaintiff Bustamante's claims all fail for the additional reason that she cannot establish that *she* relied on the "All Natural" label statement when purchasing KIND products.

**Plaintiffs' common law claims fail.** The same reasons that support summary judgment as to plaintiffs' statutory claims also support summary judgment as to their common law claims.

1

For all of these reasons, and as set forth more fully below and in the accompanying motions to exclude the opinions of plaintiffs' experts Drs. Stephen Hamilton, J. Michael Dennis, and Anton Toutov, the Court should grant KIND's motion for summary judgment, or in the alternative partial summary judgment.

## II.   FACTUAL BACKGROUND

### A.   The Challenged KIND Products

KIND makes wholesome snacks with ingredients consumers recognize like whole nuts, whole grains, and a variety of fruits and spices. At issue in this case are three of KIND's product lines: KIND Core Bars (nut-based snack bars), KIND Healthy Grains Bars (grain-based snack bars), and KIND Healthy Grains Clusters (non-bar bags of bite-sized pieces of granola). Separate Statement of Undisputed Facts ("SSUF") ¶ 1.

### B.   Plaintiffs, Their Claims And Class Certification

The ACC asserts false advertising claims under the consumer protection laws of California, New York, and Florida on behalf of four consumers, Amanda Short, Sarah Thomas, Charity Bustamante, and Elizabeth Livingston, as well as common law claims for breach of warranty, unjust enrichment, and negligent misrepresentation. *Id*. ¶ 2. Plaintiffs moved for class certification (and classes were certified) only as to the statutory consumer protection law claims under the law of the states of **California** (Ca. Bus. & Prof. Code § 17200, et seq. ("UCL"), Cal. Bus. & Prof. Code § 17500, et seq. ("FAL"), and Consumers Legal Remedy Act, Cal. Civ. Code § 1750, et seq. ("CLRA")); **New York** (N.Y. Gen. Bus. Law §§ 349, 350 ("GBL")); and **Florida** (Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 ("FDUPTA")). *See* ECF No. 193 at 3-4; ECF No. 216 at 1, 2. Accordingly, while plaintiffs' common law claims have not yet been dismissed, they are also not part of the certified classes and are pursued on behalf of individual plaintiffs only.

The ACC challenged three different label statements on 39 individual KIND products: (i) "All Natural/Non GMO," (ii) "Non GMO," and (iii) "No Genetically Engineered Ingredients." SSUF ¶ 4. "All Natural" never appeared on KIND labels standing alone; it

appeared only as part of the "All Natural/Non GMO" label statement. *Id.* ¶ 5. As illustrated below by comparing labels from the same KIND product, the "All Natural/Non GMO" label statement was removed and replaced with "Non GMO," which occurred on a product-by-product rolling basis beginning in 2014. *Id.* ¶¶ 6-7.

 

On March 24, 2021, the Court certified three classes for the states of California, New York, and Florida. ECF No. 216 at 7, 44. Discovery confirmed, consistent with KIND's arguments from the outset, that KIND's products *are* non GMO. Accordingly, and as plaintiffs acknowledged during the January 5, 2022 telephonic hearing with the Court, plaintiffs have abandoned all of their claims premised on KIND's "Non GMO" and "No Genetic Engineered Ingredients" label statements.

The only remaining label statement being challenged in this case is the "All Natural" portion of the "All Natural/Non GMO" label statement.[1]

1.    Plaintiff Short

Short is a resident of New York who alleges she purchased Fruit & Nut Almond & Apricot Core Bars, Dark Chocolate Cherry Cashew + Antioxidants Core Bars, and Nuts & Spices Dark Chocolate Nuts & Sea Salt Core Bars. SSUF ¶¶ 9-10. Short did not purchase

---

[1] The original complaints in this case were filed in 2015 on the heels of an FDA warning letter addressing KIND's "healthy" labeling. After the JPML granted the motion to consolidate, and FDA withdrew its warning letter regarding KIND's healthy label statements, plaintiffs dismissed their claims challenging the "healthy" label statements and filed the ACC. *See, e.g.,* Dkt. 58 ¶ 14.

Healthy Grains Bars and Healthy Grains Clusters. *Id*. ¶ 11. Short testified that she believed "natural" meant that KIND products were made from whole nuts, fruits, and whole grains, but that it was possible that consumers had different understandings about what "all natural" meant with respect to the Products. *Id*. ¶¶ 12-13.

### 2.    Plaintiff Thomas

Thomas is a resident of New York who alleges she purchased Fruit & Nut Almond & Coconut Core Bars, Peanut Butter Dark Chocolate + Protein Core Bars, Nuts & Spices Dark Chocolate Nuts Chili Almond Core Bars, Nuts & Spices Cashew & Ginger Spice Core Bars, and Nuts & Spices Dark Chocolate Nuts & Sea Salt Core Bars. *Id*. ¶¶ 14-15. Thomas did not purchase Healthy Grains Bars or Healthy Grains Clusters. *Id*. ¶ 16. Thomas believed "natural" meant that "the ingredients were not synthetic" or "chemicals," but agreed that "natural" can mean different things for different products, and can change over time. *Id*. ¶¶ 17-18.

### 3.    Plaintiff Bustamante

Bustamante is a resident of California who alleges she purchased Peanut Butter Dark Chocolate + Protein Core Bars, Nuts & Spices Dark Chocolate Nuts & Sea Salt Core Bars, KIND Cranberry Almond + Antioxidants with Macadamia Nuts Core Bars, and Dark Chocolate Cherry Cashew + Antioxidants Core Bars. *Id*. ¶¶ 19-20. Bustamante could not recall purchasing Healthy Grains Bars or Healthy Grains Clusters. *Id*. ¶ 21. Bustamante purchased KIND products because she thought they were a "healthy non-GMO snack," and stopped purchasing them when she realized they may not be healthy or non-GMO. *Id*. ¶ 22. Bustamante specifically "rel[ied]" on the "non-GMO statement" on the label, but not any "natural" representation. *Id.* ¶¶ 23-25. Though provided plenty of opportunity during her entire deposition, Bustamante never pointed to the "All-Natural" label statement as relevant or material to her purchasing decision. *Id.* Bustamante stopped eating KIND bars because they might not be healthy, or they might contain GMOs. *Id.* "All Natural" had nothing to do with her decision. *Id.* ¶ 25.

4.      Plaintiff Livingston

Livingston is a resident of Florida who alleges she purchased Fruit & Nut Almond & Coconut Core Bars, Peanut Butter Dark Chocolate + Protein Core Bars, and Dark Chocolate Cherry Cashew + Antioxidants Core Bars. *Id.* ¶¶ 26-27. Livingston does not know if she had ever purchased a Healthy Grains Bar, or Healthy Grains Clusters. *Id.* ¶ 28. She testified that a "natural" product is one that would be "pull[ed] out of the Earth" or "dirt" and be "untouched." *Id.* ¶ 29. She also testified that she did not know what other people's definition of "natural" might be, but she agreed that a "significant" portion of other consumers might have a different definition than she does. *Id.* ¶ 30.

C.      **The Plaintiffs' Experts**

Plaintiffs rely almost exclusively on three experts for all aspects of their case: Drs. Stephen Hamilton, J. Michael Dennis, and Anton Toutov. As detailed in KIND's concurrently-filed motions to exclude their expert reports and testimony, the opinions of each expert are unreliable and irrelevant and should be excluded under Fed. Rule of Evid. 702 and *Daubert.*

1.      **Hamilton's Hedonic Regression Damage Model**

Hamilton's report provides plaintiffs' sole evidence of injury and damage. Hamilton designed a hedonic regression that he contends establishes a price premium attributable to the "All Natural" representation on the challenged KIND products. SSUF ¶¶ 31-32. But Hamilton's regression model actually shows that there is a *negative* price premium for the "All Natural" label statement on KIND products. *Id.* ¶ 39. For that reason, Hamilton asserts that the proper way to view his model is across the *entire snack bar category* (including over 2,000 products). *Id.* ¶¶ 33-34. Doing so, according to Hamilton, results in the finding that, for the *entire snack bar category*, there is an average 3.95% price premium associated with products that are positioned as "natural" by Mintel.[2] *Id.* ¶ 33. Hamilton then concludes that this average,

---

[2] Mintel is a research company that compiles data on, among other things, food products. *See* https://www.mintel.com/mintel-food-drink. Hamilton did not review product labels, but instead relied on Mintel's research and identification of various product attributes (natural, organic, non-

category-wide price premium calculation should be imputed to KIND products, notwithstanding his findings to the contrary when KIND products alone are tested. *Id.* ¶ 35. Moreover, Hamilton's model does not isolate any damages directly correlated with plaintiffs' specific theory of what an "All Natural" snack bar means or how their expectations were allegedly frustrated in that regard by what they received. *Id.* ¶ 36. Indeed, Hamilton did nothing to attempt to reconcile plaintiffs' theory of "All Natural" deception with his price premium damage model.

## 2. Dennis' Perception Survey

Plaintiffs commissioned Dennis to conduct a "perception" survey ostensibly for the purpose of determining what consumers perceive "All Natural" to mean. *Id*. ¶ 40. Dennis did not do that. Instead, he designed a survey to determine if respondents agreed with two definitions of the characteristics of "natural" products *invented* by Dennis based on his "assimilation" of the allegations in the ACC:

- *Definition One*: The products will or will not "contain artificial and synthetic ingredients," and

- *Definition Two*: The product is made or is not made "using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid."

*Id*. ¶¶ 41-42.

In the perception survey, respondents were provided with these two different definitions and asked if they would expect a product labeled "natural" to have those product features. *Id*. ¶ 43. According to Dennis, 86% of respondents agreed with Definition One and 76% agreed with Definition Two. *Id.* ¶ 45. Dennis' perception survey did not ask respondents what they perceived "All Natural" to mean. *Id*. ¶ 44. The survey did not provide respondents with any other option (e.g., "Non-GMO") other than the two definitions invented by Dennis. *Id*. ¶¶ 42,

---

GMO) for the underlying data he included in his model. Hamilton Rpt. ¶ 40; *see also, e.g.*, Hamilton Tr. 165:16-167:1.

44. Accordingly, the Dennis perception survey was not designed to, nor did it discover, what reasonable consumers think "All Natural" on a KIND product label means. *Id*. ¶ 46.

### 3.    Dennis' Materiality Survey

Dennis also was asked to determine if KIND's "All Natural" label statement was material to reasonable consumers. *Id*. ¶ 47. To do so, Dennis conducted a "referendum" survey. *Id*. ¶ 48. In his referendum survey, Dennis showed respondents two hypothetical "labels" that were identical in all respects except that one had an "All Natural" statement, and one did not. *Id*. ¶ 49. Dennis told respondents that they were to assume that the products "have the same *brand*, *features*, and *price*." *Id*. ¶ 50 (emphasis added). Dennis then provided respondents with a table that listed all of the attributes of the hypothetical products side by side. *Id. ¶* 51. In the table, the descriptions of the hypothetical products are the same except Product A has an "All Natural" label statement listed. *Id.* After viewing the side-by-side table comparison, survey respondents were asked which product they would choose, and were specifically instructed: "Product A does have the label claim **All Natural**. Product B does not have the label claim **All Natural**." *Id*. ¶ 52. The Dennis survey amounts to the question, if you have to choose one—and all else being equal—would you prefer the product that contains an "All Natural" label statement? According to Dennis, 83.9% of respondents chose Product A—the product with the "All Natural" label claim. *Id.* ¶ 53. From this question, Dennis concluded that the "All Natural" labeling on KIND products was material to reasonable consumers. *Id.* ¶ 54.

### 4.    Toutov's "Elements Of Naturalness" Framework

Plaintiffs designated Toutov as their expert on whether the ingredients in the KIND products are "natural." *Id*. ¶ 55. Toutov had no prior experience with the meaning of natural as applied to food ingredients, food labeling or otherwise. *Id*. ¶ 56; *see also* Mot. to Exclude Toutov at § II(A). Plaintiffs did not provide him with a definition or framework under which to determine if the KIND products or their ingredients were natural. *Id*. ¶ 57. Instead, Toutov invented his own framework that he dubbed the "Elements of Naturalness." *Id*. ¶¶ 57-58. Toutov's "Elements of Naturalness" framework is not a standard that the food industry or any

regulatory agency recognizes. *Id*. ¶¶ 59-60. Toutov invented it solely for his work in this case. *Id*. The "Elements of Naturalness" framework contains three elements—the origin of the food product, production and/or processing of the ingredient, and the final form of food product. *Id*. ¶ 63. If an ingredient fails to meet any one of those three elements, Toutov opines that it cannot be considered natural. *Id*.

Significantly, Toutov *disavowed* any connection between his framework and actual consumer perception of natural for food products. *Id*. ¶ 64. He did not take into consideration what plaintiffs or consumers believed "all natural" meant. *Id*. ¶ 65. He stated that it was **not** his goal to provide a standard or definition that the trier of fact could use to determine whether the "All Natural" labeling on KIND's products was false. *Id*. ¶ 66. Toutov actually criticized the "natural" definitions used by his co-expert Dennis as incomplete, and stated that a determination of natural required a "more complex" evaluation that must use "additional steps." *Id*. ¶ 68.

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT

### A.   Legal Standard For Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To defeat summary judgment, plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts" (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), but rather they must show that there is "significant probative evidence" on which a reasonable factfinder could decide in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quotation marks and citation omitted).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." *Id*. at 252. Plaintiffs may not rely upon "conclusory statements or mere allegations," they must "go beyond the pleadings, and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (quotation marks and citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Crawford v. Franklin Credit Mgmt*., 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).

**B.**      **Plaintiffs Cannot Establish That They Suffered An Injury As A Result Of The "All Natural" Label Statement**

To show injury, plaintiffs must establish "the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1118 (C.D. Cal. 2015) (quotation marks and citation omitted); *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (damage under the UCL, CLRA, and FAL is measured by "the difference between the prices customers paid and the value of the fruit they bought—in other words, the 'price premium' attributable to Dole's 'All Natural Fruit' labels"). All of plaintiffs' claims fail because they have failed to establish the existence of a price premium for the challenged KIND products attributable to the "All Natural" label statement. Accordingly, they cannot prove injury or damages, an essential element of their claims. *See Eidelman v. Sun Prods. Corp.*, 2021 WL 1198891, at *3 (S.D.N.Y. Mar. 30, 2021) (granting summary judgment for GBL claims because plaintiff did not establish evidence of a price premium due only to the allegedly misleading marketing statement); *A&E Adventures LLC v. Intercard, Inc*, 2021 WL 1165244, at *7 (S.D. Fla. Mar. 26, 2021) (injury is a required element of a claim under FDUPTA); *Moore v. GNC, Holdings, Inc.*, 2014 WL 12634919, at *5 (S.D. Fla. Mar. 18, 2014) (actual damages is a required element of a FDUTPA claim); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) (UCL, FAL, and CLRA claims require plaintiff to demonstrate economic injury as a result of reliance on the challenged false label statement);

9

*Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) (granting summary judgment on UCL, FAL, CLRA claims after rejecting plaintiff's price premium damage model).

### 1. Plaintiffs Have No Admissible Evidence Of Injury

Plaintiffs' sole evidence of injury is Hamilton's damage model. But that model is unreliable and fails to establish injury associated with KIND's "All Natural" label statement[3] and should be excluded under *Daubert. See* Mot. to Exclude Hamilton. Without Hamilton's model, plaintiffs have no evidence of injury or damage associated with the "All Natural" labeling and, therefore, summary judgment should be granted. *See, e.g.*, *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283 (S.D. Fla. 2015) (granting summary judgment where plaintiff failed to show an "actual loss"); *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) (granting summary judgment because plaintiffs failed to produce evidence establishing an injury).

### 2. Plaintiffs Cannot Demonstrate That They Were Injured By A Deceptive "All Natural" Label Statement

 "Only by showing that plaintiffs in fact paid more for [the products] *as a result* of [the challenged] labeling can plaintiffs establish the requisite elements of causation and actual injury under § 349." *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010). Hamilton's model fails to show this association.

*First,* Hamilton did not design or measure a price premium associated with KIND products. SSUF ¶¶ 34-35; Hamilton Tr. 19:10-18. Instead, he designed a hedonic regression for

---

[3] Among other things, Hamilton's hedonic regression model is rife with errors and technical mistakes. Kivetz Hamilton Reb. Rpt. §§ F-H. Hamilton did not verify the underlying, third-party data that he used to code his regression analysis. SSUF ¶ 38. Failing to do so resulted in a significant number of errors in his model. For example, Hamilton credited multiple products as having a "natural" label statement when they did not. Kivetz Hamilton Reb. Rpt. § F. Indeed, the flaws in Hamilton's regression model result in this basic contradiction: it concludes that there is a **negative** price impact for products labeled as "non-GMO" and "organic." In other words, the average retail price is *less*, not more, for non-GMO and organic products—while at the same time finding that "natural" products have a higher retail price than products that are not "natural." *See* Kivetz Hamilton Reb. Rpt. § D.

the *entire* snack bar category (including over 2,000 products) and concluded that there is an average 3.95% price premium across that *entire* category associated with products that are positioned as "natural" by Mintel. SSUF ¶ 33. Hamilton's 3.95% price premium is truly an average attempting to predict a result for all products in the model—even though some reflect a positive result and some reflect a negative result, all to varying degrees. *See* Kivetz Hamilton Reb. Rpt. ¶¶ 62-63, 113, 120. Thus, 3.95% is not the actual price premium associated with *any* product, much less KIND products. Hamilton nevertheless concludes (with no support) that the category-wide average should be imputed to KIND products. SSUF ¶ 35. But the average price premium for all products in the snack bar category has no bearing on whether plaintiffs paid a price premium for *any* given *KIND* product (and certainly not all of the KIND products). And when Hamilton's model is applied to **only KIND products**, it shows a negative result associated with the "All Natural" label statement. *Id*. ¶ 39. Accordingly, Hamilton's damage model does not measure a price premium associated with KIND's "All Natural" labeling because it does not relate specifically to KIND products.

   *Second,* Hamilton's damage model does not measure a price premium attributable to consumers' particular understanding of the term "All Natural" as required by *Comcast.* Hamilton testified that plaintiffs' theory regarding what "natural" means "did not matter" when making his model. *Id*. ¶¶ 36-37. He made no attempt to tie his damage model to the reasonable consumer's understanding of "All Natural." *Id*; Kivetz Hamilton Reb. Rpt. § I. Without such evidence, plaintiffs cannot prove that any purported "premium" or increase in price was caused by not receiving what *they* expected in an "All Natural" KIND product. *See, e.g., Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1205 (D. Colo. 2017) (no injury where defendant's "disclosures did not influence [plaintiff] in any way"); *Wilson*, 260 F. Supp. 3d at 1211-12 (no evidence of injury where plaintiff testified his claims were not based on challenged label statement); *Moore v. GNC Holdings, Inc.*, 2014 WL 12634919, at *4-5 (S.D. Fla. Mar. 18, 2014) (no dispute of fact regarding damages where the evidence showed "that anyone who purchased [the product] without a hydration warning did not pay a premium over the price of

[the same product] with a hydration warning," such that consumers who were enticed to purchase based on the omission did not suffer damages).

### 3.  New York Plaintiffs Are Not Entitled To Statutory Damages

Plaintiffs Short and Thomas are not entitled to statutory damages. Under the GBL, a plaintiff must first establish that the plaintiff suffered injury or "actual . . . harm," usually in the form of a price premium. *Price v. L'Oreal USA, Inc.*, 2018 WL 3869896, at *11 n.6 (S.D.N.Y. Aug. 15, 2018) (quotation marks and citation omitted); *see also Eidelman*, 2021 WL 1198891, at *4 (no statutory damages where the "record does not reflect evidence of a less expensive comparator to the Product" so "no reasonably jury could find [p]laintiff paid a price premium"). Because evidence of a price premium does not exist for the reasons explained above, plaintiffs Short and Thomas cannot be awarded statutory damages. *See Himber v. Intuit, Inc.*, 2012 WL 4442796, at *9 (E.D.N.Y. Sept. 25, 2012) (GBL claims "require[] injury" and therefore "the lack of a non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under the relevant statutory provisions").

### C.  <u>Plaintiffs Cannot Establish That KIND's "All Natural" Labeling Deceived Reasonable Consumers</u>

All of plaintiffs' claims also require them to prove that KIND's "All Natural" label statement was false based on the reasonable consumer standard. "However, it is up to the plaintiff to 'set forth what is false or misleading about a statement and why it is false.'" *Sperling v. Stein Mart*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018) (citation omitted). Absent evidence as to what a reasonable consumer believed "All Natural" meant, along with evidence that KIND products were falsely labeled based on *that* definition, KIND is entitled to summary judgment. *See A&E Adventures*, 2021 WL 1165244, at *7 (FDUPTA requires a plaintiff to establish a deceptive act or unfair practice); *Major v. Ocean Spray Cranberries, Inc.*, 2015 WL 859491, at *5 (N.D. Cal. Feb. 26, 2015), *aff'd*, 690 F. App'x 564 (9th Cir. 2017) (granting summary judgment because plaintiff did not establish "a material factual dispute as to whether the [challenged label statement] was false, misleading or deceptive"). Here, KIND is entitled to

summary judgment because plaintiffs cannot establish what a reasonable consumer understands "All Natural" to mean, much less establish a triable issue of fact that the "All Natural" statement was deceptive to reasonable consumers.

**1.** **Plaintiffs Cannot Define What "All Natural" Means To Reasonable Consumers**

From the outset of this case, plaintiffs have failed to provide a consistent or widely-held definition of what "All Natural" means either to them or to reasonable consumers.[4] The "reasonable consumer" standard is "an objective standard for determining whether acts or practices are materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances." *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *12 (N.D.N.Y. Sept. 27, 2017) (quotation marks and citation omitted); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021) ("Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably.") (quotation marks and citation omitted).

The reasonable consumer standard requires more than a mere possibility that the defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh*, *Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (*quoting Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 504 (2003). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation marks and citation omitted). Accordingly, a plaintiff must adduce extrinsic evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the challenged claims. *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871-72 (E.D.N.Y. 2018); *Ries v. Ariz. Beverages USA LLC*, 2013 WL 1287416, at *6 (N.D. Cal. March 28, 2013) ("[A]necdotal evidence alone is insufficient . . . [T]o prevail, plaintiff must demonstrate by

---

[4] The ACC contains five different definitions of natural. SSUF ¶ 3. In addition, plaintiffs each had their own unique definition of what "natural" meant. *See* §§ II.1-4, *supra.*

extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead [reasonable] consumers.") (quotation marks and citation omitted); *Morales v. Conopco, Inc.*, 2016 WL 6094504, at \*4 (E.D. Cal. Oct. 18, 2016) ("[Plaintiffs'] individual testimony is insufficient to establish whether defendant's representations on its products would deceive a reasonable consumer . . . .") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008)).

In the midst of the general ambiguity associated with "natural" labeling and the additional confusion created by plaintiffs' varied and contradictory proposed definitions of natural, plaintiffs were required to establish through extrinsic evidence whether reasonable consumers have an objective understanding of the term "All Natural" on KIND product labels and, if so, what that understanding is. The Dennis perception survey ostensibly is intended to fulfill that requirement, but it completely fails at that task because it is irrelevant and unreliable. *See* Mot. To Exclude Dennis at § III(B).

In short, the Dennis perception survey does not—and is not intended to—determine whether reasonable consumers have an objective verifiable understanding of "All Natural." SSUF ¶ 46. Instead, Dennis' purpose was to determine if survey respondents would validate Dennis' interpretation of what he thought were plaintiffs' primary theories of deception. *Id.* ¶ 42. In a very real sense, Dennis designed a survey (a leading and biased one, at that) to do nothing more than validate a theory of liability (*id.*), *not* test whether consumers believe "All Natural" has a meaning and, if so, what that meaning is—either in the abstract or specifically with respect to KIND products. *See, e.g.*, Kivetz Dennis Reb. Rpt. §§ D.1, D.4.

In addition to the leading and biased questions, Dennis failed to include any open-ended questions that would have probed consumers' perceptions of "All Natural." *Id.*; *see also* SSUF ¶ 44. Moreover, the fact that the perception survey posits two *different* potential definitions, and permitted survey respondents to select both, proves that Dennis did not set out to survey what reasonable consumers think natural means (if anything) in any manner that would have any relevance to this case. At the risk of repeating, and at best for plaintiffs, the Dennis perception

survey was designed and carried out solely to *obtain favorable feedback* from respondents about artificially preconceived and limited notions of natural. It did not test consumers' understanding of the meaning of natural (if any) as that term is used regarding a KIND product or other food product. Absent extrinsic evidence that consumers have a common understanding of "All Natural" and what that understanding is, plaintiffs cannot establish an essential element of their claims.[5]

Plaintiffs' failure to provide a consistent, coherent and verifiable definition of "All Natural" in the eyes of a "reasonable consumer" is no surprise. As Toutov states in his report, "[t]here is **no** universal definition of naturalness accepted by all stakeholders involved in the sourcing, manufacturing, selling, and consuming of food products." SSUF ¶ 59 (emphasis added). FDA, the federal agency responsible for regulating food labels, has been unable to decide what "natural" means despite "relatively long-standing" efforts.[6] *Id.* ¶ 61. Academic research also demonstrates that consumers have differing understandings of the term natural on food labels, if they have an understanding at all. ECF No. 183 ¶¶ 55-56; *see also* SSUF ¶ 62. Consistent with this universal inability to define "natural" for food labeling, courts routinely find that claims challenging "natural" labeling are not subject to common proof because "there is no fixed meaning for the word 'natural'" and plaintiffs cannot show that it has any particular meaning in the minds of consumers. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *16-

---

[5] For many reasons, the Dennis perception survey is flawed, biased, leading, and irrelevant—making it, and Dennis' conclusions drawn from the results, inadmissible. Among other deficiencies, Dennis' leading questions allowed respondents to "infer the purpose of the survey and identify the 'correct' answers." *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465 (E.D. Va. 2017) (quotation marks and citation omitted). The survey language was also vague and biased, including by referring to ascorbic acid as a "chemical" instead of identifying it as vitamin C. *See generally* Mot. to Exclude Dennis at 11.

[6] In 2015, FDA issued a non-rulemaking docket regarding the "Use of the Term 'Natural' in the Labeling of Human Food Products." *See* https://www.regulations.gov/docket/FDA-2014-N-1207. The FDA received over 7,600 comments on that issue. *Id.* Nevertheless, to date, FDA has not issued any policy or rule defining the term "natural." SSUF ¶ 61. Indeed, this case was stayed for several years while the Court waited for the FDA to define that term. *See generally* ECF No. 58 (order staying action pending FDA action).

17 (N.D. Cal. June 13, 2014); *Randolph v. J.R. Smucker Co.*, 303 F.R.D. 679, 695 (S.D. Fla. 2014) (due to differing interpretations of the term "natural," plaintiff failed to satisfy predominance because she "has not demonstrated that an objectively reasonable consumer would agree with her interpretation of 'all natural'"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) ("Plaintiffs fail to sufficiently show that 'All Natural' has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members.").

Without "an objective or plausible definition of the phrase 'All Natural,'" . . . use of the term 'All Natural' is not deceptive in context." *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-79 (C.D. Cal. 2013). Accordingly, because the Dennis perception survey is inadmissible and offers no evidence as to what reasonable consumers understand "All Natural" to mean, plaintiffs have no way to establish that the "All Natural" statement on KIND labels deceived consumers—a necessary element of their claims.

      **2.**      **Plaintiffs Have No Evidence That The "All Natural" Label Statement Deceived Reasonable Consumers**

Separate from the dispositive deficiencies in the Dennis perception survey, plaintiffs also cannot demonstrate that the labeling of KIND products was actually false or misleading under either of Dennis' proposed definitions.

      **a.**      **Plaintiffs' Experts Cannot Agree On A Definition Of Natural**

Dennis' perception survey was intended to "test the plaintiff's theory of liability." SSUF ¶ 41. But there is a complete disconnect between Toutov—the expert plaintiffs hired to explain whether the ingredients in KIND products are in fact "natural"—and Dennis—the expert plaintiffs hired to explain what "natural" means to the reasonable consumer.

To begin with, Toutov *expressly disclaimed* both of Dennis' proposed definitions and asserted that each one was inaccurate:

Q.      Is a proper definition of natural that a product contains no artificial or synthetic ingredients?

A.      I think that that is a component of naturalness, ***but the evaluation of naturalness is more complex than that and requires additional steps***. . . .

Q.      Is a proper definition of natural that a product does not contain the chemicals phosphoric acid, hexane, potassium hydroxide, and ascorbic acid?

A.      ***Not necessarily. A much more -- a much more complex review and understanding of the entire situation would need to be undertaken***, but, of course, additives and other elements like you mentioned in perhaps your first question, they are a factor and it needs to be taken as a whole.

SSUF ¶ 68 (emphasis added). Toutov's opinion on what "natural" means and Dennis' assertions as to what reasonable consumers understand "natural" to mean are completely at odds. Under the "Elements of Naturalness" analysis, Toutov primarily focuses on the extent to which the ingredients in KIND products were processed, whether processing aids were used in the supply chain, and whether the "final form" of an ingredient used in the KIND product is the same as the unprocessed version of that same ingredient (e.g. how similar is soybean oil to a soybean). *See generally* Toutov Rpt. §§ IV.B-V; SSUF ¶ 63. But neither of *Dennis*' proposed definitions of "natural" identifies processing, whether an ingredient was highly processed, or the use of processing aids.[7] Accordingly, Toutov's analysis of whether ingredient processing or processing aids render an ingredient not natural are inapplicable. If plaintiffs' intended theory of deception related to the amount of processing an ingredient was subjected to during manufacturing or in the supply chain, Dennis certainly could have asked survey respondents that question to determine if that was consistent with reasonable consumers' understanding. Because Toutov's opinions on "natural" are completely divorced from Dennis' definitions of "natural"—and ostensibly what plaintiffs contend reasonable consumers believe "natural" means—they offer no support for plaintiffs' claims of deception.

---

[7] Some of the "chemicals" identified in Dennis' Definition Two are also identified as processing aids used at some point in the manufacturing process for some of KIND's ingredients. *See* Toutov Rpt. ¶¶ 24, 32, 36. But whether this vague connection is by accident or by design, the Dennis perception survey still does not relate to ingredient processing or the use of processing aids.

Similarly, and equally problematic, Toutov's "Elements of Naturalness" framework is unrelated to consumer deception. Toutov did not consider what plaintiffs or consumers believed "all natural" to mean in developing that framework. SSUF ¶¶ 64-65. Toutov further admits that a consumer would not be able to use his "Elements of Naturalness" framework to determine whether a product is or is not natural. *Id.* ¶ 67. Remarkably, Toutov even admits that the purpose of his "Elements of Naturalness" analysis was ***not*** to provide a standard or definition that the trier of fact could use to determine whether the "All Natural" label statement on KIND's products was false. *Id*. ¶ 67. Accordingly, even if they were admissible, Toutov's opinions regarding the "naturalness" of KIND ingredients are irrelevant to the issues here.[8]

### b.   Plaintiffs Have No Evidence To Support Deception In Connection With Dennis' Definitions Of Natural

KIND is entitled to summary judgment for the additional reason that plaintiffs cannot establish actual deception under either of Dennis' definitions of natural.

➢   **Plaintiffs cannot establish deception under Dennis' Definition One (that the Products allegedly contain artificial or synthetic ingredients).**[9] Toutov opines that the vitamin A and C ingredient used in "KIND Plus Antioxidants" Core bars contains synthetic vitamins A and C. SSUF ¶ 69. Plaintiffs identify no other ingredients in KIND products that are allegedly artificial or synthetic.[10] Accordingly, using this proposed definition, the only KIND products that could conceivably have a deceptive "All Natural" label statement are the three KIND Core bars that are labeled "KIND Plus Antioxidants." *See* Appendix A. That means that if this is plaintiffs' theory of deception, summary judgment should be granted as to the 36

---

[8] As discussed in the motion to exclude, Toutov is patently unqualified to offer any opinions on food, food manufacturing, or food labeling. Mot. to Exclude Toutov at § II(A).

[9] Of course, Dennis did not define for survey respondents what "artificial or synthetic" meant and, accordingly, his survey does not establish what consumers understand those words to mean.

[10] Toutov's report opines that the ingredient vitamin E acetate is synthetic, but no KIND products include synthetic vitamin E acetate as an ingredient. Instead, Healthy Grains products contain natural tocopherol acetate from vitamin E oil. SSUF ¶ 70.

KIND products identified in the ACC that do *not* contain the alleged "artificial or synthetic" vitamin A and C ingredient. *See id.*; Lutter Decl. ¶¶ 9-11; SSUF ¶¶ 73-74.

As to the three "KIND Plus Antioxidants" Core Bars, plaintiffs have no evidence that reasonable consumers were deceived given that vitamins A and C were fully disclosed both on the front label shown below and in the ingredient list.



Plaintiffs offer no basis to support the conclusion that reasonable consumers believe that synthetic vitamins are inconsistent with "natural" labeling, and Dennis did not include any survey questions designed to elicit such evidence in his perception survey.[11]

In addition, as a matter of law, neither plaintiffs nor reasonable consumers can plausibly be deceived by the inclusion of added vitamins or vitamin supplements to a product labeled natural where the addition of such ingredients is clearly disclosed. The plain meaning of the express prominent (font size & color, stand alone) "**PLUS**" vitamins language is that the "natural" ingredients are being supplemented with *added* vitamins and minerals that the "natural" ingredients themselves do not contain. In evaluating similar language ("all natural with vitamins") another district court ruled that "no reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins

---

[11] Indeed, it would be difficult to imagine that such a survey question would have provided plaintiffs with a supporting result because synthetic vitamins are routinely sold in natural food stores and are permitted in foods certified organic by the USDA. *See* 7 C.F.R. § 205.605; Whole Foods Market Standards; *Available at* https://assets.wholefoodsmarket.com/www/products/quality-standards/Unacceptable_Ingredients_for_Food_031519.pdf.

are suppose[d] to be 'all natural vitamins.'" *Hairston v. S. Beach Beverage Co., Inc.*, 2012 WL 1893818 at \*5 (C.D. Cal. May 18, 2012).

> **Plaintiffs cannot establish deception under Dennis' Definition 2 (the products are allegedly made with or contain chemicals).** There is no evidence that any KIND products contain phosphoric acid, hexane, or potassium hydroxide in an ingredient or in any amount (trace or otherwise).[12] Plaintiffs produced no evidence of any product testing for these "chemicals" in discovery and Toutov admits that he did no testing for hexane. SSUF ¶ 72. Even assuming some presence, courts routinely hold that the presence of trace levels of chemicals and contaminants in foods labeled as "natural" is "not likely to affect consumers' decisions in purchasing the product and is thus not material." *Parks v. Ainsworth Pet Nutrition*, *LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020); *see also In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at \*5 (D. Minn. July 12, 2017) (not plausible that a reasonable consumer would be deceived by trace glyphosate in food product labeled as "natural"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Fla's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (alteration in original, citation omitted) (affirming district court's grant of a motion to dismiss); *Tran v. Sioux Honey Ass'n*, 2020 WL 3989444, at \*4-5 (C.D. Cal. July 13, 2020) (no evidence reasonable consumers are deceived by the presence of trace amounts of glyphosate in food products labeled "natural"); *Yu v. Dr Pepper Snapple Grp.*, 2019 WL

---

[12] Demonstrating a further disconnect between Dennis and consumer expectation is that the "chemical" ascorbic acid is vitamin C. It is not plausible that including vitamin C in a food product makes it not natural. Vitamin C is naturally occurring and "is found in many foods, including citrus fruits, broccoli, potatoes, strawberries, and many other." SSUF ¶ 71; *see also* Toutov Rpt. ¶ 111 (acknowledging ascorbic acid/vitamin C is "an essential nutrient."). There is no reasonable explanation for its inclusion in Dennis' list of "chemicals," other than a desire to include items in the survey that "sound like a chemical" to bias survey respondents.

2515919, at *3 (N.D. Cal. June 18, 2019) (reasonable consumer would not understand "natural" to mean the utter absence of residual pesticides, which are well below allowable tolerances).

**D.**    **Plaintiffs Cannot Demonstrate That The "All Natural" Label Statement Was Material To Consumer Purchasing Decisions**

To prevail on the New York and California claims, plaintiffs must prove that the "All Natural" label statement was material to the purchasing decision of a reasonable consumer. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (under the GBL, plaintiffs must show that the challenged statements are "materially misleading"); *see also In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2019 WL 2521958, at *11 (D.N.J. Jun. 18, 2019); *Astiana*, 291 F.R.D. at 508-509; *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018). A misrepresentation is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (quotation marks and citation omitted). Plaintiffs' sole evidence that the "All Natural" portion of the "All Natural/Non-GMO" label statement was material to consumers is the testimony of Dennis and his "materiality" survey. But Dennis' materiality survey does not show "*how* the challenged statements, together or alone, were a factor in any consumer's purchasing decisions." *Jones*, 2014 WL 2702726, at *15.

*First*, Dennis' materiality survey is fatally flawed and should be stricken. *See* Mot. to Exclude Dennis. Among other things, the Dennis materiality survey repeatedly and artificially emphasized the presence of the challenged "All Natural" claim (versus the absence of the claim), thereby leading participants and inducing severe demand and focalism biases. Kivetz Dennis Reb. Rpt. ¶ 13. These biases render Dennis' survey wholly unreliable and inadmissible. *Strumlauf v. Starbucks Corp.*, 2018 WL 306715, at *6 (N.D. Cal. 2018) (plaintiffs failed to establish a triable issue of fact where expert surveys were leading, suggestive, and lacking in reliability). Moreover, as discussed below, the Dennis survey did not test actual KIND products

21

or KIND label statements.[13] SSUF ¶ 49; *See generally* Dennis Rpt. ¶¶ 52-64. Absent the Dennis survey, plaintiffs have no evidence of materiality and, therefore, summary judgment should be granted. *See Townsend*, 303 F. Supp. 3d at 1045 (plaintiffs "present no admissible evidence to show the materiality of the [challenged] statement" because expert report was excluded).

*Second*, Dennis' survey does not establish that the "All Natural" label statement on KIND products was material to consumers, i.e., that it "***w[as] a factor in consumers' purchasing decision***." *Townsend*, 303 F. Supp. 3d at 1045 (emphasis added). In other words, Dennis needed to conduct a survey measuring how consumers "value [the 'All Natural' statement] ***compared to other attributes of the product and the [relevant] market generally***." *Id.* (emphasis added) (quoting *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017)); *see also Jones*, 2014 WL 2702726, at *15 (expert did not "assess whether the challenged statements were in fact material to their purchases, as opposed to, or in addition to," other factors).

Dennis' materiality survey completely failed to do so because Dennis did not utilize an actual KIND product label in his survey or test the actual challenged label statements. SSUF ¶ 49. Dennis should have tested actual KIND labels and attempted to determine if the lack of the "All Natural" statement materially impacted a consumer's purchasing decision. He did not. *See* Kivetz Dennis Reb. Rpt. § E. Instead, the Dennis survey presented respondents with a hypothetical, unbranded product and tested a label claim ("All Natural" standing alone) that

---

[13] *See also Pardini v. Unilever*, 2020 WL 6821071 at *1 (N.D. Cal. July 10, 2020) (Dennis survey struck, and class certification motion denied, where Dennis opinions were not addressed to the theory of liability because he did not test specific challenged statements); *Williams-Sonoma Song-Beverly Act Cases*, No. JCCP-4611 (Cal. Super. Ct. San Francisco Cty. March 16, 2018) (rejecting Dennis survey and granting motion to decertify class where Dennis tested different signage than what was at issue); *O'Bannon v. Nat. Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 975-76 (N.D. Cal. 2014), *aff'd in part and rev'd in part on other grounds*, 802 F.3d 1049 (9th Cir. 2015) (finding that a Dennis survey did not provide credible evidence, in part, because it failed to ask respondents about the specific issues in the litigation).

never appeared on any of the KIND products.[14] SSUF ¶ 49; Dennis Rpt. ¶¶ 52-64; Kivetz Dennis Reb. Rpt. ¶ 68. Whenever "All Natural" appeared on KIND products, it was always in the statement "All Natural/Non GMO." The omission of "Non GMO" from the tested label statement thus artificially highlights the "All Natural" portion of the label statement and distorts what real-world consumers perceived "All Natural" to mean. Because the "exact wording of [the challenged] statement is [] critical to Plaintiffs' claims," this design flaw dooms Dennis' survey. *See Townsend*, 303 F. Supp. 3d at 1024 ("To be relevant to this action, the words [the expert] is evaluating must in fact be the words on Defendants' labels."); *McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191, at *5-9 (S.D. Cal. March 9, 2020) (Dennis survey rejected because it did not isolate the effect of the challenged word "nutritious" in tested advertising claims); *In re Tropicana*, 2019 WL 2521958, at *12 (plaintiff did not carry its burden as to materiality where expert's survey "did not [] perform any analysis specific to the word 'pasteurized' or 'pasteurized orange juice' label").

**E.**     **The California Claims Fail Because Plaintiff Bustamante Cannot Demonstrate Reliance**

Summary judgment as to the UCL, FAL, and CLRA claims is warranted for an additional reason: plaintiff Bustamante cannot demonstrate actual reliance on the "All-Natural" label statement. *See Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 42–43 (2009); *see also Wilson*, 260 F. Supp. 3d at 1208 ("To prevail on their causes of action under the UCL, FAL, and the CLRA, Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance.").

Bustamante's testimony establishes that the "All-Natural" label statement had absolutely *nothing* to do with Bustamante's purchasing decisions. Instead, Bustamante testified that she relied on *other* representations on the label; namely, that the KIND bar was (i) healthy; and

---

[14] Dennis inexplicably excluded the "Non GMO" label statement while keeping *other* statements from KIND labels—such as "Gluten Free," "Low Glycemic," "Good Source of Fiber," "Low Sodium," and "No Trans Fats"—even though he was not testing those claims. Dennis Rpt. ¶ 63; Dennis Tr. at 52:6-53:23.

(ii) non-GMO. SSUF ¶¶ 22-25. Specifically, she said she "rel[ied]" on the "non-GMO statement" on the label. *Id*. ¶ 23. She also clarified that she only stopped eating KIND bars when she found out they were potentially not healthy or might include GMOs, not because they were not "all natural." *Id*. ¶ 25. Though provided plenty of opportunities to do so at her deposition, she said *nothing* about the "All Natural" label being material to her or her purchasing decision. *Id*. ¶ 24.

Without any evidence that she relied on the challenged label statement, Bustamante cannot sustain a UCL, FAL, or CLRA claim. For example, in *Wilson*, the district court granted summary judgment because "the undisputed evidence show[ed] that [plaintiffs] did not rely on the 'all natural' label." 260 F. Supp. 3d at 1213. In reaching that conclusion, the Court found that plaintiffs' deposition testimony "strongly suggest[s] that the 'all natural' statement was ***not*** a substantial factor in [their] decision to purchase the products." *Id* (emphasis added). For example, one plaintiff, when asked why he purchased the products, responded that it was "[b]ecause they taste good" (*id*. at 1213-14) and another "did not notice any label statements on [the] chips . . . and he therefore cannot establish that he relied on the allegedly misleading . . . label." *Id*. at 1211; *see also Major*, 2015 WL 859491, at *3-4 (plaintiff required to demonstrate that she relied on the "No Sugar Added" message for the challenged reason that she thought the products were low calorie); *Baghdasarian v. Amazon.com, Inc.*, 2009 WL 4823368, at *5-6 (C.D. Cal. Dec. 9, 2009), *aff'd*, 458 F. App'x 622 (9th Cir. 2011) (granting summary judgment because plaintiff failed to offer "any evidence that [Amazon]'s shipping policy [the allegedly deceptive practice] caused him to buy products from Amazon[.]"); *Princess Cruise Lines, Ltd.*, 179 Cal. App. 4th at 42–43 (summary judgment on UCL, FAL, and CLRA claims was appropriate because there was no evidence of reliance). Accordingly, her UCL, CLRA, and FAL claims should be dismissed.

### F.      Plaintiffs' Individual State Common Law Claims Fail

Plaintiffs' individual common law claims for breach of warranty, unjust enrichment, and negligent misrepresentation fail for the same reasons as plaintiffs' statutory claims. *See*

*Eidelman*, 2021 WL 1198891, at *5 (granting summary judgment on unjust enrichment claims for "the same reasons indicated above with respect to Plaintiff's GBL §§ 349 and 350 claims"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806-809 (S.D.N.Y. 2021) (dismissing breach of warranty, negligent misrepresentation, unjust enrichment for the same reasons as GBL claims); *Devayatan, LLC v. Travelodge Hotels, Inc.*, 2016 WL 3477205, at *7 (M.D. Fla. June 27, 2016) (granting summary judgment on negligent misrepresentation claim for the same reasons as plaintiff's FDUTPA claim); *Zeldman v. Pershing LLC*, 2010 WL 11505834, at *6 (S.D. Fla. Aug. 20, 2010) (dismissing breach of express warranty and unjust enrichment claims for same reasons as FDUTPA claims); *Chuang v. Dr Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *6-7 (C.D. Cal. Sept. 20, 2017) (breach of warranty claim fails for same reasons as UCL, FAL, and CLRA); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017) (same as to misrepresentation and express warranty claims); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, at 1070-71 (N.D. Cal. 2021) (unjust enrichment is not an independent cause of action under California law).

## IV.   <u>CONCLUSION</u>

For the reasons stated above, KIND requests that the Court grant its motion for summary judgment, or in the alternative partial summary judgment.

 DATED: January 21, 2022                    Respectfully Submitted,

                                           By: */s/* Dale J. Giali
                                                 Dale J. Giali
                                                 Keri E. Borders
                                                 Mayer Brown LLP
                                                 350 South Grand Avenue, 25th Floor
                                                 Los Angeles, CA 90071-1503
                                                 Telephone: (213) 229-9500
                                                 Facsimile: (213) 625-0248
                                                 Email: dgiali@mayerbrown.com

                                                 Counsel for Defendant KIND LLC